1  Roland Tellis (SBN 186269)
   rtellis@baronbudd.com
2  Mark Pifko (SBN 228412)
   mpifko@baronbudd.com
3  BARON & BUDD, P.C.
   1999 Avenue of the Stars, Suite 3450
4  Los Angeles, California 90067
   Telephone:  (310) 860-0476
5  Facsimile:   (310) 860-0480

6  Attorneys for Plaintiff
   BRAD AARONS individually, and on behalf of
7  other members of the public similarly situated

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10

11 BRAD AARONS, individually, and on        Case Number: CV11 - 07667 PSG (CWx)
12 behalf of other members of the general
   public similarly situated,               CLASS ACTION COMPLAINT FOR:
13

14         Plaintiff,                        (1) Violation of the Consumers Legal
                                                 Remedies Act (Cal. Civ. Code
15      vs.                                      §§ 1750 *et seq.*)

16                                           (2) Violation of Unfair Competition
17 BMW of NORTH AMERICA, LLC, a                  Law (Cal. Bus. & Prof. Code
   New Jersey Limited Liability Company,         §§ 17200 *et seq.*); and
18
                                             (3) Fraud
19         Defendant.

20                                           **Jury Trial Demanded**
21
22
23
24
25
26
27
28

1    Plaintiff BRAD AARONS ("Plaintiff"), individually and on behalf of all other
2   members of the public similarly situated, alleges as follows:
3        1.    This is a consumer class action concerning a failure to disclose the fact that
4   Continuously Variable Automatic Transmissions installed in 2002 through 2006 Mini
5   Cooper Coupe models and 2005 through 2008 Mini Cooper Convertible models ("First
6   Generation MINIs"), designed, manufactured, imported, distributed, marketed, and
7   maintained in the United States by Defendant BMW of North America, LLC ("BMW
8   Group" or "Defendant"), were prone to premature failure and could not reasonably be
9   repaired.  BMW Group's failure to disclose this material fact presents a safety concern,
10  and has caused consumers to suffer significant monetary damages.

## INTRODUCTION

12       2.    First Generation MINIs were introduced in the United States in 2002 with
13  great fanfare and public attention.  BMW Group presented the Mini Cooper as a stylish,
14  high performance, yet affordable vehicle that was priced at less than $20,000.  BMW
15  Group's marketing strategy for First Generation MINIs was to launch a new class of high-
16  end vehicles.  At the time of the launch, Jack Pitney, general manager of BMW Group's
17  MINI division in the U.S., explained to the Wall Street Journal, "'[w]e're creating a new
18  segment' of premium small vehicles."[1]
19       3.    BMW Group employed "unconventional tactics"[2] to drive sales for this
20  newly proclaimed "premium small car segment."[3]  Consistent with the concept of creating
21  a premium, but small vehicle, BMW Group's advertisements for First Generation MINIs

---

[1] See "BMW 'Mini' Campaign:  Odd to the Max," Karen Lundegaard, Wall Street Journal at B5 (March 1, 2002) (emphasis added).

[2] See "'Let's Motor' Mini Cooper Campaign Gets In Gear," Jean Halliday, Advertising Age, June 19, 2002, available at http://adage.com/article/news/motor-mini-cooper-campaign-gear/34818/ (last visited, August 25, 2011).

[3] See "MINI Establishes Premium Standard in the Small Car Segment," BMW Group Press Release, October 18, 2002, available at http://www.bmwboard.com/news/view.asp?linkid=310 (last visited, August 25, 2011).

emphasized their design and performance features.  Among other things, BMW Group purchased the margins of magazine pages, and placed advertisements with a First Generation MINI driving around the edges of the editorial text to highlight MINI's "cornering" abilities.[4]  Additionally, to showcase MINI's good looks and fashionable styling, BMW Group made a first ever advertising purchase of the *Playboy Magazine* Centerfold space, and placed a picture of a First Generation MINI in the foldout pages, as photographed by a *Playboy Magazine* staff photographer.[5]  Ultimately, Advertising Age, a leading marketing industry trade publication, awarded the First Generation MINI 2002 launch campaign one of its "Best Awards."[6]

4.     BMW Group's aggressive marketing tactics were successful, and consumers and automotive enthusiasts alike bought into the hype.  J.D. Power and Associates awarded First Generation MINIs the 2002 "APEAL" award, based on a survey of owner's *perceptions* of the vehicle's "design, layout, content and performance during the first 90 days of ownership."[7]  In its "First Drive Review," *Car and Driver Magazine* said that although the First Generation MINIs were priced in competition with the VW Golf, Ford Focus and Honda Civic, the car is "fun to drive and feels of high quality enough to wear the BMW badge."[8]  Similarly, a Forbes.com review stated, "the Mini Cooper does everything a sports sedan should do . . . and at an unheard-of base price of $16,850."[9]

---

[4] *See* "MINI USA Launch Exceeds Expectations – Jack Pitney Credits Innovative Marketing, Enthusiastic Dealers On Road to Success," BMW Group Press Release, May 7, 2003, available at http://www.bmwboard.com/news/view.asp?linkid=351 (last visited, August 25, 2011).

[5] *See id.*

[6] *See* "The Ad Age Best Awards report 2003," Advertising Age at S-6, May 26, 2003, available at http://adage.com/images/random/best2003.pdf (last visited, August 25 ,2011).

[7] *See* "MINI Cooper ranked most appealing," BMW Group Press Release, October 10, 2002, available at http://www.bmwboard.com/news/view.asp?linkid=308 (last visited, August 25, 2011).

[8] *See* "Mini Cooper – First Drive Review.  Der Mini," Daniel Pund, Car and Driver, August 2001, available at http://www.caranddriver.com/reviews/car/01q3/mini_cooper-first_drive_review (last visited, August 25, 2011).

[9] *See* "Test Drives  2002 Mini Cooper," Michael Frank, Forbes.com, available at http://www.forbes.com/2002/03/18/0318test.html (last visited, August 25, 2011).

1   Apparently, a low cost, high performance vehicle with good looks had been created—
2   BMW Group was convincing people that a "premium small car segment" could exist.

3       5.      As a result, would be buyers lined up to get their hands on First Generation
4   MINIs.  BMW Group, however, under-budgeted production and could not keep up with
5   the demand it created.[10]  Buyers waited months to a year for delivery, so BMW Group
6   was under pressure to increase production.[11]  By this time, the high demand was not
7   surprising, because, as Forbes.com said "there's just no competition for that kind of deal
8   anywhere else on the planet."[12]

9       6.      There's a saying that if something sounds too good to be true, it probably is.
10  Plaintiff is informed and believes, and based thereon, alleges that after the dust settled
11  from BMW Group's marketing fervor, owners of First Generation MINIs found that they
12  had been duped because their vehicles did not stand the test of time.  It turns out BMW
13  Group was able offer such a fantastic deal because First Generation MINIs' beauty was
14  only skin deep.  Plaintiff is informed and believes, and based thereon, alleges that in their
15  haste to create a new "premium small car" market, BMW Group sacrificed quality to meet
16  demand and keep the sales price low, and as a result, First Generation MINIs were quickly
17  churned out with substandard parts and shoddy workmanship.  BMW Group refuses to
18  take responsibility for these actions, and instead, prefers that its customers be left to clean
19  up the mess it created.

20      7.      This case concerns BMW Group's failure to disclose a material problem
21  concerning Continuously Variable Transmissions ("CVTs") installed in First Generation
22  MINIs.  The CVTs are prone to premature failure, before the end of the useful life of the
23  vehicle, and well before consumers reasonably expect any such failure to occur.  Plaintiff
24  is informed and believes, and based thereon, alleges that a vehicle's automatic

---

[10] *See* fn. 3, *supra*, Dr. Michael Ganal, Member of the Board of BMW AG, stated, "the originally planned annual sales target of 100,000 units has been passed after just nine months."

[11] *See* fn. 2, *supra*.

[12] *See* fn. 9, *supra*.

3

transmission is intended and reasonably expected to last for at least ten years, if not more, without the need for repair or replacement. Nevertheless, Plaintiff is informed and believes, and based thereon, alleges that BMW Group installed defective CVTs in First Generation MINIs, knowing that they were prone to premature failure.

8. As a result of BMW Group's failure to disclose the fact that CVTs installed in First Generation MINIs were prone to premature failure, consumers are required to spend approximately $6,000 to $9,000 (one-third to one-half of the original purchase price) to repair or replace their CVTs, or sell their vehicle without repair for a substantial loss. The fact that the CVTs installed in First Generation MINIs were prone to premature failure is material because no reasonable consumer expects that they will have to spend approximately one-half to one-third of the cost of a vehicle for repairs in the early years of vehicle ownership.

9. Additionally, the fact that CVTs installed in First Generation MINIs were prone to premature failure is material to consumers because it presents a safety issue and places the driver and passengers at risk of serious harm. When CVTs fail, they do so without warning, resulting in a complete loss of power to the drive wheels. When CVTs fail while a vehicle is moving, occupants of the vehicle are exposed to rear end collisions and other accidents caused by the driver's inability to maintain an appropriate speed.

10. Plaintiff and members of the Class (as defined below) would not have bought First Generation MINIs had they known that the CVTs installed in the vehicles were prone to premature failure. Furthermore, had BMW Group timely disclosed to consumers the material fact that CVTs installed in First Generation MINIs were prone to premature failure, First Generation MINI owners would have required BMW Group to replace their CVTs before the warranty expired. BMW Group neither disclosed material facts to consumers at the time of purchase, nor anytime thereafter.

11. Plaintiff is informed and believes, and based thereon, alleges that BMW Group has been aware that CVTs installed in First Generation MINIs were prone to premature failure, yet the company not only refused to disclose the problem, BMW Group

4

1   actively denied knowledge of it, and instead, undertook affirmative efforts to conceal the

2   failures through, among other things, a series of Technical Service Bulletins issued to

3   repair facilities.  BMW Group concealed the fact that CVTs installed in First Generation

4   MINIs were prone to premature failure so that the warranty period on First Generation

5   MINIs will expire before owners become aware of the problem.  Through this practice,

6   BMW Group unlawfully transfers the cost of replacement from itself to the vehicle's

7   owner.

8       12.     As a result of its failure to disclose the material fact that CVTs installed in

9   First Generation MINIs were prone to premature failure, BMW Group has recklessly

10  placed the safety of the owners and occupants of First Generation MINIs at risk, and

11  caused owners of those vehicles to suffer damages.  Plaintiff seeks, on behalf of himself

12  and the Class (as defined below) injunctive relief, restitution, damages, and other

13  appropriate relief.

14                          **JURISDICTION AND VENUE**

15      13.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d)(2).  The

16  matter in controversy, exclusive of interest and costs, exceeds the sum or value of

17  $5,000,000 and is a class action in which members of the Class (as defined below) are

18  citizens of states different from Defendant.  Further, greater than two-thirds of the Class

19  Members reside in states other than the states in which Defendant are citizens.  In

20  addition, under 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over

21  the state law claims because all of the claims are derived from a common nucleus of

22  operative facts and are such that plaintiffs ordinarily would expect to try them in one

23  judicial proceeding.

24      14.     Venue lies within this judicial district under 28 U.S.C. § 1391(a) and (c)

25  because BMW Group has sufficient contacts with this District to subject it to personal

26  jurisdiction in this District, and a substantial part of the events and omissions giving rise

27  to the claims asserted in this Complaint occurred within this District.

28

CLASS ACTION COMPLAINT

**PARTIES**

15.    Plaintiff Brad Aarons, an individual, is a California resident.

16.    Defendant BMW of North America, LLC is a New Jersey limited liability company with its principal place of business located at 300 Chestnut Ridge Road, Woodcliff Lake, New Jersey 07677, and doing business in the State of California. Plaintiff is informed and believes, and on that basis, alleges that BMW of North America, LLC is responsible for the importation, distribution, marketing and sale of all 2002 through 2006 Mini Cooper Coupe models and 2005 through 2008 Mini Cooper Convertible models in the United States and California.

17.    Whenever, in this Complaint, reference is made to any act, deed, or conduct of BMW Group, the allegation means that BMW Group engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees or representatives who was actively engaged in the management, direction, control or transaction of the ordinary business and affairs of BMW Group.

**FACTUAL BACKGROUND**

18.    BMW Group designed, manufactured, imported, distributed, and marketed First Generation MINIs in the United States, including California.  BMW Group also provides maintenance services for First Generation MINIs through its nationwide network of authorized dealers and service providers.

19.    First Generation MINIs are equipped with CVTs that fail prematurely, without warning, and well before the end of the useful life of the vehicles.  As a result of the failure, CVTs becomes completely inoperable and must be replaced.  Consequently, First Generation MINI owners are required to incur substantial costs to replace their CVTs, or sell their vehicles for a substantially reduced price, causing them to suffer a monetary damages of approximately $6,000 to $9,000.  Additionally, because the CVT fails without warning, it poses a safety concern for occupants of the vehicles who are placed at risk being struck by other vehicles in traffic.

20.    Plaintiff is informed and believes, and based thereon, alleges that reasonable

6

1   alternative designs exist for automatic transmissions, and that BMW Group was aware of

2   these reasonable design alternatives.

3          21.     Hundreds of First Generation MINI owners have reported such complaints,

4   and BMW Group is well aware of the problem.  Plaintiff is informed and believes, and

5   based thereon, alleges that these complaints have been made to BMW Group directly,

6   including through the company's network of dealerships, and to BMW Group's customer

7   service agents.  Additionally, the National Highway Transportation and Safety

8   Administration ("NHTSA") has documented approximately 100 complaints concerning

9   this issue.  BMW Group refuses offer any remedy, or even publicly acknowledge the

10  problem.  Instead, BMW Group took steps to actively conceal the defect from consumers.

**Technical Service Bulletins**

12         22.     The CVTs installed in First Generation MINIs were plagued with problems

13  from the beginning.  BMW Group was well aware of the issues all along, but the company

14  kept it a secret, failing to disclose the problem, even as it continued to sell vehicles

15  equipped with CVTs prone to premature failure.  Among other things, BMW Group's

16  knowledge of the CVT problems is evidenced through series of Technical Service

17  Bulletins ("TSBs") issued by the company not long after First Generation MINIs were on

18  the road.

19         23.     Plaintiff is informed and believes, and on that basis, alleges that as a result of

20  the high rate of premature CVT failures, in November 2004, only approximately two

21  years after First Generation MINIs were initially offered for sale, BMW Group issued one

22  of the first of several TSBs.  This TSB (ref. no. SI M24 01 04) reveals BMW Group's

23  awareness and active concealment concerning premature CVT failures.  Through this

24  TSB, BMW Group stated that it was issuing special tools and repair instructions for an

25  input shaft seal to avoid replacing CVT transmissions.  In other words, only two years

26  after the first few MINIs were sold, BMW Group was aware that CVT failures had

27  become prevalent.  As a result, BMW Group had to design, manufacture, and distribute

28  special tools to stem the tide of CVT transmissions that required replacement.  The special

7

1  tool sets were issued through two separate TSBs (ref. nos. SI M04 06 04, and SI M04 04
2  04).

3       24.    The TSBs issued by BMW Group in November 2004 apparently failed to
4  resolve the CVT failures because, approximately one and a half years later, BMW Group
5  issued yet another TSB concerning the CVT (ref. no. SI M04 01 06).  Through TSB
6  number SI M04 01 06, BMW Group distributed an additional set of tools designed to
7  service the CVT input shaft bearings for the purpose of repairing a "howling noise from
8  the transmission."

9       25.    Despite BMW Group's efforts to conceal the issue, customer complaints and
10  CVT failures continued.  Accordingly, Plaintiff is informed an believes, and based
11  thereon, alleges that BMW Group issued another TSB (ref. no. SI M24 02 06) to give
12  guidance to dealerships on how to respond to the problem.  Rather than openly disclose
13  the material failures concerning the CVT, however, according to TSB number SI M24 02
14  06, if a First Generation MINI was experiencing "a howling type of noise coming from
15  the CVT transmission," BMW Group expressly instructed its dealerships as follows:
16  "**[o]n a customer complaint basis only**, replace the main CVT ball bearing together with
17  the flange bolts, cover & oil pump O-rings and the plate spring."  (*See* TSB ref. no. SI
18  M24 02 06, emphasis in original.)  Thus, not only did BMW Group fail to disclose the
19  material failure to consumers who bought First Generation MINIs, the company
20  intentionally designed a plan to conceal the truth from First Generation MINI owners,
21  making it less likely that they could have the CVT replaced before the warranty expired.

22       26.    Finally, BMW's knowledge of the CVT failures is demonstrated by its
23  issuance of TSB number SI M24 01 03, which instructed mechanics to determine whether
24  a CVT suffered from "internal transmission failure."  Nevertheless, BMW Group's
25  knowledge that the CVT was prone to premature failure and required replacement, BMW
26  Group concealed this material fact from consumers.

27                         **NHTSA Complaints**
28       27.    Notwithstanding the TSBs, BMW Group also is aware of the fact that CVTs

8

1  installed in First Generation MINIs are prone to premature failure because of the

2  numerous complaints concerning the issue that have been made to the NHTSA.

3  Nevertheless, even in the face of these complaints, BMW Group continues to deny that

4  there is a problem with the CVTs and refuses to disclose the truth to consumers.

5      28.    A small sample of the complaints regarding CVT failures reported to the

6  NHTSA is as follows:

7  Make : MINI                    Model : COOPER                Year : 2002

8  Manufacturer : BMW OF NORTH AMERICA, LLC

9  Crash : No              Fire : No                    Number of Injuries: 0

10  ODI ID Number : 10269497                            Number of Deaths: 0

11  Date of Failure: May 13, 2009

   VIN : WMWRC33412T...

12  Component: POWER TRAIN:AUTOMATIC TRANSMISSION

13  Summary:
       TRANSMISSION WHINING NOISE EVENTUALLY LEADING TO TRANSMISSION
14  FAILURE. MINI IS AWARE OF THIS PROBLEM WITH CVT TRANSMISSIONS AND REFUSES
   TO ADMIT FAULT. VERY COMMON PROBLEM OCCURRING IN MOST 2002 VEHICLES
15  WITH ONLY 40,000-60,000 MILES ON THEM. COST IS 7000 TO REPLACE. MINI DOES NOT
   OFFER REPAIR ON THIS PART. *TR
16

17

18  Make : MINI                    Model : COOPER                Year : 2002

19  Manufacturer : BMW OF NORTH AMERICA, LLC

20  Crash : No              Fire : No                    Number of Injuries: 0

21  ODI ID Number : 10211394                            Number of Deaths: 0

   Date of Failure: November 30, 2007
22
   VIN : WMWRC33442T...
23
   Component: POWER TRAIN:AUTOMATIC TRANSMISSION
24  Summary:
       I HAVE A 2002 MINI COOPER WITH A CVT AUTOMATIC TRANSMISSION. THE
25  TRANSMISSION HAS FAILED. THE CARE HAS ABOUT 61,000 MILES. THE TRANSMISSION
   HAS TO BE REPLACED COSTING ME AT LEAST $6,000. *TR
26

27

28

                                    9

Make : MINI                Model : COOPER                Year : 2003

Manufacturer : BMW OF NORTH AMERICA, LLC

Crash : No                 Fire : No                 Number of Injuries: 0

ODI ID Number : 10392840                           Number of Deaths: 0

Date of Failure: November 19, 2010

VIN : WMWRC33473T...

Component: POWER TRAIN:AUTOMATIC TRANSMISSION

Summary:
    MY 2003 MINI COOPER HAS HAD TOTAL TRANSMISSION FAILURE (CVT
TRANSMISSION) AT ONLY 46,129 MILES. FAILURE WAS TOTAL AND SUDDEN AND
VEHICLE IS UNDRIVEABLE WITHOUT NEW TRANSMISSION. THE DEALER QUOTED ME A
COST OF $10,055.44 (PARTS $6,943.28, LABOR $2,700 + TAX). THIS COST IS MORE THAT THE
VEHICLES' CURRENT VALUE. I HAVE BEEN TOLD THAT ONLY A NEW CVT
TRANSMISSION CAN REPLACE THE FAULTY ONE, AND EVEN THEN THAT TRANSMISSION
MAY AGAIN FAIL AS THEY ARE SUCH TERRIBLE TRANSMISSIONS. THE CAR WILL NOT
TAKE ANY OTHER TRANSMISSION OPTION. THE DEALER BASICALLY LAUGHED AND
SAID, "I DON'T SUPPOSE YOU HAVE AN EXTRA $10,000 LAYING AROUND," WHEN HE
TOLD ME THE COST OF THE REPAIR. THE DEALER HAS OFFERED NO ASSISTANCE IN
LOWERING THE COST, BUT BASICALLY SAID "TOUGH LUCK" AND TAKEN NO
RESPONSIBILITY. THE CAR IS USELESS AND UNFIXABLE AT THIS COST. A RECALL
SHOULD BE DONE AS CONSUMERS HAVE BEEN SOLD A FAILED TRANSMISSION, AND
THE SAFETY OF THIS CAR'S TRANSMISSION IS TOTALLY FAULTY. *TR

CLASS ACTION COMPLAINT

Make : MINI                    Model : COOPER                    Year : 2003

Manufacturer : BMW OF NORTH AMERICA, LLC

Crash : No                     Fire : No                        Number of Injuries: 0

ODI ID Number : 10335358                                        Number of Deaths: 0

Date of Failure: June 7, 2010

VIN : WMWRC33403T...

Component: POWER TRAIN:AUTOMATIC TRANSMISSION

Summary:
    THE CVT TRANSMISSION ON MY 2003 MINI COOPER HAS FAILED RENDERING THE
CAR NOT DRIVABLE. THE TRANSMISSION HAS ALWAYS BEEN QUIRKY, BUT I WAS
ASSURED BY THE DEALER THAT IT WAS WORKING PROPERLY. THE TRANSMISSION
SLIPS DRASTICALLY AND MAKES A VERY AUDIBLE WHIRRING SOUND. THE ONLY
OPTION FOR REPAIR IS A COMPLETE NEW PART INSTALL AT THE DEALER COST OF
$8,800. I HAVE READ HUNDREDS AND HUNDREDS OF IDENTICAL STORIES ABOUT THE
CVTS ON MINI COOPERS AS WELL AS THE POWER STEERING PUMP. IT SEEMS FROM
RESEARCH THAT THIS PART COMMONLY FAILS AND REPLACING WITH A DEFECTIVE
PART AT A COST NEAR NINE THOUSAND DOLLARS IS ABSURD AND DISGUSTING. IT IS
COST PROHIBITIVE TO KEEP MY CAR OPERATING AND I FEEL AS THOUGH I HAVE, AS
WELL AS THOUSANDS OF OTHER MINI OWNERS HAVE BEEN SOLD A DEFECTIVE
PRODUCT WORTHY OF RECALL. *TR

Make : MINI                    Model : COOPER                    Year : 2005

Manufacturer : BMW OF NORTH AMERICA, LLC

Crash : No                     Fire : No                        Number of Injuries: 0

ODI ID Number : 10262055                                        Number of Deaths: 0

Date of Failure: March 12, 2009

VIN : WMWRC335X5T...

Component: POWER TRAIN:AUTOMATIC TRANSMISSION

Summary:
    TL*THE CONTACT OWNS A 2005 MINI COOPER. WHILE DRIVING 25 MPH, THE VEHICLE
JERKED AND MADE RATTLING AND POPPING SOUNDS. THE VEHICLE SHUT OFF AND THE
CONTACT PUSHED IT TO THE SIDE OF THE ROAD. THE KEY COULD NOT BE REMOVED
FROM THE IGNITION AND THE VEHICLE HAD TO BE TOWED TO THE DEALER. SHE WAS
INFORMED THAT THE TRANSMISSION FAILED AND WOULD COST $7,000 TO REPAIR. THE
CONTACT WILL CALL THE MANUFACTURER FOR ASSISTANCE. THE FAILURE MILEAGE
WAS 62,000.

11

1

## Safety Concerns

2      29.      In connection with its failure to disclose the fact that CVTs are prone to

3 premature failure, BMW Group also risks the safety of occupants of First Generation

4 MINIs.  When CVTs prematurely fail, without warning, while the vehicle is moving or in

5 traffic, drivers lose the ability to accelerate or maintain appropriate speed, thereby

6 increasing the risk of a crash.

7      30.      Indeed, numerous First Generation MINI drivers have reported their safety

8 concerns to the NHTSA.  A small sample of these reports is as follows (emphasis added):

9 Make : MINI                         Model : COOPER                         Year : 2002

10 Manufacturer : BMW OF NORTH AMERICA, LLC

11 Crash : No                          Fire : No                          Number of Injuries: 0

ODI ID Number : 10276566                                          Number of Deaths: 0

12 Date of Failure: July 11, 2009

13 VIN : WMWRC33412T...

14 Component: POWER TRAIN:AUTOMATIC TRANSMISSION

15 Summary:
    TL*THE CONTACT OWNS A 2002 MINI COOPER. THE VEHICLE SHUT OFF WHILE
16 DRIVING APPROXIMATELY 25 MPH. THERE WERE NO WARNINGS PRIOR TO THE
TRANSMISSION FAILURE. THE CONTACT FEELS THAT THIS IS A **SERIOUS SAFETY ISSUE**
17 **BECAUSE A CRASH COULD HAVE OCCURRED**. THE FAILURE MILEAGE WAS 63,000.

18

19

20

21

22

23

24

25

26

27

28

12

Make : MINI                    Model : COOPER              Year : 2002

Manufacturer : BMW OF NORTH AMERICA, LLC

Crash : No                     Fire : No                  Number of Injuries: 0

ODI ID Number : 10241197                                  Number of Deaths: 0

Date of Failure: August 3, 2008

VIN : WMWRC33472T...

Component: POWER TRAIN:AUTOMATIC TRANSMISSION

Summary:
    THE AUTOMATIC TRANSMISSION OF MY 2002 MINI COOPER FAILED WHILE MY FRIEND WAS DRIVING MY CAR. **SHE WAS ON A WINDING COASTAL ROAD AND THE CAR DIED ON A BLIND CURVE, PUTTING HER AT GREAT DANGER.** FORTUNATELY NOBODY WAS HURT. THE CAR WAS TOWED TO THE SAN FRANCISCO BMW DEALERSHIP, WHERE I WAS INFORMED I NEEDED A $8500 "REFURBISHED" TRANSMISSION, AS THE TRANSMISSION IS NOT EVEN MADE ANYMORE. RESEARCH ON LINE SHOWS THAT THIS BECOMING A FREQUENT PROBLEM WITH "FIRST GENERATION" MINIS WITH THE "CVT" AUTOMATIC TRANSMISSION. I DECLINED THE REPAIR AND SOLD THEM THE CARCASS OF MY CAR. **THIS IS A DANGEROUS PROBLEM AND BMW/MINI IS NOT ACCEPTING RESPONSIBILITY.** *TR


Make : MINI                    Model : COOPER              Year : 2002

Manufacturer : BMW OF NORTH AMERICA, LLC

Crash : No                     Fire : No                  Number of Injuries: 0

ODI ID Number : 10237175                                  Number of Deaths: 0

Date of Failure: August 5, 2002

VIN : WMWRC33432T...

Component: POWER TRAIN:AUTOMATIC TRANSMISSION

Summary:
    I AM THE SECOND OWNER (BOTH OLDER LADIES), OF A 2002 AUTOMATIC MINI COOPER WITH 46,000 MILES. YESTERDAY WHILE DRIVING HOME FROM WORK THE TRANNY FAILED. IT DOWNSHIFTED OR SOMETHING AND THE EP WARNING LIGHT CAME ON, WHICH MEANS **TRANSMISSION FAILURE AND I WAS TWO FEET AWAY FROM BEING REAR ENDED! I COULD HAVE BEEN KILLED.** AFTER RESEARCHING ON LINE, I HAVE READ GREAT AMOUNTS OF CONSUMERS WITH THE SAME COMPLAINT. IT IS DANGEROUS AND VERY COSTLY ACCORDING TO THE FIGURES I'VE READ OF PEOPLE WHOSE HAD THEIRS FIXED OR REPLACED. THESE CARS WITH **THE CVT TRANSMISSIONS NEEDS TO BE ANNOUNCED TO THE PUBLIC FOR SAFETY REASONS** ALONE NOT EVEN TO MENTION THE COST! SINCERELY, BONNIE QUINN *TR

13

Make : MINI                      Model : COOPER                        Year : 2003

Manufacturer : BMW OF NORTH AMERICA, LLC

Crash : No                       Fire : No                            Number of Injuries: 0

ODI ID Number : 10383299                                              Number of Deaths: 0

Date of Failure: February 18, 2011

VIN : WMWRC33433T...

Component: POWER TRAIN:AUTOMATIC TRANSMISSION

Summary:
    I OWN A 2003 MINI COOPER WITH A CVT AUTOMATIC TRANSMISSION, TRANSMISSION AND FRONT DIFFERENTIAL FILED AT 58000 MILES LUCKY FOR ME I WAS NOT ON THE INTERSTATE OR BUSY TRAFFIC AS A SERIOUS ACCIDENT COULD HAVE OCCURRED. MINI USA ARE TOTALLY AWARE OF THE PROBLEM AND STOPPED PUTTING THIS DEFECTIVE PART IN NEWER MODEL VEHICLES. THEY WILL ALSO NOT STAND BEHIND THEIR PRODUCT AND ARE UNWILLING TO RECTIFY IT. **THERE ARE HUNDREDS OF PEOPLE WITH THIS SAME ISSUE CONCERNING THIS TRANSMISSION BUT FOR WHATEVER REASON THERE IS STILL NO SAFETY RECALL. I HOPE IT IS NOT GOING TO TAKE SOMEONE TO BE KILLED OR SERIOUSLY INJURED BEFORE ANYTHING IS DONE.** ALSO THE BUSHINGS ON THE DRIVERS SIDE A FRAME ARE BAD WCH IN MY OPINION IS A SERIOUS FAULT AND COULD BE EXTREMELY DANGEROUS. COST OF REPLACEMENT IS 7,000+ THESE CARS ARE ROLLING DEATH TRAPS IN MY OPINION AND SOMEONE NEEDS TO BE HELD ACCOUNTABLE. *LN


Make : MINI                      Model : COOPER                        Year : 2004

Manufacturer : BMW OF NORTH AMERICA, LLC

Crash : No                       Fire : No                            Number of Injuries: 0

ODI ID Number : 10299826                                              Number of Deaths: 0

Date of Failure: July 10, 2008

VIN : WMWRC334X4T...

Component: POWER TRAIN:AUTOMATIC TRANSMISSION

Summary:
    MY 2004 MINI COOPERS **TRANSMISSION FAILED AT 80K MILES WITH NO WARNING. LUCKILY I WAS IN A PARKING LOT AND NOT ON THE HIGHWAY, WHERE I COULD HAVE BEEN KILLED.** THE COST OF REPLACING THE TRANNY WAS $7,000. MINI USA WAS USELESS WHEN I PLEADED WITH THEM TO HELP ME. AFTER READING ABOUT ALL OF THE OTHER COMPLAINTS WITH THE CVT TRANS, I CAN'T BELIEVE THERE WAS NO RECALL. I WILL NEVER BUY A MINI AGAIN. I STILL OWE $11,000 ON THE CAR AND CANNOT AFFORD ANOTHER. *TR

14

**PLAINTIFF'S CLAIMS AGAINST BMW GROUP**

31.     Plaintiff Brad Aarons is a resident of Los Angeles, California.

32.     Plaintiff purchased a new 2003 Mini Cooper Coupe that came equipped with a CVT style automatic transmission from Assael BMW Mini of Monrovia, California in or around April 2003.

33.     In December 2010, with only approximately 65,000 miles on Plaintiff's vehicle, the CVT suffered a complete failure. After taking his vehicle in for repairs and discussing the problem with BMW Group's customer service representatives, Plaintiff was informed that he would be required to purchase a new transmission at a cost of approximately $7,000 ($5,500 for a new transmission and an estimated $1,200 or more for labor to remove the old transmission and install the new one).

34.     When Plaintiff asked BMW Group's representatives how much his vehicle would be worth as a trade in for a new MINI, he was told that the company did not want his vehicle. Rather than invest approximately $7,000 into a car with an estimated resale value of $11,000, as a result of BMW Group's unlawful conduct, Plaintiff was forced to sell the vehicle to a third party for $3,300, causing him to suffer a substantial economic loss.

**STATUTE OF LIMITATIONS**

35.     Any applicable statutes of limitations have been tolled by BMW Group's knowing and active concealment, denial, and misleading actions, as alleged herein. Plaintiff and members of the Class defined below were kept ignorant of critical information required for the prosecution of their claims, without any fault or lack of diligence on their part. Plaintiff and members of the Class could not reasonably have discovered the true latent nature of the CVT defect or any of the issues and facts alleged herein.

36.     BMW Group is under a continuous duty to disclose to Plaintiff and members of the Class the true character, quality, and nature of First Generation MINIs, and to disclose the existence of the material failure of the CVT. BMW Group knowingly,

15

1  affirmatively, and actively concealed the true character, quality, and nature of the CVT

2  defect.  Plaintiff and members of the Class reasonably relied upon BMW Group's

3  knowing, affirmative, and active concealment.  Based on the foregoing, BMW Group is

4  estopped from relying on any statutes of limitation as a defense in this action.

5       37.    The causes of action alleged herein did or will only accrue upon discovery of

6  the latent CVT defect, as a result of BMW Group's fraudulent concealment of the CVT

7  defect.  Plaintiff and members of the Class did not discover, and could not have

8  discovered, through the exercise of reasonable diligence, the true nature of the CVT

9  defect.

10                     **CLASS ACTION ALLEGATIONS**

11       38.    Plaintiff brings this action, on behalf of himself and all others similarly

12  situated, as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

13       39.    The class Plaintiff seeks to represent is defined as follows:

14       All residents of California who, at any time before the filing of
         this Complaint, purchased or leased, a 2002 through 2006 Mini
15       Cooper Coupe or 2005 through 2008 Mini Cooper Convertible
         in California.  Excluded from the Class are BMW Group's
16       officers, directors, and employees (the "Class").
17

18       40.    Plaintiff reserves the right to amend the Class definitions if discovery and

19  further investigation reveals that the Class should be expanded or otherwise modified.

20       41.    Plaintiff reserves the right to establish subclasses as appropriate.

21       42.    This action is brought and properly may be maintained as a class action

22  pursuant to the provisions of Federal Rules of Civil Procedure 23(a)(1)-(4) and 23(b)(1),

23  (b)(2) or (b)(3) and satisfies the requirements thereof.

24       43.    Community of Interest:  There is a well-defined community of interest

25  among members of the Class, and the disposition of the claims of these members of the

26  Class in a single action will provide substantial benefits to all parties and to the Court.

27       44.    Numerosity:  While the exact number of members of the Class is unknown to

28

1    Plaintiff at this time and can only be determined by appropriate discovery, membership in

2    the Class is ascertainable based upon the records maintained by BMW Group.  At this

3    time, Plaintiff is informed and believes that the Class includes thousands of members.

4    Therefore, the Class is sufficiently numerous that joinder of all members of the Class in a

5    single action is impracticable under Federal Rule of Civil Procedure Rule 23(a)(1), and

6    the resolution of their claims through the procedure of a class action will be of benefit to

7    the parties and the Court.

8         45.    Ascertainablity:  Names and addresses of members of the Class are available

9    from BMW Group's records.  Notice can be provided to the members of the Class through

10   direct mailing, publication, or otherwise using techniques and a form of notice similar to

11   those customarily used in consumer class actions arising under California state law and

12   federal law.

13        46.    Typicality:  Plaintiff's claims are typical of the claims of the other members

14   of the Class which he seeks to represent under Federal Rule of Civil Procedure 23(a)(3)

15   because Plaintiff and each member of the Class has been subjected to the same deceptive

16   and improper practices and has been damaged in the same manner thereby.

17        47.    Adequacy:  Plaintiff will fairly and adequately represent and protect the

18   interests of the Class as required by Federal Rule of Civil Procedure Rule 23(a)(4).

19   Plaintiff is an adequate representative of the Class, because he has no interests which are

20   adverse to the interests of the members of the Class.  Plaintiff is committed to the

21   vigorous prosecution of this action and, to that end, Plaintiff has retained counsel who are

22   competent and experienced in handling class action litigation on behalf of consumers.

23        48.    Superiority: A class action is superior to all other available methods of the

24   fair and efficient adjudication of the claims asserted in this action under Federal Rule of

25   Civil Procedure 23(b)(3) because:

26              (a)    The expense and burden of individual litigation make it economically

27                     unfeasible for members of the Class to seek to redress their "negative

28                     value" claims other than through the procedure of a class action.

17

(b)     If separate actions were brought by individual members of the Class, the resulting duplicity of lawsuits would cause members to seek to redress their "negative value" claims other than through the procedure of a class action; and

(c)     Absent a class action, BMW Group likely would retain the benefits of its wrongdoing, and there would be a failure of justice.

49.     Common questions of law and fact exist as to the members of the Class, as required by Federal Rule of Civil Procedure 23(a)(2), and predominate over any questions which affect individual members of the Class within the meaning of Federal Rule of Civil Procedure 23(b)(3).

50.     The common questions of fact include, but are not limited to, the following:

(a)     Whether CVTs installed in First Generation MINIs were prone to premature failure;

(b)     Whether BMW Group knew or should have known that CVTs installed in First Generation MINIs were prone to premature failure;

(c)     Whether BMW Group had a duty to disclose the the CVTs installed in First Generation MINIs were prone to premature failure;

(d)     Whether BMW Group breached its duty to disclose the the CVTs installed in First Generation MINIs were prone to premature failure;

(e)     Whether BMW Group's conduct, as alleged herein, was unlawful, unfair, or fraudulent under the California's Unfair Competition Law, California Business & Professions Code sections 17200 *et seq.*;

(f)     Whether BMW's conduct, as alleged herein, violated California's Consumers Legal Remedies Act, California Civil Code sections 1750 *et seq.*;

(g)     Whether BMW Group was unjustly enriched at the expense of the Class;

18

(h)     Whether BMW Group actively concealed material facts from Plaintiff and members of the Class for the purpose of transferring the cost of the CVT failure to consumers; and

(i)     Whether Plaintiff and members of the Class are entitled to restitution and damages.

51.     In the alternative, this action is certifiable under the provisions of Federal Rule of Civil Procedure 23(b)(1) and/or 23(b)(2) because:

(a)     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for BMW Group;

(b)     The prosecution of separate actions by individual members of the Class would create a risk of adjudications as to them which would, as a practical matter, be dispositive of the interests of the other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

(c)     BMW Group has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole and necessitating that any such relief be extended to members of the Class on a mandatory, class-wide basis.

52.     Plaintiff is not aware of any difficulty which will be encountered in the management of this litigation which should preclude its maintenance as a class action.

CLASS ACTION COMPLAINT

# FIRST CAUSE OF ACTION

## Violation of the Consumers Legal Remedies Act

### (Cal. Civil Code § 1750 *et seq.*)

53.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

54.     Plaintiff brings this cause of action against BMW Group on behalf of himself and members of the Class.

55.     This cause of action is brought under the Consumers Legal Remedies Act, California Civil Code sections 1750 *et seq.* ("CLRA").  Plaintiff and members of the Class are consumers as defined by California Civil Code section 1761(d).  First Generation MINIs are goods within the meaning of California Civil Code section 1761(a).

56.     BMW Group violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code section 1770(a) in transactions with Plaintiff and members of the Class, which were intended to result in, and did result in, the sale of First Generation MINIs:

> (5)     Representing that [First Generation MINIs have]… characteristics…[and] uses…which they do not have….
>
> (7)     Representing that [First Generation MINIs] are of a particular standard…if they are of another.
>
> (9)     Advertising goods…with intent not to sell them as advertised.

57.     BMW Group violated the CRLA by failing to timely disclose to Plaintiff and members of the Class that the CVTs installed in First Generation MINIs were prone to premature failure.

58.     BMW Group further violated the CRLA by actively concealing material facts from Plaintiff and members of the Class for the purpose of transferring the cost of the CVT defect to consumers.

59.     BMW Group also violated the CLRA because its failure to disclose to Plaintiff and members of the Class the material fact that CVTs were prone to premature

20

1  failure risked the safety of owners and occupants of First Generation MINIs.

2       60.    As a result of BMW Group's failure to disclose that CVTs installed in First

3  Generation MINIs were prone to premature failure, Plaintiff and members of the Class

4  were exposed to safety risks, were required to spend approximately $6,000 to $9,000

5  (one-third to one-half of the original purchase price) to repair or replace their CVTs, or

6  sell their vehicle without repair for a substantial loss.  The fact that the CVTs installed in

7  First Generation MINIs were prone to premature failure is material because no reasonable

8  consumer expects that they will have to spend approximately one-half to one-third of the

9  cost of a vehicle for repairs in the early years of vehicle ownership.

10       61.    On May 19, 2011, via certified mail, return receipt requested, under Section

11  1782 of the CLRA, Plaintiff's counsel notified BMW Group in writing of the particular

12  violations of Section 1770, and demanded that it rectify the problems associated with the

13  behavior detailed above, which acts and practices are in violation of Section 1770.

14       62.    BMW Group failed to adequately respond to Plaintiff's above-described

15  demand, nor did it give notice to all affected consumers under Section 1782.  A

16  representative from BMW Group responded via email on June 16, 2011, stating that "[a]

17  team of corporate, market and dealer personnel is currently investigating the service

18  history," and that the company "will soon be in contact with you to address your client's

19  concern."  Despite Plaintiff's counsel's repeated attempts to follow up with BMW Group,

20  no substantive response was ever provided.  Therefore, under Section 1780(a) of the

21  CLRA, Plaintiff and members of the Class seek actual and punitive damages.

22       63.    Under Section 1782(d) of the CLRA, Plaintiff, on behalf of himself and

23  members of the Class, also seeks an order enjoining the act and practices described above,

24  restitution of property, any other relief that the court deems proper.

25       64.    BMW Group's conduct is malicious, fraudulent, and wanton, and the

26  company continues to intentionally mislead and withhold material information from

27  consumers.  The malicious, fraudulent, and wanton nature of BMW Group's conduct is

28  evidenced by the fact that even after receiving notice of the issues described above from

21

1   Plaintiff and countless other consumers, BMW Group continues to deny that there is any
2   problem with the CVT installed in First Generation MINIs and refuses to offer Plaintiff
3   and members of the  Class any remedy for the damages it has caused.

## SECOND CAUSE OF ACTION

### Violation of Unfair Business Practices Act

### (California Business & Professions Code §§ 17200 *et seq.*)

7       65.     Plaintiff hereby incorporates by reference the allegations contained in the
8   preceding paragraphs of this Complaint.

9       66.     Plaintiff brings this cause of action on behalf of himself and the members of
10   the Class.

11       67.     California Business and Professions Code section 17200 prohibits "any
12   unlawful, unfair or fraudulent business act or practice." For the reasons described above,
13   BMW Group has engaged in unlawful, unfair, and/or fraudulent business acts or practices
14   in violation of California Business and Professions Code section 17200.

15       68.     BMW Group's misrepresentations and omissions of material facts, as set
16   forth herein, constitute an "unlawful" practice because they violate California Civil Code
17   sections 1572, 1573, 1709, 1710, 1711, 1770, California Business and Professions Code
18   sections 17200 *et seq.* and the common law.

19       69.     BMW Group's misrepresentations and omissions of material facts, as set
20   forth herein, also constitute "unfair" business acts and practices within the meaning of
21   California Business and Professions Code sections 17200 *et seq.*, in that BMW Group's
22   conduct was injurious to consumers, offended public policy, and was unethical and
23   unscrupulous. Plaintiff also asserts a violation of public policy by withholding material
24   facts from consumers. BMW Group's violation of consumer protection and unfair
25   competition laws in California and other states resulted in harm to consumers.

26       70.     There were reasonable alternatives available to BMW Group to further BMW
27   Group's legitimate business interests, other than the conduct described herein.

28       71.     California Business and Professions Code section 17200 also prohibits any

"fraudulent business act or practice."

72. BMW Group's misrepresentations and concealment of material facts, as set forth above, were false, misleading, and likely to deceive the public within the meaning of California Business and Professions Code section 17200.

73. BMW Group's misrepresentations and concealment were made with knowledge of their effect, and to induce Plaintiff and members of the Class to purchase First Generation MINIs and to discourage them from seeking replacement while the vehicles were under warranty, thereby unlawfully transferring the costs from BMW Group to Plaintiff and members of the Class. Plaintiff and members of the Class justifiable relied on upon BMW Group's knowing, affirmative, and active concealment when they purchased their First Generation MINIs, and when they failed to seek to have their CVT replaced within the warranty period.

74. BMW Group's conduct caused and continues to cause injury to Plaintiff members of the Class. Plaintiff and members of the Class have suffered injury in fact and have lost money as a result of BMW Group's conduct.

75. As a result of BMW Group's failure to disclose that CVTs installed in First Generation MINIs were prone to premature failure, Plaintiff and members of the Class were exposed to safety risks, were required to spend approximately $6,000 to $9,000 (one-third to one-half of the original purchase price) to repair or replace their CVTs, or sell their vehicle without repair for a substantial loss. Therefore, the fact that the CVTs installed in First Generation MINIs were prone to premature failure is material because no reasonable consumer expects that they will have to spend approximately one half to one third of the cost of a vehicle for repairs in the early years of vehicle ownership.

76. Additionally, the fact that CVTs installed in First Generation MINIs were prone to premature failure is material to consumers because it presents a safety issue and places the driver and passengers at risk of serious harm. When CVTs fail, they do so without warning, resulting in a complete loss of power to the drive wheels. When CVTs fail while a vehicle is moving, occupants of the vehicle are exposed to rear end collisions

23

1    and other accidents caused by the driver's inability to maintain an appropriate speed.

2        77.    Accordingly, Plaintiff and members of the Class would not have purchased

3    their First Generation MINIs had it not been for BMW Group's misrepresentations and

4    concealment of material facts.

5        78.    BMW Group has thus engaged in unlawful, unfair, and fraudulent business

6    acts entitling Plaintiff and members of the Class to judgment and equitable relief against

7    BMW Group, as set forth in the Prayer for Relief.

8        79.    Additionally, under Business and Professions Code section 17203, Plaintiff

9    and members of the Class seek an order requiring BMW Group to immediately cease such

10   acts of unlawful, unfair, and fraudulent business practices and require BMW Group to

11   correct its actions.

**THIRD CAUSE OF ACTION**

**(Fraud)**

14       80.    Plaintiff hereby incorporates by reference the allegations contained in the

15   preceding paragraphs of this Complaint.

16       81.    Plaintiff brings this cause of action on behalf of himself and the members of

17   the Class.

18       82.    BMW Group concealed and suppressed material facts, namely, the fact that

19   CVTs installed in First Generation MINIs were prone to premature failure, exposing

20   drivers and occupants of First Generation MINIs to safety risks, and members of the Class

21   to suffer monetary damages.

22       83.    BMW Group knew its concealment and suppression of materials facts was

23   false and misleading.

24       84.    As a result of BMW Group's failure to disclose to members of the Class the

25   material fact that CVTs installed in First Generation MINIs were prone to premature

26   failure, consumers are required to spend approximately $6,000 to $9,000 (one-third to

27   one-half of the original purchase price) to repair or replace their CVTs, or sell their

28   vehicle without repair for a substantial loss.  Therefore, the fact that the CVTs installed in

24

First Generation MINIs were prone to premature failure is material because no reasonable consumer expects that they will have to spend approximately one-half to one-third of the cost of a vehicle for repairs in the early years of vehicle ownership.

85.    Additionally, the fact that CVTs installed in First Generation MINIs were prone to premature failure is material to consumers because it presents a safety issue and places the driver and passengers at risk of serious harm.  When CVTs fail, they do so without warning, resulting in a complete loss of power to the drive wheels.  When CVTs fail while a First Generation MINI is moving, occupants of the vehicle are exposed to rear end collisions and other accidents caused by the driver's inability to maintain an appropriate speed.  Accordingly, Plaintiff and members of the Class would not have purchased First Generation MINIs but for BMW Group's omissions and concealment of material facts.

86.    BMW Group made the omissions and concealment of material facts discussed above with knowledge of the effect of concealing of these material facts.  BMW Group knew that by misleading consumers, it would sell more First Generation MINIs, and it would discourage consumers from seeking replacement of their CVT within the warranty period, thereby unlawfully transferring the cost of replacement from itself to the vehicle's owner, both of which would result in higher profit margins for the company.

87.    Plaintiff and members of the Class justifiably relied upon BMW Group's knowing, affirmative, and active concealment.  By concealing material information about First Generation MINIs, BMW Group intended to induce Plaintiff and members of the Class into purchasing First Generation MINIs and discourage them from seeking replacement of the CVT within the warranty period.

88.    BMW Group acted with malice, oppression, or fraud.

89.    As a direct and proximate result of BMW Group's omissions and active concealment of material facts, Plaintiff and each member of the Class has been damaged in an amount according to proof at trial.

# PRAYER FOR RELIEF

Plaintiff, and on behalf of himself and all others similarly situated, requests the Court enter judgment against BMW Group, as follows:

1.      Certifying the Class as requested herein;

2.      Ordering that BMW Group is financially responsible for notifying all members of the Class of the alleged omissions and active concealment of material facts discussed herein;

3.      Awarding Plaintiff and the members of the Class compensatory damages in an amount according to proof at trial;

4.      Awarding restitution and disgorgement of BMW Group's revenues to Plaintiff and members of the Class;

5.      Awarding declaratory and injunctive relief as permitted by law or equity, including enjoining BMW Group from continuing the unlawful practices as set forth herein, and directing BMW Group to identify, with Court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by BMW Group by means of any act or practice declared by this Court to be wrongful;

6.      Awarding to Plaintiff and the Class punitive damages;

7.      Ordering BMW Group to engage in corrective advertising;

8.      Awarding interest on the monies wrongfully obtained from the date of collection through the date of entry of judgment in this action;

9.      Awarding attorneys' fees, expenses, and recoverable costs reasonably incurred in connection with the commencement and prosecution of this action; and

CLASS ACTION COMPLAINT

1    10.    For such other and further relief as the Court deems just and proper.

2    Dated: September *15*, 2011                BARON & BUDD, P.C.

3

4

5                                              By: _____
                                                    Mark P. Pifko

6
                                               Attorneys for Plaintiff
7                                              BRAD AARONS, individually, and on
                                               behalf of other members of the public
8                                              similarly situated

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

1

## **DEMAND FOR JURY TRIAL**

2          Plaintiff requests trial by jury on all issues so triable.

3                                                      Respectfully submitted,

4
      Dated: September *15*, 2011             BARON & BUDD, P.C.
5

6

7                                            By: _____
                                                 Mark P. Pifko
8
                                             Attorneys for Plaintiff
9                                            BRAD AARONS, individually, and on
                                             behalf of other members of the public
10                                           similarly situated

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    28

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| BRAD AARONS, individually, and on behalf of other members of the general public similarly situated, | ) ) ) |
| *Plaintiff* | ) |
| v. | ) ) |
| BMW of NORTH AMERICA, LLC, a New Jersey Limited Liability Company, | ) ) |
| *Defendant* | ) |

**CV11- 07667** PSG ((wx)

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   BMW of NORTH AMERICA, LLC, a New Jersey Limited Liability Company
300 Chestnut Ridge Road
Woodcliff Lake, New Jersey  07677

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

SEP 1 5 2011

Date: _____

CLERK OF COURT

JULIE PRADO   SEAL

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify)*:


My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.

Date: _____                    _____
                                                   *Server's signature*

                                          _____
                                                   *Printed name and title*

                                          _____
                                                   *Server's address*

Additional information regarding attempted service, etc:

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
BRAD AARONS, individually, and on behalf of other members of the general
public similarly situated

**DEFENDANTS**
BMW of NORTH AMERICA, LLC, a New Jersey Limited Liability Company

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing
yourself, provide same.)
Mark Pifko, Esq. (SBN 228412)
BARON & BUDD, P.C.
1999 Avenue of the Stars, Suite 3450, Los Angeles, CA 90067

Attorneys (If Known)

---

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

---

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

---

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes  ☐ No        ☐ **MONEY DEMANDED IN COMPLAINT:** $ Exceed $5,000,000.00

---

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Class Action Fairness Act of 2005, 28 U.S.C. section 1332 (a) and (b); Class action complaint for fraud and injunctive relief under UCL and damages under the CLRA.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☑ 890 Other Statutory Actions | ☐ 190 Other Contract | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | IMMIGRATION | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 240 Torts to Land | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | |
| | ☐ 290 All Other Real Property | | | | |

CV 11 - 07667

---

**FOR OFFICE USE ONLY:**   Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)                          CIVIL COVER SHEET                          Page 1 of 2

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☒ No  ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
  ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
  ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
  ☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | New Jersey |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
  Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved.

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _____   Date September 15, 2011

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |