Roland Tellis (SBN 186269)
rtellis@baronbudd.com
Mark Pifko (SBN 228412)
mpifko@baronbudd.com
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone: (818) 839-2333
Facsimile: (818) 986-9698

Payam Shahian (SBN 228406)
Pshahian@slpattorney.com
STRATEGIC LEGAL PRACTICES, APC
1875 Century Park East, Suite 700
Los Angeles, California 90067
Telephone: (310) 277-1040
Facsimile: (310) 943-3838

[Additional attorneys listed below signature line]
Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

| | |
|---|---|
| BRAD AARONS, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC, a New Jersey limited liability company et al.<br><br>Defendants.<br><br>AND RELATED CASES | Case No. 2:11-cv-07667-PSG-CW<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: July 15, 2013<br>Time: 1:30 p.m.<br>Place: Courtroom 880<br>Judge: Hon. Philip S. Gutierrez<br>Magistrate: Hon. Judge Carla Woehrle<br><br>Case Filed: September 15, 2011<br>Trial Date: None Set |

**PLEASE TAKE NOTICE** that on July 15, 2013 at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 880 of the above-captioned Court, located at 255 East Temple Street, Los Angeles, CA 90012, the Honorable Philip S. Gutierrez presiding, Plaintiffs will, and hereby do, move this Court for an Order:

1.      Granting Plaintiffs leave to file an amended complaint consolidating this action with the related actions known as *Bourne-Miller et al. v. BMW of North America, LLC, et al.,* Case No. 2:12-cv-09824-PSG and *Bonomo v. BMW of North America LLC,* Case No. 2:12-cv-09820-PSG solely for purposes of achieving global resolution of the three cases and attaining Court-approval for the proposed Settlement Agreement;

2.      Granting preliminary approval  of the Settlement Agreement in the consolidated cases, attached as Exhibit 1 to the Declaration of Roland Tellis;

3.      Conditionally certifying, for settlement purposes, a settlement class consisting of all current and former owners and lessees within the United States of the following vehicles equipped with a Continuously Variable Automatic Transmission:

- MINI R50 (June 11, 2001—Nov. 28, 2006 production period); and
- MINI R52 (March 6, 2004—July 31, 2008 production period);

4.      Conditionally appointing Plaintiffs Brad Aarons, Mary Limon, Dolores Kollmer, Lynette Bourne-Miller, Darren Bailey, Victor Ferrer, Paul Pugliese, Robert Hare and James Frederick Bonomo as Class Representatives;

5.      Conditionally appointing Baron & Budd, P.C., Strategic Legal Practices, APC, Mazie Slater Katz & Freeman LLC, Seeger Weiss LLP, Wasserman Comden Casselman & Esensten, L.L.P. LLC, Capstone Law APC, Initiative Legal Group APC, Blood Hurst & O'Reardon LLP, Harke Clasby &

1  Bushman, LLP, Lawrence Caplan, P.A. and Astigarraga Davis Mullins &
2  Grossman, P.A. as Class Counsel;

3        6.     Approving the proposed form and method of giving Settlement
4  Class Members notice of the action and proposed Settlement ("Notice");

5        7.     Directing that Notice be given to Class Members in the proposed
6  form and manner set forth in the Settlement Agreement; and

7        8.     Setting a fairness hearing date for final approval of the class action
8  settlement.

9       This Motion is based upon: (a) this Notice of Motion and Motion; (b) the
10  Memorandum of Points and Authorities in Support of Motion for Preliminary
11  Approval of Class Action Settlement; (c) the Declaration of Roland Tellis; (d)
12  the [Proposed] Order Granting Preliminary Approval of Class Action Settlement,
13  filed concurrently herewith; (e) the records, pleadings, and papers filed in this
14  action; and (f) upon such other documentary and oral evidence or argument as
15  may be presented to the Court at the hearing of this Motion.

16       This Motion is unopposed by Defendant BMW of North America, LLC.

17

18  Dated:  May 30, 2013          BARON & BUDD, P.C.

19

20                 By:   /s/ Roland Tellis
21                       Roland Tellis

22                 Roland Tellis (SBN 186269)
23                 Mark Pifko (SBN 228412)
                  Baron & Budd, P.C.
24                 15910 Ventura Boulevard , Suite 1600
25                 Encino, California  91436

26

27

28

1

## TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................... 1

    A.   Plaintiffs' Pre-Suit Investigation ........................................................ 4

    B.   The Litigation ...................................................................................... 4

        1.   The Various Actions Against VMW NA .................................. 4

        2.   The Allegations Against BMW NA ......................................... 5

        3.   The Parties Discovery and Settlement
            Negotiations ............................................................................. 6

        4.   Mediation ................................................................................. 7

    C.   Material Terms of the Proposed Settlement ....................................... 8

        1.   The Proposed Settlement Class ............................................... 8

        2.   Reimbursements for Past Repairs and
            Replacements ........................................................................... 8

        3.   Parts Warranty Extension ...................................................... 10

        4.   Reimbursement for Sales-at-a-Loss ...................................... 10

        5.   The Proposed Speedy and Consumer-Friendly
            Claims Process ...................................................................... 11

        6.   The Proposed Notice to the Class of the
            Settlement .............................................................................. 11

        7.   Mutual Release ...................................................................... 12

        8.   Attorneys' Fees and Expenses ............................................... 12

        9.   Incentive Awards ................................................................... 12

III.    ARGUMENT ........................................................................................ 12

    A.   The Complaint Should be Amended to Consolidate the
        Related Cases and Conform the Class Definition to the
        Settlement ........................................................................................... 12

    B.   The Court Should Grant Preliminary Approval of the
        Class Settlement ................................................................................. 13

i

1             1.    The Standard for Preliminary Approval Has Been

2                   Met ................................................................................... 13

3             2.    The Proposed Settlement is Well Within the
                  Range of Reasonableness Warranting Preliminary

4                   Approval and is Justified in Light of the Risks of

5                   Continued Litigation ..................................................... 14

6     C.    Conditional Class Certification is Appropriate for

7           Settlement Purposes ...................................................... 17

8             3.    The Proposed Class Meets the Requirements of

9                   Rule 23 ............................................................................ 17

10            4.    The Proposed Class is Sufficiently Numerous and
                  Ascertainable................................................................... 17

11

12           5.    There are Questions of Law and Fact Common to
                  the Class .......................................................................... 17

13

14           6.    Plaintiffs' Claims are Typical of the Proposed
                  Settlement Class ............................................................. 19

15           7.    Plaintiffs and Proposed Class Counsel Will

16                   Adequately Represent the Interests of the
                  Proposed Settlement Class ........................................... 19

17

18           8.    Common Issues Predominate Over Individual
                  Issues............................................................................... 20

19

20           9.    Class Settlement is Superior to Other Available
                  Means of Resolution..................................................... 23

21

22     D.    The Proposed Notice Plan Meets the Requirements of
          Rule 23 ............................................................................ 24

23 IV.    CONCLUSION .......................................................................... 25

24

25

26

27

28

# TABLE OF AUTHORITIES

CASES

*Acosta V. Trans Union,*
    243 F.R.D. 377 (C.D. Cal. 2007)................................................................ 14

*Amchem Prods. v. Windsor,*
    521 U.S. 591 (1997)..........................................................17, 22, 23

*Armstrong v. Davis,*
    275 F.3d 849 (9th Cir. 2001)............................................................... 19

*Chamberlan v. Ford Motor Co.,*
    223 F.R.D. 524 (N.D. Cal. 2004) ....................................................... 18

*Cholakyan v. Mercedes-Benz, USA, LLC,*
    281 F.R.D. 534 (C.D. Cal. 2012) ...................................................... 15

*Daffin v. Ford Motor Co.,*
    458 F.3d 549 (6th Cir. Ohio 2006)............................................... 18, 21

*Daugherty v. American Honda Motor Co.,*
    144 Cal. App. 4th 824 (2006) ........................................................... 15

*Edwards v. Ford Motor Co.,*
    2012 U.S. Dist. LEXIS 81330 (S.D. Cal. June 12, 2012) ................ 15

*Estrella v. Freedom Fin'l Network,*
    2010 U.S. Dist. LEXIS 61236 (N.D. Cal. 2010)............................... 18

*Gribble v. Cool Transports Inc.,*
    No. CV 06-04863, 2008 WL 5281665 (C.D. Cal. 2008) ................. 15

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998)............................................... passim

*Harris v. Vector Marketing Corp.,*
    2011 1627973 (N.D. Cal. 2011)....................................................... 15

*In re Ford Motor Co. E-350 Van Prods. Liab. Litig.,*
    2012 U.S. Dist. LEXIS 13387 (D. N.J. Feb. 6, 2012)...................... 15

*In re M.L. Stern Overtime Litigation,*
   2009 WL 995864 (S.D. Cal. 2009) ................................................ 14

*In Re Sony SXRD Rear Projection Television Class Action Litigation,*
   2008 WL 1956267 (S.D.N.Y. 2008) ............................................... 21

*Lozano v. AT&T Wireless Services, Inc.,*
   504 F.3d 718 (9th Cir. 2007)........................................................ 19

*Marisol v. Giuliani,*
   126 F.3d 372 (2nd Cir. 1997)...................................................... 19

*Mullane v. C. Hanover Bank & Trust,*
   339 U.S. 306 (1950)..................................................................... 25

*O'Keefe v. Mercedes-Benz USA, LLC,*
   214 F.R.D. 266 (E.D. Pa. 2003) .................................................. 21

*Parkinson v. Hyundai Motor Am.,*
   258 F.R.D. 580 (C.D. Cal. 2008) ................................................ 18

*Rosen v. J.M. Auto Inc.,*
   270 F.R.D. 681 ............................................................................ 21

*Rodriguez v. Hayes,*
   591 F.3d 1105 (9th Cir. 2010)..................................................... 19

*Samuel-Bassett v. Kia Motors America, Inc.,*
   34 A.3d 1 (Penn. 2011) ............................................................... 16

*Sullivan v. DB Investments, Inc.,*
   667 F. 3d 273 (3d Cir. 2011)....................................................... 22

*Wal-Mart Stores, Inc. v. Dukes,*
   131 S. Ct. 2541 (2011) ........................................................... 16, 18

*Wolin v. Jaguar Land Rover N. Am.,*
   617 F.3d 1168 (9th Cir. 2010)........................................18, 19, 20, 23

**FEDERAL AUTHORITIES**
Fed. R. Civ. P. 15 ................................................................................ 12
Fed. R. Civ. P. 23 .......................................................................... passim

**TREATISES**
Manual for Complex Litigation (Fourth) §§ 21.632 (2004) ....................13, 14, 17

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This proposed settlement marks the end of a long and arduous dispute that involves five different putative class actions that originally were filed in three different districts.  Plaintiffs Brad Aarons, Mary Limon, Dolores Kollmer, Lynette Bourne-Miller, Darren Bailey, Victor Ferrer, Paul Pugliese, Robert Hare and James Frederick Bonomo (collectively, "Plaintiffs") filed five separate actions on behalf of themselves and a putative class of current and former owners and lessees of First Generation MINI Cooper vehicles ("MINIs") equipped with a Continuously Variable Automatic Transmission ("CVT") (collectively, the "Settlement Class Vehicles") distributed by Defendant BMW of North America, LLC ("BMW NA").  Plaintiffs allege that the Settlement Class Vehicles' CVT contains design and manufacturing defects that caused them to prematurely break down and suffer mechanical failure.  BMW NA has disputed this claim and maintains that the Settlement Class Vehicles functioned properly, are not defective, and that it did not breach any warranties or statutes in the marketing or sale of any Settlement Class Vehicle.

Plaintiffs have reached a global settlement with BMW NA that provides significant and substantial monetary relief to all Class Members and resolves all of the MINI CVT cases without the delay and risks associated with trial and the appellate process.  The Settlement Agreement ("Settlement")[1], which provides greater detail regarding the proposed settlement's specific terms and conditions, features the following general forms of relief:

**Reimbursements for Past Repairs and Replacements**: Subject to a maximum time/mileage limitation of 8 years/150,000 miles and the applicable

---

[1] Unless indicated otherwise, capitalized terms used herein have the same meaning as those referenced in the Settlement Agreement attached as Exhibit 1 to the Declaration of Roland Tellis (cited as "Tellis Decl.").

1  reimbursement percentages set forth in the Settlement Agreement based on the
2  date and mileage at the time of the CVT failure, BMW NA will reimburse Class
3  Members for out-of-pocket costs incurred for the repair and replacement of a
4  CVT either at (1) a MINI dealership (alleged by Plaintiffs to be approximately
5  $6,000 to $9,000) or (2) a third-party repair facility (subject to a maximum
6  budget of $4,100).

7      **Reimbursement for Future Repairs:**  Class Members whose vehicles
8  experience CVT failures after the effective date of the settlement will be entitled
9  to the same reimbursement of out-of-pocket costs incurred for the repair or
10  replacement of a CVT at a MINI dealership, subject to the maximum
11  time/mileage limitation of 8 years/150,000 miles and the applicable
12  reimbursement percentages set forth in the Settlement Agreement based on the
13  date and mileage at the time of the CVT failure.

14      **Parts Warranty Extension**:  In addition to any warranty coverage that
15  may be available under the vehicles' original Warranty Period, under the
16  Settlement Agreement, any CVT repaired or replaced at a MINI Dealership or
17  BMW Center will have a 3 year/50,000 mile parts warranty, inclusive of labor,
18  from the date/mileage of the repair/replacement (instead of the standard 2 year
19  replacement parts warranty).

20      **Reimbursements for Sales-At-A-Loss**: Consumers who sold their
21  vehicles for $4,000 or less as a result of a CVT-related malfunction prior to the
22  notice date may make a reimbursement claim of $1,000, $1,500, or $2,000,
23  depending on the model year of the vehicle.

24      **A Speedy and Consumer-Friendly Claims Process**: Although Class
25  Members will be asked to provide proof of a repair to qualify for reimbursement,
26  the parties have agreed to a simple and straight-forward claim form with minimal
27  documentary proof necessary to establish an out-of-pocket expense, and a
28  prompt reimbursement schedule after a fully documented claim has been

1 │ submitted. *See* Tellis Decl., Ex. 2.

2 │     **Class Member Notification**: BMW NA will pay to notify Class Members

3 │ of the settlement by first class mail (*See* Tellis Decl. Ex. 3), and will retain a

4 │ claims administrator to maintain a website that will provide Class Members with

5 │ information concerning the settlement and the claims process.

6 │     **Attorneys' Fees**: Plaintiffs' counsels' attorneys' fees and costs in the sum

7 │ of $1,997,500, in all of the consolidated MINI cases, will be paid by BMW NA,

8 │ separate from the benefits to the Class.

9 │     **Class Representative Fees**: BMW NA will pay lead Plaintiff Brad

10 │ Aarons the sum of $3,500, and the other class representatives the sum of $2,000,

11 │ for their efforts on behalf of Class Members.

12 │     The proposed settlement is indisputably fair, reasonable and adequate.

13 │ Accordingly, the parties respectfully request that the Court enter an order (a)

14 │ granting preliminary approval of the Settlement; (b) certifying the proposed

15 │ Settlement Class; (c) appointing Plaintiffs as Class Representatives; (d)

16 │ appointing Baron & Budd, P.C., Strategic Legal Practices, APC, Mazie Slater

17 │ Katz & Freeman LLC, Seeger Weiss LLP, Wasserman Comden Casselman &

18 │ Esensten LLC, Capstone Law APC, Initiative Legal Group APC, Blood Hurst &

19 │ O'Reardon LLP, Harke Clasby & Bushman, LLP, Lawrence Caplan, P.A. and

20 │ Astigarraga Davis Mullins & Grossman, P.A. as class counsel ("Class Counsel");

21 │ (e) approving the parties' proposed form and method of giving Class Members

22 │ notice of the action and proposed Settlement; (f) directing that notice be given to

23 │ Class Members in the proposed form and manner; and (g) setting a hearing on

24 │ whether the Court should grant final approval of the Settlement, enter judgment,

25 │ award attorneys' fees and expenses to Plaintiffs' counsel, and grant incentive

26 │ awards to Plaintiffs.

27

28

1 **II.   SUMMARY OF THE LITIGATION AND PROPOSED SETTLEMENT**

2     **A.   Plaintiffs' Pre-Suit Investigation**

3        Prior to the filing of the actions, Class Counsel collectively devoted

4 months to investigating the CVT defect alleged in the actions.  Specifically, as

5 part of their pre-filing investigative work,  Class Counsel, *inter alia*,  (a) fielded

6 dozens of inquiries from prospective class members, (b) consulted with

7 automotive engineering experts, (c) retained mechanics to inspect and investigate

8 the MINI's CVT system, (d) researched publically available materials and

9 information provided by the National Highway Traffic Safety Administration

10 ("NHTSA") concerning consumers' complaints about the MINI's CVT defect,

11 (e) reviewed BMW NA manuals and technical service bulletins discussing the

12 alleged defect, (f) reviewed federal motor regulations regarding safety standards,

13 (g) identified all the potential defendants and (h) conducted research into

14 potential causes of actions and other cases where the same or similar defects

15 were alleged.  (Tellis Decl. ¶ 7.)

16        This pre-filing investigation culminated in the filing of five separate cases

17 against BMW NA (*Id.* at ¶ 8.)

18     **B.   The Litigation**

19         **1.   The Various Actions Against BMW NA**

20        The following is a chronology of the filing of the various actions against

21 BMW NA (collectively, the "Actions"):

22    • September 15, 2011 – *Aarons v. BMW of North America, LLC*, Case No.

23      1:11-cv-07667-PSG-CW (the "*Aarons* Action") is filed in the Central

24      District of California on behalf of a California class.

25    • November 23, 2011 – *Bourne-Miller v. BMW of North America, LLC et al.*,

26      Case No. 2:11-cv-06909-FSH-BS (the *"Bourne-Miller* Action") is filed in

27      the District of New Jersey on behalf of a nationwide class, excluding

28      California.

- December 16, 2011 – *Limon v. BMW of North America, LLC*, Case No. 8:11-cv-01952-PSG-CW (the "*Limon* Action") is filed in the Central District of California on behalf of a California class.

- December 19, 2011 - *Kollmer v. BMW of North America, LLC*, Case No. 2:11-cv-10444-PSG-CW (the "*Kollmer* Action") is filed in the Central District of California on behalf of a California class.

- March 8, 2012 – The *Limon* and *Kollmer* Actions are consolidated with the *Aarons* Action, and a consolidated complaint is filed on April 16, 2012.

- July 9, 2012 – *Bonomo v. BMW of North America LLC*, Case No. 9:12-cv-80740-DMM (the "*Bonomo* Action") is filed in the Southern District of California on behalf of a Florida class.

- November 6, 2012 – The *Bonomo* and *Bourne-Miller* Actions are transferred to the Central District of California and deemed related to the *Aarons* Action.

### 2.    The Allegations Against BMW NA

The Actions all allege that the Settlement Class Vehicles suffer from a common design defect that causes their CVTs to prematurely break down and suffer mechanical failure. (*Aarons* Compl. ¶¶ 7-9; *Bourne-Miller* FAC ¶ 2; *Bonomo* Compl. ¶ 1.)  A CVT is a type of automatic transmission that is supposed to provide more useable power, better fuel economy and a smoother driving experience than a traditional automatic transmission. (*Bourne-Miller* FAC ¶ 3.) Unlike traditional transmissions with a gear set, a CVT uses a system of pulleys with a metal belt or chain running between them which enables the engine to run at its most efficient revolutions per minute (RPM) for a range of vehicle speeds. (*Id.*)

Each of the Actions alleged that BMW NA failed to disclose, and actively concealed, material safety issues existing in the MINIs which were equipped with CVTs.  The cases further allege that the CVTs were prone to sudden premature

failure occurring well before the end of the useful life of the vehicle.  Plaintiffs further allege that a CVT failure can be catastrophic when it occurs while the MINI is being driven, resulting in a total loss of power to drive wheels and maintain speed, and exposing occupants of the vehicle to risk of collision.

Plaintiffs sought an order requiring BMW NA to pay class members the cost to repair the CVT defect and reimburse them for premature CVT replacements pursuant to various consumer protection laws. (*See Aarons* Compl. ¶¶ 87-129; *Bourne-Miller* FAC ¶¶ 84-108; *Bonomo* Compl. ¶95-168.)  Plaintiffs also sought recovery under warranty law because they claim BMW NA refused to repair the alleged CVT defect free of charge. (*Aarons* Compl. ¶¶ 124-129; *Bourne-Miller* FAC at ¶¶ 109-150; *Bonomo* Compl. ¶ 119-135.)

On December 14, 2011, BMW NA filed a motion to dismiss each of the claims alleged in the *Aarons* complaint. (*See Aarons* Action Dkt. No. 23.)  On March 16, 2012, the Court ruled on the motion, holding, among other things, that Plaintiff Aaron had successfully pleaded a safety-related defect. (*Aarons* Action, Dkt. No. 37 at 5.)  Ultimately, the Court granted BMW's motion, with leave to amend concerning the issue of whether the pleadings adequately alleged that BMW NA was aware of the defect before April 2003, when plaintiff Aarons purchased his vehicle. (*See id.*)  Plaintiff Aarons filed a consolidated class action complaint on April 9, 2012 (*Id.* at Dkt. No. 43 ), which BMW subsequently answered.

On March 12, 2012, BMW NA filed a motion to dismiss each of the claims alleged in the *Bourne-Miller* First Amended Complaint. (*See Bourne-Miller* Action Dkt . No. 18.)   Following a full briefing of the motion, but before the District of New Jersey rendered a decision, the action was transferred to the Southern District of Florida and ultimately, to this Court. (Tellis Decl. ¶ 11.)

### 3.    The Parties' Discovery and Settlement Negotiations

The parties engaged in substantial discovery, including propounding and

6

responding to written discovery and reviewing voluminous documents produced by BMW NA in this case (*e.g.*, service and repair manuals; maintenance and warranty manuals; technical service bulletins; warranty repair invoices; warranty reimbursements; service records; vehicle population numbers for Class Vehicles equipped with CVT transmissions; warranty data; and consumer complaint reports). (Tellis Decl. ¶ 12.) Significant written discovery and document production related to the class vehicles' CVTs occurred in the *Aarons* and *Bourne-Miller* Actions before the parties agreed to the terms of the proposed Settlement Agreement. (*Id.* at ¶ 13.)

Additionally, the *Bourne-Miller* plaintiffs filed a motion to compel BMW NA to further respond to their interrogatories and document requests, which the District of New Jersey granted on September 5, 2012. (*Bourne-Miller* Action Dkt. No. 32.) The order directed BMW NA to provide the *Bourne-Miller* plaintiffs with, among other things, the VINs for the Class Vehicles, operation/labor damage codes relating to the CVT Defect, service bulletins, service records for the Class Vehicles addressing issues/complaints with the CVT (including warranty data demonstrating the number of CVTs repaired or replaced under the MINI warranty), policies of disclosing systemic problems/reports of problems with the quality or safety of vehicles BMW NA produces and/or distributes in the United States, copies of the service and warranty information books and owners' manuals for the Class Vehicles, and repair manuals. (*Id.* at 2-4.)

### 4.   Mediation

Commencing in June 2012, the parties began exploring a possible settlement. (Tellis Decl. ¶ 15.) From June 2012 to February 2013, the parties engaged in both in-person and telephonic discussions regarding a potential class settlement, and participated in three separate mediations spanning more than five days. (*Id.*) Finally, on February 13, 2013, with the assistance of the Hon. Howard

B. Wiener (Ret.), the parties reached a global resolution of all the above-described cases. (*Id.*)

### C.   Material Terms of the Proposed Settlement[2]

#### 1.   The Proposed Settlement Class

The Settlement Class consists of all current and former owners and lessees within the United States of the following vehicles equipped with Continuously Variable Automatic Transmissions:

- MINI Cooper ("MINI R50") produced June 11, 2001 thru November 28, 2006;
- MINI Convertible ("MINI R52") produced March 6, 2004 thru July 31, 2008.

(Settlement Agreement § I.B.)

#### 2.   Reimbursements for Past Repairs and Replacements

##### a.   CVT Repair/Replacement at MINI Dealership Before The Effective Date Of The Settlement

Subject to a maximum time/mileage limitation of 8 years/150,000 miles (whichever occurs first) from the date the Class Vehicle was first put into service as a new vehicle, BMW NA will provide reimbursement for Out-Of-Pocket Expenses (alleged by Plaintiff to be approximately $6,000 to $9,000) incurred by Class Members for the repair/replacement of a CVT on a Class Vehicle by an authorized MINI Dealership or authorized BMW dealership according to the following time and mileage schedule, based on the date/mileage on the Class Vehicle at the time of the repair/replacement:

---

[2] The summary description of the proposed class benefits in this motion for preliminary approval is qualified in its entirety by reference to the parties' Settlement Agreement, which is attached as Exhibit 1 to the Declaration of Roland Tellis. and that provides greater detail as to the specific terms and conditions that apply to each form of proposed benefit under the Settlement Agreement.

| Up to | 50,000 Miles | 75,000 Miles | 100,000 Miles | 125,000 Miles | 150,000 Miles |
|-------|--------------|--------------|---------------|---------------|---------------|
| 4 years | 100% | 77.5% | 55% | 45% | 35% |
| 5 years | 77.5% | 65% | 47.5% | 35% | 27.5% |
| 6 years | 65% | 55% | 37.5% | 30% | 22.5% |
| 7 years | 55% | 45% | 27.5% | 22.5% | 17.5% |
| 8 years | 37.5% | 27.5% | 20% | 17.5% | 12.5% |

(Settlement Agreement § III.A.)

> b.    <u>CVT Repair/Replacement Outside MINI Dealer</u>
> <u>Network Before The Effective Date Of The Settlement</u>

If a Class Member chose to have his or her Vehicle repaired by a third-party repair facility instead of a MINI or BMW dealership, BMW NA will reimburse class members for their documented out-of-pocket costs for such repair, subject to the reimbursement schedule set forth above (Settlement Agreement § III.B) based on the time and mileage at the time of each repair/replacement, and subject to a maximum budget of $4,100.

> c.    <u>CVT Repair/Replacement After The Effective Date Of</u>
> <u>The Settlement (Future Repairs)</u>

Class Vehicles that experience a CVT failure after the effective date of the Settlement but during the vehicle's original 4 year/50,000 mile warranty period are subject to the vehicle's normal warranty terms and conditions. For class vehicles that experience a CVT failure outside of the original Warranty Period, they may make a claim for reimbursement for out-of-pocket costs incurred for the replacement of a CVT at a MINI dealership based on the reimbursement percentage schedule set forth above. (Settlement Agreement § III.G.)

> d.    <u>Required Proof for Reimbursement</u>

To receive reimbursement, Class Members must submit a Claim Form, signed under penalty of perjury, and the Required Documentation evidencing Out-Of-Pocket Expenses for the CVT repair or replacement. In general, the

9

documentation and information provided by the Class Member must be sufficient to establish that the claimed Out-of-Pocket expenses were incurred by the Class Member in the repair or replacement of a CVT in a Class Vehicle.

(Settlement Agreement § III.C.)

As part of the Claim Form required to receive payment, and in addition to the Required Documentation, each Claimant must sign the Claim Form under penalty of perjury attesting that the Claimant at all times had the CVT of his/her vehicle maintained and serviced in accordance with the Class Vehicles' service and warranty manual (CVT maintenance would be performed in conjunction with other regularly scheduled maintenance) either at a MINI Dealership, a BMW Center, or a third-party repair facility within 2,500 miles of an inspection light illuminating in the Class Vehicle. (Settlement Agreement § III.E.)

### 3. Parts Warranty Extension

In addition to any warranty coverage that may be available under the Class Vehicles' original Warranty Period, BMW NA has agreed that any CVT repaired/replaced at a MINI Dealership or BMW Center will have a 3 year/50,000 mile (whichever occurs first) parts warranty, inclusive of labor, from the date/mileage of the repair/replacement (instead of the standard 2 year replacement parts warranty).. (Settlement Agreement § III.D.)

### 4. Reimbursement for Sales-at-a-Loss

Although the proposed Warranty Extension and proposed Reimbursement Program are comprehensive remedies in and of themselves, the Settlement Agreement extends even beyond these broad protections: if, in lieu of incurring the costs of CVT repairs, a Class Member prior to the notice date instead sold his or her Class Vehicle for $4,000 or less, that Class Member may make a claim for the applicable sum listed below:

- 2002-2003 model year vehicle: $1,000
- 2004-2005 model year vehicle: $1,500

- 2006-2008 model year vehicle: $2,000

(Settlement Agreement § III.F.)

### 5. The Proposed Speedy and Consumer-Friendly Claims Process

The claims process for seeking reimbursements is designed to be fast and convenient, and to impose minimal burdens on the Settlement Class Members. The Claim Form requires only that a Class Member provide the minimum information necessary to verify a claim. Likewise, Class Members need only provide the minimum proof necessary to substantiate claims, evidence and out-of-pocket expense for the repair/replacement of a CVT or, as appropriate, the sale of a class vehicle for less than $4,000 following a CVT failure without first repairing the CVT (Settlement Agreement § III.C), and attest to the veracity of the claim under penalty of perjury (Settlement Agreement § III.E). Claims for reimbursement for past CVT repairs or replacements are due within one-hundred and twenty (120) days after the Class Members' receipt of the Class Notice, and the Claim Administrator will mail a reimbursement check to the Class Member for the approved amount of the unreimbursed permissible expense within 30 days of the Effective Date,[3] or within 30 days of completing the Claim Information Confirmation Process (in the event that fewer than all requested reimbursements are approved). (*Id.* § V.D.)

### 6. The Proposed Notice to the Class of the Settlement

BMW NA will prepare, pay for and send the Class Notice with the help of a reputable claims administrator, in the form agreed upon by the Parties and approved by the Court, within 120 days of the Court's entry of the Preliminary Approval Order. (Settlement Agreement § IV.A.) The proposed Class Notice is

---

[3] "Effective Date" means the entry of the Final Approval Order on which the time for any appeal expires, or the date on which all appeals from the Final Approval Order are finally decided or terminated, whichever date is later. (Settlement Agreement § I.18.)

attached hereto as Exhibit 3.  The Notice will be disseminated through direct mail, and published on a website maintained by the claims administrator for the proposed settlement.  (*Id.* § IV.A. & IV.B.)  BMW NA will also pay for a third-party settlement administrator to administer the settlement.  (*Id.* § IV.A.)

### 7.  Mutual Release

As part of the consideration for this Settlement Agreement, upon Final Approval, it is agreed that the Plaintiffs and all members of the Class shall be deemed to have jointly and severally provided full and complete releases of any and all Released Claims and covenanted not to sue as described below, and as further detailed in the parties' Settlement Agreement.  (Settlement Agreement § VIII.)

### 8.  Attorneys' Fees and Expenses

All Class Counsel's attorneys' fees and costs, in all of the Mini Cooper cases, in the aggregate sum of $1,997,500 will be paid by BMW NA, separate from the benefits to the Settlement Class.  (Settlement Agreement § IX.A.)

### 9.  Incentive Awards

Incentive Awards to the Plaintiffs for their efforts to secure the relief on behalf of the Settlement Class, in the sum of $3,500 to lead plaintiff Aarons and $2,000 to the other class representatives, will be paid by BMW NA, separate from the benefits to the Settlement Class.  (Settlement Agreement § IX.B.)

## III.  ARGUMENT

### A.  The Complaint Should be Amended to Consolidate the Related Cases and Conform the Class Definition to the Settlement

Plaintiffs request leave to file an amended, consolidated complaint so that the five actions can be resolved together and on a nationwide basis, as contemplated by the Settlement.  A party may amend his or her complaint with leave of court, and "leave shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  Here, amendment is necessary to consolidate for settlement

purposes only[4] the *Aarons*, *Bourne-Miller*, and *Bonomo* Actions, which relate to the same alleged CVT defect and assert related consumer protection and warranty claims, and to allege jurisdiction for all Class Members included in the Settlement Agreement.  Amendment under these circumstances is therefore necessary to allege the claims as needed to effectuate the Settlement and include all Class Members as defined in the Settlement.[5]

### B.   The Court Should Grant Preliminary Approval of the Class Settlement

#### 1.   The Standard for Preliminary Approval Has Been Met

A class action settlement like the one proposed here must be approved by the Court to be effective.  *See* Fed. R. Civ. Proc. 23(e).  Court approval occurs in three steps: (1) a preliminary approval hearing, at which the Court considers whether the proposed settlement is within the range of reasonableness meriting final approval; (2) a notice and comment stage, during which class members are informed about the proposed settlement and given an opportunity to object or exclude themselves from the settlement; and (3) a "formal fairness hearing," or final approval hearing, at which the court decides whether the proposed settlement should be approved as fair, adequate, and reasonable to the class.  *See* Manual for Complex Litigation (Fourth) §§ 21.632-34 (2012).

At the final approval stage, after the class members have been notified of the proposed settlement and had an opportunity to comment, the Court will be called upon to determine whether the parties have negotiated a settlement that is fair, reasonable, and adequate to the class.  At this preliminary approval stage, however, the Court determines only whether the settlement falls "within the range

---

[4] The parties agree that should the proposed settlement not result in final approval, the cases should be returned to their separate pre-settlement position as separate actions, with each party retaining their right to argue for or against consolidation.

[5] Plaintiffs request this amendment for settlement purposes only.  BMW NA does not oppose the request.  A copy of the proposed consolidated complaint is attached as Exhibit 4 to the Tellis Declaration.

of possible approval, such that there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *See In re M.L. Stern Overtime Litigation*, 2009 WL 995864, at *3 (S.D. Cal. 2009) (internal quotation marks omitted); *Acosta v. Trans Union*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) ("To determine whether preliminary approval is appropriate, the settlement need only be *potentially fair*, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out."). In other words, the Court makes only a preliminary determination of the settlement's fairness, reasonableness, and adequacy, pointing out any settlement terms that are so unacceptable at the outset that a formal fairness hearing would be a waste of time. *See* Manual for Complex Litigation, § 21.632; 4 Newberg, *supra*, § 11.25.

Plaintiffs ask the Court to take the first step in the settlement approval process and grant preliminary approval of the Settlement. Plaintiffs further request that the Court conditionally certify the Settlement Class; appoint Plaintiffs as Settlement Class Representatives; appoint Baron & Budd, P.C., Strategic Legal Practices, APC, Mazie Slater Katz & Freeman LLC, Seeger Weiss LLP, Wasserman Comden Casselman & Esensten LLC, Capstone Law APC, Initiative Legal Group, APC, Blood Hurst & O'Reardon LLP, Harke Clasby & Bushman, LLP, Lawrence Caplan, P.A. and Astigarraga Davis Mullins & Grossman, P.A. as Class Counsel; order dissemination of notice to Settlement Class Members in the form and manner set forth in the Settlement Agreement; and set a date for the final approval hearing.

### 2. The Proposed Settlement is Well Within the Range of Reasonableness Warranting Preliminary Approval and is Justified in Light of the Risks of Continued Litigation

The proposed Settlement in this case is well within the range of reasonableness that would merit judicial approval. Indeed, this settlement provides to class members remedies similar to what they could otherwise expect to

14

receive at trial but without the risk of delay or risks associated with trial or any subsequent appeal. *See Harris v. Vector Marketing Corp.*, 2011 1627973, at *8 (N.D. Cal. 2011) (to evaluate the reasonableness of a settlement, courts primarily consider the value provided by the settlement against the claims' expected recovery if tried.)

As a preliminary matter, the Settlement was negotiated at arm's length by counsel well versed in class litigation, particularly with respect to automotive defect cases, and is therefore entitled preliminarily to "a presumption of fairness." *Gribble v. Cool Transports Inc.*, No. CV 06-04863, 2008 WL 5281665, at *9 (C.D. Cal. 2008).

The parties engaged in extensive discovery over the merits and value of Plaintiffs' claims and Defendant's defenses. In addition to their own independent investigations, Plaintiffs' Counsel reviewed voluminous quantities of evidence produced during the course of discovery and settlement discussions, and retained several highly-qualified experts.

An objective evaluation confirms that the benefits negotiated for the Class are well within the range of reasonableness. The relief offered by the Settlement is even more attractive when viewed against the recent difficulties by consumers pursuing automotive defect cases. *See, e.g., Daugherty v. American Honda Motor Co.*, 144 Cal. App. 4th 824 (2006) (affirming judgment of dismissal). Moreover, the risk of maintaining class action status through trial is great, as further evidenced by many recent decisions denying class certification in automobile defect cases. *See Edwards v. Ford Motor Co.*, 2012 U.S. Dist. LEXIS 81330 (S.D. Cal. June 12, 2012); *Cholakyan v. Mercedes-Benz, USA, LLC*, 281 F.R.D. 534 (C.D. Cal. 2012); *In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, 2012 U.S. Dist. LEXIS 13387 (D.N.J. Feb. 6, 2012).

As explained herein, Plaintiffs' Counsel believe that this case is appropriate for class certification in the litigation context. However, there is

always a risk that a court would not find this action suitable for certification as a nationwide class or a multi-state class, or, even if class certification were granted in the litigation context, class certification can always be reviewed or modified before trial, and a class may be decertified at any time. *See, e.g., Marcus, supra,* 2012 WL 3171560 (Third Circuit reversed certification of consumer class action case involving BMW vehicles equipped with allegedly defective run flat tires); *Dukes,* 131 S. Ct. 2541.

The reality is that any case against a major automotive manufacturer alleging a defect in hundreds of thousands of vehicles has the potential to take up significant amounts of the Court's and the parties' resources. In addition, if the case were to proceed, Plaintiffs would need to provide expert testimony to address the question of whether the alleged CVT Defect presents safety concerns, an expert to answer whether Settlement Class Vehicles' CVT components are more likely to malfunction than other comparable parts, an expert on consumer expectations, and a damages expert—all resulting in significant additional expenses.

Finally, if Plaintiffs *had* litigated this action through trial and ultimately obtained a judgment against BMW NA, there is no guarantee that the judgment would be superior to the settlement obtained here. *See, e.g., Samuel-Bassett v. Kia Motors America, Inc.,* 34 A.3d 1 (Penn. 2011) (nearly 12 years after the commencement of the action—following, among other things, a contested motion for class certification, trial, post-trial motions, and appeal to the Superior Court—the Supreme Court of Pennsylvania ultimately affirmed an award of $600 for brake repairs for each Class Member which was based on the class vehicle having a useful life of 100,000 miles).

Given the favorable terms of the Settlement and the rigorous manner in which these terms were negotiated, the proposed Settlement should be viewed as a fair, reasonable, and adequate compromise of the issues in dispute. This Court

1    should grant preliminary approval of the Settlement, order dissemination of

2    notice to the Class for comment, and proceed to a formal fairness hearing.

### C.    Conditional Class Certification is Appropriate for Settlement Purposes

### 3.    The Proposed Class Meets the Requirements of Rule 23

Before granting preliminary approval of the Settlement, the Court should determine that the proposed settlement Class meets the requirements of Rule 23. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 622 (1997); Manual for Complex Litigation, § 21.632. An analysis of the requirements of Rule 23(a) and 23(b)(3), commonly referred to as numerosity, commonality, typicality, adequacy, predominance, and superiority, shows that certification of this proposed Settlement Class is appropriate. *See* Fed. R. Civ. P. 23(a); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

### 4.    The Proposed Class is Sufficiently Numerous and Ascertainable

The numerosity requirement is met where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). That requirement is easily met here. The proposed settlement Class, whose membership numbers in the tens of thousands, consists of all current and former owners and lessees within the United States of the following vehicles equipped with Continuously Variable Automatic Transmissions:

- MINI Cooper ("MINI R50") produced June 11, 2001 thru November 28, 2006; and

- MINI Convertible ("MINI R52") produced March 6, 2004 thru July 31, 2008.

(Settlement Agreement § I.B.)

### 5.    There are Questions of Law and Fact Common to the Class

The second Rule 23(a) requirement is commonality, which is satisfied "if there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).

1        Commonality requires the plaintiff to demonstrate that the class members
2   have suffered the same injury. "What matters to class certification . . . is not the
3   raising of common 'questions'—even in droves—but, rather the capacity of a
4   classwide proceeding to generate common *answers* apt to drive the resolution of
5   the litigation." *Dukes*, 131 S. Ct. at 2551. The "commonality requirement has
6   been 'construed permissively,' and its requirements deemed minimal.'" *Estrella*
7   *v. Freedom Fin'l Network*, 2010 U.S. Dist. LEXIS 61236, at *25 (N.D. Cal.
8   2010) (*quoting Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-1020 (9th Cir.
9   1998)).

10       Here, each Class Member purchased or leased a MINI vehicle equipped
11  with an allegedly defective CVT. BMW NA contends that the CVTs are not
12  defective, and perform appropriately under normal driving conditions. It follows
13  that the principal common questions of law and fact a trier of fact would need to
14  resolve include whether the MINI vehicles have defective CVT parts, and if so,
15  whether BMW NA had an obligation to apprise consumers of the defect.

16       The need to determine whether an inherent defect exists not only satisfies
17  Rule 23's commonality requirement, it raises the very type of overarching
18  common question that has driven class certifications in other automotive defect
19  cases. *See, e.g., Hanlon*, 150 F.3d at 1020 (allegedly defective rear liftgate
20  latches); *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 595-97 (C.D. Cal.
21  2008) (allegedly defective flywheels); *Chamberlan v. Ford Motor Co.*, 223
22  F.R.D. 524, 526 (N.D. Cal. 2004) (allegedly defective engine intake manifolds);
23  *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. Ohio 2006) (allegedly
24  defective throttle body assembly); *see also Wolin v. Jaguar Land Rover N. Am.*,
25  617 F.3d 1168, 1172 (9th Cir. 2010) (reversing denial of class certification where
26  "[t]he claims of all prospective class members involve the same alleged defect,
27  covered by the same warranty, and found in vehicles of the same make and
28  model.").

### 6. Plaintiffs' Claims are Typical of the Proposed Settlement Class

"Like the commonality requirement, the typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Hanlon*, 150 F. 3d at 1020). In determining whether typicality is met, the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff. *Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718, 734 (9th Cir. 2007). Thus, typicality is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (quoting *Marisol v. Giuliani*, 126 F.3d 372, 376 (2nd Cir. 1997)); *and see Wolin*, 617 F.3d at 1174-75 (finding typicality where plaintiffs and the class sought to recover pursuant to the same legal theories: violation of consumer protection laws, breach of warranty, and unjust enrichment).

Here, Plaintiffs assert that Class Members' claims arising from the transmissions are reasonably coextensive with the legal claims asserted by the named Plaintiffs. Each Class Member's claim arises from the same underlying conduct—namely, BMW NA's alleged concealment of an inherent defect in the CVTs installed in certain MINI vehicles. In addition, Class Members have similar interests in the remedies being provided by the proposed Settlement, which include reimbursements for CVT repair and replacement.

### 7. Plaintiffs and Proposed Class Counsel Will Adequately Represent the Interests of the Proposed Settlement Class

The final Rule 23(a) requirement asks whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is satisfied if: (1) the proposed representative

Plaintiffs and their counsel do not have conflicts of interest with the proposed class, and (2) Plaintiffs are represented by qualified and competent counsel. *Hanlon*, 150 F.3d at 1020.

Here, none of the proposed representative Plaintiffs has individual interests in this litigation that conflict with the best interests of the class. To the contrary, each named Plaintiff, as well as each Class Member, has a common interest in obtaining reimbursement from BMW NA as a result of its alleged concealment of the Class Vehicles' defective CVTs. In addition, the named Plaintiffs are represented by qualified and competent counsel well versed in prosecuting automotive class actions. (*See* Tellis Decl., Exs. 5 to15.)

The Settlement provides fair compensation for Class Members' claims by reimbursement for CVT for both past and future repairs, warranty extension, and reimbursement for sales of Settlement Class Vehicles at a loss.

### 8.   Common Issues Predominate Over Individual Issues

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." *Hanlon*, 150 F.3d at 1022. Here, the proposed class is maintainable under Rule 23(b)(3), as common questions predominate over any questions affecting only individual members, and class resolution is superior to other available methods for a fair resolution of the controversy. *Id.* (citing Fed. R. Civ. P. 23(b)(3)).

Class Members' claims depend primarily on whether the Settlement Class Vehicles suffer from an inherent transmission defect and whether Defendants were obligated to cover repairs and replacements related to this claimed defect under its express warranty, and thus raise just the sort of predominantly common questions courts have found to justify class treatment. *See Wolin*, 617 F.3d at 1174 ("[A]ll of the proposed class members here are covered by a Limited Warranty that provides for the repair or replacement of defects, and all of the proposed class

1    members allege that their vehicles suffer from the same defect.  These claims

2    require common proof of the existence of the defect and a determination whether

3    Land Rover violated the terms of its Limited Warranty.  Accordingly, we conclude

4    that common issues predominate regarding Land Rover's obligations under its

5    Limited Warranty.").  *And see, e.g., Hanlon*, 150 F.3d at 1022-23 ("[G]iven the

6    limited focus of the action, the shared factual predicate and the reasonably

7    inconsequential differences in state law remedies, the proposed class was

8    sufficiently cohesive to survive Rule 23(b)(3) scrutiny.")); *In Re Sony SXRD Rear*

9    *Projection Television Class Action Litigation*, 2008 WL 1956267 (S.D.N.Y. 2008)

10   (class treatment in the context of a nationwide product defect settlement-only is

11   proper because allegations regarding Sony's violations of the various states

12   consumer protection statutes subject to the same generalized proof); *O'Keefe v.*

13   *Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 288-91 (E.D. Pa. 2003) (holding that

14   plaintiffs satisfied predominance inquiry where they alleged, among other things,

15   MBUSA violated various states consumer protection statutes as a result of using

16   conventional motor oil at FSS intervals); *Rosen v. J.M. Auto Inc.*, 270 F.R.D. at

17   681-82 (certifying implied and express warranty claims where "critical issue of

18   whether the [airbag system] in 2007 Lexus ES 350s was defective is common to

19   all putative class members," and "this issue predominates over the individual

20   issues"); *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006) (certifying

21   express warranty claim based on allegedly defective throttle body assembly

22   because, *inter alia*, common questions predominate as to existence of defect,

23   reduction of vehicles' value due to defect, and whether express warranty covers

24   latent defect).

25          Finally, to the extent that choice of law issues would have presented

26   manageability concerns in the litigation context, the proposed Settlement renders

27   those concerns irrelevant.  As the Supreme Court has observed, manageability at

28   trial is not a concern in the class action settlement context, "for the proposal is that

1    there be no trial." *Amchem*, 521 U.S. at 620. Indeed, relying heavily on *Amchem*,

2    an *en banc* panel of the Third Circuit, reviewing a nationwide class certification of

3    consumer claims in the settlement context, recently held that Rule 23's

4    predominance requirement did not preclude nationwide settlement-only class

5    certification of claims brought under the consumer protection laws of all 50 states.

6    *See Sullivan v. DB Investments, Inc.*, 667 F.3d 273 (3d Cir. 2011) (en banc), cert

7    denied, __U.S.__, 132 S. Ct. 1876 (observing that nationwide classes are

8    appropriate in the settlement context to facilitate all parties' interest in "achieving

9    a global peace").

10       Under the same guiding principles, the Ninth Circuit has similarly upheld

11    settlement-only class certification in nationwide settlements. *See, e.g., Hanlon v.*

12    *Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (finding

13    predominance met for purpose of certifying a nationwide vehicle defect settlement

14    class applying each individual state's consumer protections laws because

15    "although some class members may possess slightly differing remedies based on

16    state statute or common law, the actions asserted by the class representatives are

17    not sufficiently anomalous to deny class certification. On the contrary, to the

18    extent distinct remedies exist, they are local variants of a generally homogenous

19    collection of causes which include products liability, breaches of express and

20    implied warranties, and 'lemon laws.'").

21       Indeed, for purposes of settlement, the predominance test is satisfied, as the

22    proposed Settlement makes relief available across the board based solely on easily

23    ascertainable criteria, thereby bypassing whatever individual evidentiary and

24    factual issues that can arise in determining liability or damages in litigation. As a

25    result, common questions predominate over any individual issues that might have

26    arisen in this action had it been litigated.

27

28

### 9.    Class Settlement is Superior to Other Available Means of Resolution

Similarly, there can be little doubt that resolving all Class Members' claims through a single class action is superior to a series of individual lawsuits. "From either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions.  There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." *Hanlon*, 150 F.3d at 1023; *and see Wolin*, 617 F.3d at 1176 ("Forcing individual vehicle owners to litigate their cases, particularly where common issues predominate for the proposed class, [would be] an inferior method of adjudication.").  Indeed, the terms of the Settlement negotiated on behalf of the class underscore the advantages of a collective bargaining and resolution process.

Addressing the allegations of an inherent defect in the design of the CVTs through a class action is superior to individual litigation or any alternative methods that may exist.  This action was filed precisely because Plaintiffs believed those alternatives, such as filing complaints with NHTSA or directly with BMW NA, would have proven ineffective in addressing the problem on a classwide basis.  Although the repair costs expended by consumers are not insignificant and in some instances can cost between $6,000 and $9,000, the amount in controversy is not nearly enough to incentivize individual action. *See e.g., Wolin*, 617 F.3d at 1175 ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this [superiority] factor weighs in favor of class certification."); *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.  A class action solves this problem by aggregating the relatively paltry potential recoveries into

1   something worth someone's (usually an attorney's) labor."). The funds required
2   to marshal the type of evidence, including expert testimony, that would be
3   necessary to pursue claims against well-represented corporate defendants would
4   also discourage individual Class Members from filing suit.

5   The superiority of proceeding through the class action mechanism, on the
6   other hand, is demonstrable. By aggregating Class Members' claims, Plaintiffs'
7   counsel have been able to expend the resources necessary to conduct discovery
8   of the alleged transmission defect and negotiate a Settlement with BMW NA
9   that, if approved, will provide Class Members not only with reimbursements for
10  their repair costs, but also an extended warranty in the event they experience the
11  alleged CVT defect in the future, as well as adequate compensation to those
12  consumers who sold their vehicles at a loss because of CVT-related
13  malfunctions.

14  As the class action device provides the superior means to effectively and
15  efficiently resolve this controversy, and as the other requirements of Rule 23 are
16  each satisfied, certification of the Settlement Class proposed by the parties is
17  appropriate.

18  **D.    The Proposed Notice Plan Meets the Requirements of Rule 23**

19  Upon certifying a Rule 23(b)(3) class, Rule 23(c)(2)(B) requires the Court
20  to "direct to class members the best notice that is practicable under the
21  circumstances, including individual notice to all members who can be identified
22  through reasonable effort." In addition, Rule 23(e)(1) requires that before a
23  proposed settlement may be approved, the Court "must direct notice in a
24  reasonable manner to all class members who would be bound by the proposal."

25  The parties have agreed on a notice plan that satisfies the requirements of
26  Rule 23. (Settlement Agreement § IV.) Under this plan, BMW NA will mail
27  notice of class certification and the proposed Settlement to all current and former
28  owners and lessees of class vehicles who can be reasonably identified. *See*

1 | *Mullane v. C. Hanover Bank & Trust*, 339 U.S. 306, 314-18 (1950) (explaining
2 | that notice by first class mail will often be the "best practicable notice").  The
3 | form of the notice to be mailed, attached as Exhibit 3 to the Tellis Declaration,
4 | includes all the content required by Rule 23(c)(2)(B), such as a description of the
5 | action and class claims, as well as the Class Members' right to opt out or
6 | comment on the proposed settlement, including any application for attorneys'
7 | fees, costs and service awards.

## IV.  CONCLUSION

For the forgoing reasons, Plaintiffs respectfully request that the Court enter the accompanying Proposed Order permitting Plaintiffs' to file a consolidated complaint, granting preliminary approval of the proposed settlement, directing dissemination of notice to class as proposed, and setting a hearing for the purpose of deciding whether to grant final approval of the settlement.


Dated:  May 30, 2013            BARON & BUDD, P.C.


                                By:   /s/ Roland Tellis
                                      Roland Tellis


                                Roland Tellis
                                Mark Pifko
                                Baron & Budd, P.C.
                                15910 Ventura Boulevard , Suite 1600
                                Encino, California  91436
                                Telephone:  (818) 839-2333
                                Facsimile:   (818) 986-9698

1

Jordan Esensten (SBN 131486)
jesensten@wccelaw.com

2

Wasserman, Comden,

3

Casselman & Esensten, LLP

4

5567 Reseda Boulevard, Suite 330,
P.O. Box 7033

5

Tarzana, California  91357-7033
Telephone:  (818) 705-6800

6

Facsimile:   (818) 996-8266

7

8

Jonathan Shub (SBN 237708)

9

jshub@seegerweiss.com
Seeger Weiss LLP

10

1515 Market Street, Suite 1380

11

Philadelphia, Pennsylvania  19102
Telephone:  (215) 564-2300

12

Facsimile:   (215) 851-8029

13

14

Payam Shahian (SBN 228406)

15

pshahian@slpattorney.com
Strategic Legal Practices, APC

16

1875 Century Park East, Suite 700

17

Los Angeles, California 90067
Telephone:  (310) 277-1040

18

Facsimile:   (310) 943-3838

19

20

Matthew R. Mendelsohn

21

mmendelsohn@mskf.net
Mazie Slater Katz & Freeman, LLC

22

103 Eisenhower Parkway

23

Roseland, NJ 07068
Telephone:   (973) 228-9898

24

Facsimile:   (973) 228-0303

25

26

27

28

1

2

3 Jordan L. Lurie
jordan.lurie@capstonelawyers.com
4 Capstone Law APC
1840 Century Park East, Suite 450
5 Los Angeles, California 90067
Telephone: (310) 556-4811
6 Facsimile: (310) 943-0396

7

8 Monica Balderrama
mbalderrama@initiativelegal.com
9 Initiative Legal Group APC
1800 Century Park East, Mezzanine
10 Los Angeles, California 90067
Telephone: (310) 556-5637
11 Facsimile: (310) 861-9051

12

13

14 Lance Harke
lharke@harkeclasby.com
15 Howard Bushman
hbushman@harkeclasby.com
16 Harke Clasby & Bushman LLP
9699 NE Second Avenue
17 Miami Shores, Florida 33138
Telephone: (305) 536-8220
18 Facsimile: (305) 536-8229

19

20

21 Attorneys for Plaintiffs
Brad Aarons, Mary Limon, Dolores Kollmer,
22 Lynette Bourne-Miller, Darren Bailey, Victor
Ferrer, Paul Pugliese, Robert Hare and James
23 Frederick Bonomo individually, and on behalf of
other members of the public similarly situated

24

25

26

27

28

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT