1  Roland Tellis (SBN 186269)
2  rtellis@baronbudd.com
   Mark Pifko (SBN 228412)
3  mpifko@baronbudd.com
4  BARON & BUDD, P.C.
   15910 Ventura Boulevard, Suite 1600
5  Encino, California  91436
6  Telephone:  (818) 839-2333
   Facsimile:   (818) 986-9698
7
8  Payam Shahian (SBN 228406)
   Pshahian@slpattorney.com
9  STRATEGIC LEGAL PRACTICES, APC
10 1875 Century Park East, Suite 700
   Los Angeles, California 90067
11 Telephone:  (310) 277-1040
12 Facsimile    (310) 943-3838
13 [Additional attorneys listed below signature line]
14 Attorneys for Plaintiffs

15             UNITED STATES DISTRICT COURT
16    CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

17 | BRAD AARONS, individually, and on | Case No.: 2:11-cv-07667-PSG-CW |
18 | behalf of other members of the general | **PLAINTIFFS' NOTICE OF** |
   | public similarly situated, | **MOTION AND MOTION FOR** |
19 | | **FINAL APPROVAL OF CLASS** |
20 |             Plaintiff, | **ACTION SETTLEMENT;** |
   | | **MEMORANDUM OF LAW IN** |
21 | v. | **SUPPORT** |
22 | | Date:      April 28, 2014 |
   | BMW OF NORTH AMERICA, LLC, | Time:      1:30 p.m. |
23 | a New Jersey limited liability company | Place:     Courtroom: 880 |
24 | et al. | Judge:     Hon. Philip S. Gutierrez |
25 |             Defendants. | Case Filed:  September 15, 2011 |
   | | Trial Date:   None set |
26 | AND RELATED CASES | |
27
28

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on April 28, 2014 at 1:30 p.m., or as soon thereafter as the matter may be heard, before the Honorable Philip S. Gutierrez, United States District Court Judge for the Central District of California, 255 East Temple Street Los Angeles, California 90012, Plaintiffs by and through the undersigned counsel of record, will move and hereby do move, pursuant to Fed. R. Civ. P. 23(e), for entry of an order granting final approval of class action settlement.

This motion is based on upon this Notice of Motion, the Memorandum in support, the concurrently filed declarations, the Class Action Settlement and Release filed on May 30, 2013 (Dkt. No. 107-2), the complete files and records in this action, and such additional papers and argument as may be presented at or in connection with the hearing.

Because this motion is brought in accordance with the Class Settlement Agreement between the parties, Plaintiffs do not anticipate any opposition to this motion by Defendant BMW NA.

Dated: March 7, 2014                     Respectfully Submitted,


                                         BARON & BUDD, P.C.

                                         By:    /s/ Roland Tellis
                                                Roland Tellis

                                         Roland Tellis (SBN 186269)
                                         Mark Pifko (SBN 228412)
                                         Baron & Budd, P.C.
                                         15910   Ventura   Boulevard,   Suite   1600
                                         Encino, California  91436

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF LAW IN SUPPORT
Case No: 2:11-CV-07667-PSG-CW

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................ 1

II.   BACKGROUND OF THE CASE ................................................................... 3

    A.    Class Counsel's Pre-Suit Investigation ............................................ 3

    B.    Summary of The Litigation ................................................................ 4

        1.    The Various Actions Against BMW NA ..................................... 4

        2.    The Allegations Against BMW NA ............................................ 5

        3.    Class Counsel's Discovery Efforts ............................................ 6

        4.    Settlement Negotiations .............................................................. 7

        5.    Preliminary Approval .................................................................. 8

III.  THE STANDARD FOR FINAL APPROVAL OF CLASS ACTION
      SETTLEMENTS ............................................................................................ 9

IV.   CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS
      APPROPRIATE HERE ................................................................................. 10

    A.    The Requirements of Rule 23(a) Are Met ....................................... 11

    B.    The Requirements of Rule 23(b) Are Met ....................................... 12

V.    THE STANDARDS FOR FINAL APPROVAL OF THE PROPOSED
      CLASS SETTLEMENT HERE ARE INDISPUTABLY SATISFIED ........... 13

    A.    The Settlement Offers Substantial Benefits to the Class Without the Risk
        or Delay Associated With Continued Litigation ................................... 14

        1.    Release and Discharge of Claims ............................................. 16

        2.    Payment of Attorneys' Fees And Expenses .............................. 16

        3.    Compensation For The Class Representatives ........................... 17

    B.    Strength of Plaintiffs' Case .............................................................. 18

    C.    Risk of Continuing Litigation........................................................... 19

    D.    Risk of Maintaining Class Action Status ......................................... 21

    E.    The Extent of Discovery and Status of Proceedings ......................... 22

    F.    Experience and Views of Counsel..................................................... 23

    G.    Presence of a Governmental Participant ........................................... 24

i

       H.     Reaction of Settlement Class Members...................................................... 24

VI.   NOTICE................................................................................................................. 25

VII.  CONCLUSION..................................................................................................... 25

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Alin v. American Honda Motor Co., Inc.,*
    Case No. 08-4825-KSH-PS (D. N.J. 2011) ........................................... 16

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997)............................................................... 10, 11

*Boyd v. Bechtel Corp.,*
    485 F. Supp. 610 (N.D. Cal. 1979) ..................................................... 10

*Carter v. Anderson Merchandisers,*
    U.S. Dist. LEXIS 55629, at *17 (C.D. Cal. May 11, 2010) .................................. 18

*Churchill Village, L.L.C. v. Gen. Elec.,*
    361 F.3d 566 (9th Cir. 2004) ............................................... 9, 14, 24

*Class Plaintiffs v. City of Seattle,*
    955 F.2d 1268 (9th Cir. 1992) ......................................................... 9

*Curtis-Bauer v. Morgan Stanley & Co., Inc.,*
    U.S. Dist. LEXIS 85028 (N.D. Cal. Oct. 22, 2008) ....................................... 19

*Daugherty v. American Honda Motor Co.,*
    144 Cal. App. 824 (2006) ............................................................. 20

*Ellis v. Naval Air Rework Facility,*
    87 F.R.D. 15 (N.D. Cal. 1980)......................................................... 22

*Fulford v. Logitech, Inc.,*
    U.S. Dist. LEXIS 29042 (N.D. Cal. Mar. 5, 2010)....................................... 21

*Garner v. State Farm. Mut. Auto. Ins. Co.,*
    U.S. Dist. LEXIS 49477 (N.D. Cal. Apr. 22, 2010) .................................. 19, 24

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) .............................................. 10, 13, 14, 24

*Henderson v. Volvo Cars of North America,*
    Case No. 09-4146-CCC-JAD (D. N.J. 2012) .......................................... 16

iii

*Hopson v. Hanesbrands Inc.,*
  U.S. Dist. LEXIS 33900 (N.D. Cal. Apr. 3, 2009) ................................................. 18

*In re Apple Computer Securities Litigation,*
  U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991) ......................................... 19, 20

*In re Bridgestone/Firestone, Inc.,*
  288 F.3d 1012 (7th Cir. 2002) ................................................................................ 21

*In Re General Motors Dex-Cool Prods. Liab. Lit.,*
  241 F.R.D. 305 (S.D. Ill. 2007) ............................................................................... 20

*In re Mego Fin. Corp. Sec. Litig.,*
  213 F.3d 454 (9th Cir. 2000) .................................................................................... 22

*In re Netflix Privacy Litig.,*
  U.S. Dist. LEXIS 37286 (N.D. Cal. Mar. 18, 2013) ................................... 9, 11, 21

*In re Omnivision Techs., Inc.,*
  559 F. Supp. 2d 1036 (N.D. Cal. 2007) .................................................................. 23

*In re Wells Fargo Loan Processor Overtime Pay Litig.,*
  U.S. Dist. LEXIS 84541 (N.D. Cal. Aug. 2, 2011) ................................................. 18

*Mazza v. American Honda Motor Co.,*
  666 F.3d 581 (9th Cir. 2012) .................................................................................... 21

*Officers for Justice v. Civil Serv. Comm'n of S.F.,*
  688 F.2d 615 (9th Cir. 1982) .......................................................................... 9, 10, 18

*Rodriguez v. West Publ'g Corp.,*
  563 F.3d 948 (9th Cir. 2009) ............................................................................ 17, 19, 23

*Sadowska et al. v. Volkswagen Group of America, Inc. et al.*
  Case No. CV11-00665-BRO-AGR (C.D. Cal. 2013) ............................................ 15

*Staton v. Boeing Co.,*
  327 F.3d 938 (9th Cir. 2003) .................................................................................... 11

*Wal-Mart Stores, Inc. v. Dukes,*
  131 S. Ct. 2541 (2011) ............................................................................................. 12

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
CERTIFICATION OF NATIONWIDE SETTLEMENT CLASS; MEMORANDUM OF LAW
Case No: 11-CV-07667-PSG-CW

*Wolin v. Jaguar Land Rover N. Am., LLC,*
    617 F.3d 1168 (9th Cir. 2010) ........................................................................ 13

*Zwicker v. General Motors Corp.,*
    Case No. C07-0291-JCC (W.D. Wash. 2008) ................................................ 16

**Statutes**

28 U.S.C. § 1715 ........................................................................................................ 24

**Other Authorities**

Fed. R. Civ. P. 23 ............................................................................................. passim

## MEMORANDUM OF LAW

### I.   INTRODUCTION

Plaintiffs Brad Aarons, Mary Limon, Dolores Kollmer, Lynette Bourne-Miller, Darren Bailey, Victor Ferrer, Paul Pugliese, Robert Hare and James Frederick Bonomo (collectively, "Plaintiffs" or "Class Representatives"),[1] respectfully submit this memorandum in support of Plaintiffs' Motion for Final Approval of Class Settlement (the "Motion").

The proposed settlement marks the end of a long and arduous dispute that involves five different putative class action cases that were originally filed in three different districts.  Commencing in 2011, Plaintiffs filed five separate cases on behalf of themselves and a putative class of current and former owners and lessees of First Generation MINI Cooper vehicles ("MINIs") equipped with a Continuously Variable Automatic Transmission ("CVT") (collectively, the "Class Vehicles") distributed by Defendant BMW of North America ("BMW NA"). Plaintiffs allege that the Class Vehicles' CVT contains design and manufacturing defects that caused them to prematurely break down and suffer mechanical failure.

The settlement reached between Plaintiffs and BMW NA (the "Settlement"), which was preliminarily approved by this Court, provides substantial monetary relief to all Class Members and resolves all of the MINI CVT cases without the delay and risks associated with trial and the appellate process.  Indeed, under the material terms of the Settlement, claimants are entitled to: (1) reimbursement of up to *thousands of dollars* in out-of-pocket expenses for *past* CVT repairs; (2) reimbursement of up to *thousands of dollars* in out-of-pocket expenses for *future*

---

[1] Unless indicated otherwise, capitalized terms used herein have the same meaning as those referenced in the Settlement Agreement attached as Exhibit 1 to the Declaration of Roland Tellis In Support Of Plaintiff's Motions for Final Approval of Class Action Settlement and For an Award of Attorneys' Fees and Cost ("Tellis Decl.").

CVT repairs; (3) an *extended* parts warranty; and (4) payment of *up to $2,000* for Class Members who sold their vehicles as a result of a CVT failure.

As detailed below, by almost every measure, this Settlement is comparable, if not superior, to other recent class action consumer settlements which have received final approval. The Settlement was the product of extended arm's-length negotiations commencing with a mediation by the Honorable Howard B. Wiener (Ret.), followed by many months of telephonic conferences and e-mail exchanges between experienced attorneys familiar with the legal and factual issues of this case. All Class Members were treated fairly under the terms of the Settlement. In Class Counsel's[2] view, the Settlement reflects an excellent resolution of the parties' respective claims and defenses, is fair, reasonable, adequate, and confers substantial benefits to the Class Members.

This Court granted preliminary approval of the Settlement on August 5, 2013. The Court's Preliminary Approval Order conditionally certified a class, for settlement purposes, of the following Class Vehicles equipped with a CVT:

• MINI R50 (June 11, 2001-November 28, 2006 production period);

• MINI R52 (March 6, 2004-July 31, 2008 production period);

Preliminary Approval Order at 2-3, Dkt. 117.

Following preliminary approval, over 124,000 Notice Packets were mailed to current and former owners and lessees of the approximately 49,000 Class Vehicles, along with the creation of a dedicated settlement website and toll-free number. Accordingly, Class Members have been adequately notified of the

---

[2]  Class Counsel consists of the law firms of Baron & Budd, P.C., Seeger Weiss LLP, Wasserman Comden Casselman & Esensten LLP, Mazie Slater Katz & Freeman LLC, Strategic Legal Practices APC, Capstone Law APC, Initiative Legal Group APC, Harke Clasby & Bushman, LLP, Astigarraga Davis Mullins & Grossman, P.A., Lawrence A. Caplan, P.A., and Blood Hurst & O'Reardon LLP.

settlement terms and have been given the opportunity to object or exclude themselves from the settlement.

The deadline to make claims, seek exclusion and object is April 6, 2014. (Tellis Decl., ¶ 6).  To date, the Claims Administrator has received 810 claims for reimbursement (entitling such claimants to recover up to thousands of dollars each depending on the age and mileage of their vehicles), 14 Class Members have opted out, and only three Class Members have objected.  (*Id.*)  That just three class members in a class of over 124,000 have objected to the settlement is remarkable, and alone is substantial proof of the quality of the settlement and the fairness of its terms.  The response of the Class favors final approval of the Settlement.

As shown below, the Settlement not only satisfies Rule 23's "fair, reasonable, and adequate" standard, it is an outstanding result for Class Members. The Court should grant final approval.

## II.   BACKGROUND OF THE CASE

### A.   Class Counsel's Pre-Suit Investigation

Prior to the filing of the actions, Class Counsel collectively devoted months to investigating the CVT defect alleged in the actions.  Specifically, as part of their pre-filing investigative work, Class Counsel, *inter alia*, (a) fielded dozens of inquiries from prospective class members, (b) consulted with automotive engineering experts, (c) retained mechanics to inspect and investigate the MINI's CVT system, (d) researched publically available materials and information provided by the National Highway Traffic Safety Administration concerning consumers' complaints about the MINI's CVT, (e) reviewed BMW manuals and technical service bulletins discussing the alleged defect, (f) reviewed federal motor regulations regarding safety standards, (g) identified all the potential defendants, and (h) conducted research into potential causes of actions and other cases where the same or similar defects were alleged.  (Tellis Decl. at ¶ 11.)

1    This pre-filing investigation culminated in the filing of five separate cases

2    against BMW NA (*Id.* ¶ 10.)

3    **B.    Summary of The Litigation**

4         **1.    The Various Actions Against BMW NA**

5         The following is a chronology of the filing of the various actions against

6    Defendant BMW NA (collectively, the "Actions"):

7    • September 15, 2011 – *Aarons v. BMW of North America, LLC*, Case No.

8       1:11-cv-07667-PSG-CW (the "*Aarons* Action") is filed in the Central

9       District of California on behalf of a California class.

10   • November 23, 2011 – *Bourne-Miller v. BMW of North America, LLC et al.*,

11      Case No. 2:11-cv-06909-FSH-BS (the "*Bourne-Miller* Action") is filed in

12      the District of New Jersey on behalf of a nationwide class, excluding

13      California.

14   • December 16, 2011 – *Limon v. BMW of North America, LLC*, Case No.

15      8:11-cv-01952-PSG-CW (the "*Limon* Action") is filed in the Central

16      District of California on behalf of a California class.

17   • December 19, 2011 – *Kollmer v. BMW of North America, LLC*, Case No.

18      2:11-cv-10444-PSG-CW (the "*Kollmer* Action") is filed in the Central

19      District of California on behalf of a California class.

20   • March 8, 2012 – The *Limon* and *Kollmer* Actions are consolidated with the

21      *Aarons* Action, and a consolidated complaint is filed on April 16, 2012.

22   • July 9, 2012 – *Bonomo v. BMW of North America LLC*, Case No. 9:12-cv-

23      80740-DMM (the "*Bonomo* Action") is filed in the Southern District of

24      Florida on behalf of a Florida class.

25   • November 6, 2012 – The *Bonomo* and *Bourne-Miller* Actions are

26      transferred to the Central District of California and deemed related to the

27      *Aarons* Action.

28

### 2. The Allegations Against BMW NA

All the Actions allege that the Class Vehicles suffer from a common design defect that causes their CVTs to prematurely break down and suffer mechanical failure. (*Aarons* Compl. ¶¶ 7-9; *Bourne-Miller* FAC ¶ 2; *Bonomo* Compl. ¶ 1.) A CVT is a type of automatic transmission that is supposed to provide more useable power, better fuel economy and a smoother driving experience than a traditional automatic transmission. (*Bourne-Miller* FAC ¶ 3.) Unlike traditional transmissions with a gear set, a CVT uses a system of pulleys with a metal belt or chain running between them which enables the engine to run at its most efficient revolutions per minute (RPM) for a range of vehicle speeds. (*Id.*)

Each of the Actions alleged that BMW NA failed to disclose, and actively concealed, material safety issues existing in the MINIs which were equipped with CVTs. The cases further alleged that the CVTs were prone to sudden premature failure occurring well before the end of the useful life of the vehicle. Plaintiffs further alleged that a CVT failure can be catastrophic when it occurs while the MINI is being driven, resulting in a total loss of power to drive wheels and maintain speed, and exposing occupants of the vehicle to risk of collision.

Plaintiffs sought an order requiring BMW NA to pay class members for the cost to repair the CVT defect and reimburse them for premature CVT replacements pursuant to various consumer protection laws. (*Aarons* Compl. ¶¶ 87-129; *Bourne-Miller* FAC ¶¶ 84-108; *Bonomo* Compl. ¶¶ 95-168.) Plaintiffs also sought recovery under warranty law because they claimed BMW NA refused to repair the alleged CVT defect free of charge. (*Aarons* Compl. ¶¶ 124-129; *Bourne-Miller* FAC at ¶¶ 109-150; *Bonomo* Compl. ¶¶ 119-135.)

On December 14, 2011, BMW NA filed a motion to dismiss each of the claims alleged in the *Aarons* complaint. (*Aarons* Action Dkt. No. 23.) On March 16, 2012, this Court ruled on the motion, holding, among other things, that

1   Plaintiff Aarons had successfully pleaded a safety-related defect. (*Aarons* Action,

2   Dkt. No. 37 at 5.) Ultimately, this Court granted BMW NA's motion, with leave

3   to amend concerning the issue of whether the pleadings adequately alleged that

4   BMW NA was aware of the defect before April 2003, when Plaintiff Aarons

5   purchased his vehicle. (*See Id.*) Plaintiff Aarons filed a consolidated class action

6   complaint on April 9, 2012 (*Id.* at Dkt. No. 43), which BMW NA subsequently

7   answered.

8       On March 12, 2012, BMW filed a motion to dismiss each of the claims

9   alleged in the *Bourne-Miller* First Amended Complaint. (*Bourne-Miller* Action

10   Dkt. No. 18.) Following a full briefing of the motion, but before the District of

11   New Jersey rendered a decision, the action was transferred to the Southern District

12   of Florida and, ultimately, to this Court.

13         **3.    Class Counsel's Discovery Efforts**

14       The parties engaged in substantial discovery, including propounding and

15   responding to written discovery and reviewing voluminous documents produced

16   by BMW in this case (*e.g.,* service and repair manuals; maintenance and warranty

17   manuals; technical service bulletins; warranty repair invoices; warranty

18   reimbursements; service records; vehicle population numbers for Class Vehicles

19   equipped with CVT transmissions; warranty data; and consumer complaint

20   reports). (Tellis Decl. ¶ 13.) Significant written discovery and document

21   production related to the class vehicles' CVTs occurred in the *Aarons* and *Bourne-*

22   *Miller* Actions before the parties agreed to the terms of the proposed Settlement

23   Agreement. (*Id.*)

24       Additionally, the *Bourne-Miller* plaintiffs filed a motion to compel BMW

25   NA to further respond to their interrogatories and document requests, which the

26   District of New Jersey granted on September 5, 2012. (*Bourne-Miller* Action Dkt.

27   No. 32.) The order directed BMW NA to provide the *Bourne-Miller* plaintiffs

28

1   with, among other things, the VINs for the Class Vehicles, operation/labor damage

2   codes relating to the alleged CVT Defect, service bulletins, service records for the

3   Class Vehicles addressing issues/complaints with the CVT (including warranty

4   data demonstrating the number of CVTs repaired or replaced under the MINI

5   warranty), policies of disclosing systemic problems/reports of problems with the

6   quality or safety of vehicles BMW NA distributes in the United States, copies of

7   the service and warranty information books and owners' manuals for the Class

8   Vehicles, and repair manuals.  (Tellis Decl. ¶ 15.)

9               **4.    Settlement Negotiations**

10          Commencing in June 2012, the parties began exploring a possible

11   settlement.  (*Id.* at ¶ 20.)  From June 2012 to February 2013, the parties engaged in

12   both in-person and telephonic discussions regarding a potential class settlement,

13   and participated in three separate mediations spanning more than five days.  (*Id.* at

14   ¶20-22)  Finally, on February 13, 2013, with the assistance of the Hon. Howard B.

15   Wiener (Ret.), a highly respected former California Superior and Appellate Court

16   judge, the parties reached a global resolution of all the above-described cases.  (*Id.*

17   at ¶ 25.)

18          Although BMW NA has and continues to deny all allegations of wrongdoing

19   a pled in the Actions, and disclaims all liability with respect to all claims, BMW

20   NA considered it desirable to resolve the Actions on the terms stated in the

21   Settlement Agreement for a host of reasons.  According to BMW NA, chief among

22   them is BMW NAs desire to maintain a positive relationship with its loyal

23   customer base and in order to avoid further expense, inconvenience and burden and

24   of continued litigation of five class actions.  BMW NA, therefore, determined that

25   the parties' Settlement was both in the putative class members' and in BMW's best

26   interests.

27

28

1

## 5.   Preliminary Approval

2    On May 30, 2013, the parties filed a Motion for Preliminary Approval of

3 Class Action Settlement. Dkt. 107. A hearing concerning Plaintiffs' Motion for

4 Preliminary Approval of Class Action Settlement was held on July 17, 2013. At

5 the hearing, the Court noted certain potential concerns regarding the contents of the

6 class notice and claim form. Dkt. 109. Accordingly, Plaintiffs filed a

7 supplemental declaration in further support of Plaintiffs' motion for preliminary

8 approval of class action settlement outlining revisions to the notice and claim form.

9 Dkt. 111. This Court then scheduled a telephonic conference for August 2, 2013 to

10 discuss the changes to the notice and claim form. Dkt. 111. Shortly thereafter, this

11 Court entered an order granting preliminary approval of the Settlement, finding

12 that "the Settlement Agreement contains no obvious deficiencies and that the

13 parties entered into the settlement in good faith, following arm's length negotiation

14 between their respective counsel." Preliminary Approval Order at 4, Dkt. 117.

15    On November 19, 2013, consistent with this Court's Order (Dkt. 135), the

16 Claims Administrator began to mail out the Court-approved class notice on a

17 rolling basis to class members, and allowed for the immediate online submission of

18 claims under the settlement.

19    As required by the notice program set forth in the Settlement and approved

20 by the Court, notice was disseminated via direct mail to over 124,000 Class

21 Members. (Tellis Decl., at Ex. 2; Declaration of Phil Cooper Re Notice Procedures

22 at ¶ 7). The Claims Administrator, KCC, also caused an Interactive Voice

23 Response system to be established to provide information about the settlement.

24 The Claims Administrator also created a dedicated website to provide information

25 about the settlement and to allow for the submission of on-line claims.[3] The

26 _____

27 [3] www.minicvtsettlement.com

28

8

1   Settlement website includes: the Amended Consolidated Class Action Complaint,
2   the Settlement Agreement, the Motion for Preliminary Approval, this Court's
3   Preliminary Approval Order, the Notice in both English and Spanish, an online
4   proof of claim form, a printable claim form, the date and time of the Fairness
5   Hearing, the deadline to opt out, the deadline to submit an objection, and a
6   "Frequently Asked Questions" page.

7          Class Members have until April 6, 2014 to make claims.

8   **III.   THE STANDARD FOR FINAL APPROVAL OF CLASS ACTION**
9   **        SETTLEMENTS**

10         In evaluating a class action settlement under Rule 23, a District Court must
11  determine (1) whether class certification is appropriate for settlement purposes and
12  (2) whether the settlement is fundamentally fair, reasonable, and adequate.  Fed. R.
13  Civ. P. 23.  In evaluating the fairness of a class action settlement, courts are
14  mindful that the law favors the compromise and settlement of class action suits.
15  *See, e.g., Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir.
16  2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992);
17  *Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir.
18  1982).  The *Manual for Complex Li*tigation states:

19         The judge can encourage the settlement process by asking at the first
20         pretrial conference whether settlement discussions have occurred or
21         might be scheduled.

22  *Manual* (Fourth) §13.11 at 167 (2004).  "Courts have afforded a presumption of
23  fairness and reasonableness of a settlement agreement where that agreement was
24  the product of non-collusive, arms' length negotiations conducted by capable and
25  experienced counsel."  *In re Netflix Privacy Litig.*, No. 5:11-CV-00379 EJD, 2013
26  U.S. Dist. LEXIS 37286, at *10-11 (N.D. Cal. Mar. 18, 2013) (citation omitted).

27
28

1    Where, as here, the settlement negotiations were conducted at arm's-length

2 by experienced class action counsel, counsel's assessment and judgment are

3 entitled to a presumption of reasonableness, and the court is entitled to rely heavily

4 upon counsel's assessment and judgment. *Boyd v. Bechtel Corp.*, 485 F. Supp.

5 610, 622 (N.D. Cal. 1979) (citation omitted).  Indeed, "the court's intrusion upon

6 what is otherwise a private consensual agreement negotiated between the parties to

7 a lawsuit must be limited to the extent necessary to reach a reasoned judgment that

8 the agreement is not the product of fraud or overreaching by, or collusion between,

9 the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable

10 and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625.  Ultimately,

11 however, the decision to approve a settlement is committed to the sound discretion

12 of the trial judge. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)

13 (citation omitted).

14 **IV.   CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS**

15 **APPROPRIATE HERE**

16    The Ninth Circuit has recognized that certifying a settlement class to resolve

17 consumer lawsuits is a common occurrence. *Hanlon*, 150 F.3d at 1019.  When

18 presented with a proposed settlement, a court must first determine whether the

19 proposed settlement class satisfies the requirements for class certification under

20 Rule 23.  In assessing those class certification requirements, a court may properly

21 consider that there will be no trial. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591,

22 620 (1997) ("Confronted with a request for settlement-only class certification, a

23 district court need not inquire whether the case, if tried, would present intractable

24 management problems . . . for the proposal is that there be no trial.").

25    In the Preliminary Approval Order, this Court concluded that class

26 certification was appropriate and conditionally certified the Settlement Class for

27 settlement purposes.  Dkt. 117.  The Settlement Class is defined as all current and

28

1  former owners and lessees within the United States of the Class Vehicles equipped

2  with a CVT.  *Id.* at 2-3.  Thus, the Court may rely on the same rationale as

3  explained in the Preliminary Approval Order to find that class certification is

4  appropriate under Fed. R. Civ. P. 23(a) and (b) for settlement purposes.  *See In re*

5  *Netflix Privacy Litig.,* 2013 U.S. Dist. LEXIS 37286, at *10.  For the reasons set

6  forth below and in the Preliminary Approval Order, the Settlement Class meets the

7  requirements of Rule 23(a) and (b).

8      **A.      The Requirements of Rule 23(a) Are Met**

9          To achieve class certification, the proposed class must meet the numerosity,

10 commonality, typicality, and adequacy of representation requirements of Federal

11 Rule of Civil Procedure 23(a).  *See Staton v. Boeing Co.,* 327 F.3d 938, 953 (9th

12 Cir. 2003).  As a practical matter, the requirements of Rule 23 in the context of a

13 proposed settlement class are somewhat relaxed.  Indeed, "[c] onfronted with a

14 request for settlement-only class certification, a district court need not inquire

15 whether the case, if tried, would present intractable management problems … for

16 the proposal is that there be no trial.  *Amchem Prods. Inv. v. Windsor,* 521 U.S.

17 591, 620 (1997).  And in the Preliminary Approval Order, the Court found that the

18 following Rule 23(a) factors support class certification for settlement under Fed. R.

19 Civ. P. 23(a):

20         First, "the members of the Settlement Class are so numerous that joinder of

21 all members is impracticable."  *See* Preliminary Approval Order at 3, Dkt. 117.

22         Second, all of the Class Members' claims arise from a common nucleus of

23 facts and are based on the same legal theories.  In fact, all the causes of action and

24 legal theories in this case are common to all members of the Settlement Class.

25 Each Class Member purchased Class Vehicles, and Plaintiffs' claims were all

26 based on the common contention that BMW NA distributed Class Vehicles with

27 CVT design and manufacturing defects.  Plaintiffs maintain that this "common

28

11

contention" is "capable of class wide resolution...mean[ing] that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011); Fed. R. Civ. P. 23(a)(2). Thus, the claims are capable of class wide resolution in keeping with Federal Rule of Civil Procedure 23(a)(2). Moreover, this Court has already determined that "the requirements of Rule 23 of the Federal Rules of Civil Procedure are met by the proposed settlement class." *See* Preliminary Approval Order at 3, Dkt. 117.

Third, the claims of the Class Representatives are typical of the Class Members' claims, and are, in fact, substantially identical as they purchased Class Vehicles with defective CVTs, as did all of the other members of the Class. Fed. R. Civ. P. 23 (a)(3).

Finally, the Class Representatives will fairly and adequately protect and represent the interests of all members of the Settlement Class. The interests of the Class Representatives are not antagonistic to those of the Settlement Class. The Class Representatives are represented by Class Counsel who are experienced and competent in the prosecution of complex class action litigation. (Tellis Decl. at ¶ 37, Ex.4). Accordingly, each of Rule 23(a)'s requirements for class certification is met.

**B.     The Requirements of Rule 23(b) For A Settlement Class Are Met**

Under Rule 23(b)(3), the Court must also find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). As discussed above, this litigation primarily focuses on questions common to the class as a whole. Class Members' claims depend primarily on whether the Class Vehicles suffer from an inherent transmission defect and whether BMW NA was

1   obligated to cover repairs and replacements related to this claimed defect under its

2   express warranty, and thus raise just the sort of predominantly common questions

3   courts have found to justify class treatment.

4       Further, other common questions, such as (1) whether BMW NA engaged in

5   unlawful, unfair, misleading, or deceptive business acts or practices; (2) whether

6   BMW NA engaged in consumer fraud, deceptive trade practices, or other unlawful

7   acts; and (3) whether Plaintiffs and Settlement Class Members are entitled to any

8   damages, restitution, injunctive and/or monetary relief, and if so, the amount and

9   nature of such relief can be adjudicated on a class wide basis. These issues can be

10  resolved for all members of the proposed class in a single adjudication.  Since

11  common questions present a significant aspect of the case and can be resolved in a

12  single adjudication, Rule 23(b)(3)'s predominance requirement is met. *See Hanlon,*

13  150 F.3d at 1022.

14      As to the superiority requirement, the alternative to class certification in this

15  case would be either thousands of separate cases, or abandonment of claims by

16  most Class Members because the amount of individual recovery would be modest.

17  Additionally, separate proceedings by individual Class Members would create

18  significant expense and a risk of inconsistent judgments.  As such, a class action is

19  clearly the superior vehicle for addressing these claims.  *See Wolin v. Jaguar Land*

20  *Rover N. Am., LLC,* 617 F.3d 1168, 1175-76 (9th Cir. 2010).

21  **V.    THE STANDARDS FOR FINAL APPROVAL OF THE PROPOSED**

22  **CLASS SETTLEMENT HERE ARE INDISPUTABLY SATISFIED**

23      A proposed class action settlement may be approved if the Court, after

24  allowing absent class members an opportunity to be heard, finds that the settlement

25  is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  In answering the

26  question whether a settlement is fair, adequate and reasonable as prescribed by

27  Rule 23(e), district courts have been instructed to balance several factors: (1) the

28

strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; and (7) the reaction of the class members to the proposed settlement. *Hanlon,* 150 F.3d at 1026; *Churchill,* 361 F.3d at 575. Here, the balance of the factors demonstrates that settlement warrants final approval because it is fair, adequate and reasonable.

**A.**     **The Settlement Offers Substantial Benefits to the Class Without the Risk or Delay Associated With Continued Litigation**

The Parties reached agreement on the terms of the proposed settlement through a vigorous debate of legal and factual theories by counsel and extensive arm's-length negotiations.  Under the material terms of the Settlement, Class Members will receive the following:

- **Reimbursements for Past CVT Repairs**: Subject to a maximum time/mileage limitation of 8 years/150,000 miles and the applicable reimbursement percentages set forth in the Settlement Agreement based on the date and mileage at the time of the CVT failure, BMW NA will reimburse Class Members for documented out-of-pocket costs incurred for the repair and replacement of a CVT either at (1) a MINI dealership (alleged by Plaintiffs to be approximately $6,000 to $9,000) or (2) a third-party repair facility (subject to a maximum budget of $4,100).

- **Reimbursement for Future CVT Repairs:**  Class Members whose vehicles experience CVT failures after the effective date of the Settlement will be entitled to the same reimbursement of out-of-pocket costs incurred for the repair or replacement of a CVT at a MINI dealership, subject to the maximum time/mileage limitation of 8 years/150,000 miles and the applicable reimbursement percentages set forth in the Settlement Agreement based on the

14

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF NATIONWIDE SETTLEMENT CLASS; MEMORANDUM OF LAW
Case No: 11-CV-07667-PSG-CW

date and mileage at the time of the CVT failure.  This future reimbursement feature of the Settlement provides Class Members with the opportunity to obtain monetary relief well beyond the original 4 year/50,000 warranty mile new vehicle warranty.

- **Parts Warranty Extension**:  In addition to any warranty coverage that may be available under the vehicles' original warranty period, under the Settlement Agreement, any CVT repaired or replaced at a MINI Dealership or BMW Center will have a 3 year/50,000 mile parts warranty, inclusive of labor, from the date/mileage of the repair/replacement (instead of the standard 2 year replacement parts warranty).

- **Reimbursements for Sales-At-A-Loss**: Consumers who sold their vehicles for $4,000 or less as a result of a CVT-related malfunction prior to the notice date may make a reimbursement claim of $1,000, $1,500, or $2,000, depending on the model year of the vehicle.

- **A Speedy and Consumer-Friendly Claims Process**: Although Class Members will be asked to provide proof of a repair to qualify for reimbursement, the parties agreed to a simple and straight-forward claim form with minimal documentary proof necessary to establish a covered out-of-pocket expense, and a prompt reimbursement schedule after a fully documented claim has been submitted.

- **Class Member Notification**: BMW NA has paid to notify Class Members of the settlement by first class mail, and has retained a Claims Administrator to maintain a website that provided Class Members with information concerning the settlement and the claims process.

By almost every measure, this Settlement is comparable, if not superior, to other recent class action consumer settlements which have been finally approved. *See e.g. Sadowska et al. v. Volkswagen Group of America, Inc. et al.* Case No.

1    CV11-00665-BRO-AGR (C.D. Cal. 2013)(10-year/1000,000 extended warranty

2    and reimbursement of out-of-pocket expenses based on various thresholds); *Alin v.*

3    *American Honda Motor Co., Inc.,* Case No. 08-4825-KSH-PS (D. N.J. 2011)

4    (providing reimbursement between 15% to 100% of out-of-pocket expenses, based

5    on time and mileage thresholds, for defective air conditioning

6    condenser/compressor); *Zwicker v. General Motors Corp.,* Case No. C07-0291-

7    JCC (W.D. Wash. 2008)(providing a 7-year/70,000-mile warranty for

8    replacement/reimbursement for defective speedometers); *Henderson v. Volvo Cars*

9    *of North America,* Case No. 09-4146-CCC-JAD (D. N.J. 2012)(providing

10    8/year100,000 mile extended warranty and 50% reimbursement out-of-pocket costs

11    for defective auto transmissions).  Moreover, the Settlement also provides Class

12    Members the opportunity to recover up to $2,000 for those who sold their vehicles

13    as a result of a CVT transmission failure.

14       Thus, the nature and scope of the relief obtained in the Settlement plainly

15    supports final approval.

### 1.    Release and Discharge of Claims

17       The Settlement Agreement also provides for a specific release of claims or

18    causes of action based on or related to the Class Vehicles as described and/or

19    alleged in the Amended Consolidated Complaint in this Action. The release will

20    forever terminate this litigation involving BMW NA and Plaintiffs in this Action,

21    once the Settlement becomes effective, and will apply to Plaintiffs and Class

22    Members who did not opt out of the settlement.

### 2.    Payment of Attorneys' Fees And Expenses

24       Subject to Court approval, BMW NA has also agreed to not oppose Class

25    Counsel collective application for attorneys' fees and costs up to $1,997,500, all

26    inclusive.  The attorneys' fees were negotiated separately and apart from the other

27    terms of the agreement.  The payment by BMW of Class Counsel's fees and

28

1    expenses, to the extent approved and ordered by the Court, will be in addition to

2    the relief for the Class.

3                  **3.     Compensation For The Class Representatives**

4          In addition to the individual relief discussed above, BMW NA has agreed

5    that, subject to Court approval, Class Counsel may apply to the Court for the

6    payment of service or incentive awards for lead Plaintiff Brad Aarons in the sum

7    of $3,500, and the other class representatives the sum of $2,000, for their efforts

8    on behalf of Class Members. (Tellis Decl., ¶ 33.)

9          The payment by BMW NA of Class Representatives' incentive awards, to

10   the extent approved and ordered by the Court, will be in addition to the relief for

11   the Class.

12         As to incentive awards, upon the conclusion of a successful class action

13   case, the Court has discretion to award the representative plaintiffs service

14   payments (also known as incentive awards) as compensation for their work on

15   behalf of the class. *See Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 958-59 (9th

16   Cir. 2009) ("Incentive awards are fairly typical in class action cases.") (citation

17   omitted).

18         Here, Plaintiffs seek incentive awards of $3,500 for Plaintiff Aarons and

19   $2,000 for the other Plaintiffs.  Plaintiff Aarons was the original California

20   plaintiff in these cases, and his complaint was filed months before the other cases.

21   (Tellis Decl. at ¶ 34).  Indeed, commencing in March, 2011, several months before

22   the other Mini CVT cases were filed, coordinated and, ultimately, consolidated,

23   Plaintiff Aarons spent hours working with his counsel developing the original

24   complaint and meeting with experts concerning his transmission issue.  (*Id.*).  Such

25   expenditure of time, and his willingness to act as the original lead plaintiff,

26   warrants his receipt of a modestly larger incentive award.

27

28

All of incentive awards are well within the range of awards that have been approved in recent class litigation. *See, e.g., Hopson v. Hanesbrands Inc.,* CV-08-0844 EDL, 2009 U.S. Dist. LEXIS 33900, at *27-28 (N.D. Cal. Apr. 3, 2009) ("In general, courts have found that $5,000 incentive payments are reasonable.") (citations omitted); *Carter v. Anderson Merchandisers, LP,* EDCV 08-0025-VAP (OPx), 2010 U.S. Dist. LEXIS 55629, at *17 (C.D. Cal. May 11, 2010) ("Given the relatively small size of the proposed [$5000] recognition payments, the Court thus approves the recognition payments requested for both Carter and Lanasa."); *In re Wells Fargo Loan Processor Overtime Pay Litig.,* No. C-07-1841 (EMC), 2011 U.S. Dist. LEXIS 84541 (N.D. Cal. Aug. 2, 2011) (finding reasonable $7,500 service awards to three named Plaintiffs).

The amount of the requested service awards was arrived at through negotiations with BMW NA, and finalized after the terms of class relief. It thus reflects a realistic assessment by both sides of the effort expended by Plaintiffs and the amount likely to be awarded had the Parties not reached an agreement. The Class Representatives committed themselves to working with Class Counsel in litigating the case and in bringing it to a successful conclusion. This commitment of personal time to support a case in which Plaintiffs had a modest personal interest, but which has provided benefits to thousands of absent Class Members, warrants the Court's approval of the requested incentive awards.

**B.      Strength of Plaintiffs' Case**

In determining the likelihood of a plaintiff's success on the merits of a class action, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice,* 688 F.2d at 625 (citation omitted) (internal quotations omitted). The court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery."

*Garner v. State Farm. Mut. Auto. Ins. Co.,* No. CV 08 1365 CW (EMC), 2010 U.S. Dist. LEXIS 49477, at \*24 (N.D. Cal. Apr. 22, 2010) (citing Rodriguez, 563 F.3d at 965). When Class Counsel engaged in arm's-length negotiations with BMW NA's counsel, Class Counsel was thoroughly familiar with the applicable facts, legal theories and defenses. (Tellis Decl. ¶¶ 23-24). Plaintiffs' theory of recovery is premised on the fact that BMW NA distributed the Class Vehicles with CVT systems that contained design and manufacturing defects.

Although Plaintiffs are confident in the strength of their claims and believe that they would ultimately prevail at trial, they also recognize that class action litigation is inherently risky. BMW NA has always argued that their CVT systems were not defective and worked properly, that Plaintiffs' CVT systems failed for a number of non-uniform reasons, that Plaintiffs' claims of deception fail as a matter of law, and that damages were difficult to prove in this case. Since it is clear that BMW NA has and would continue to present a vigorous defense, and that there is no assurance that the class would prevail at trial, the Settlement provides the class the best opportunity for the class to obtain significant relief. The Settlement abrogates the risks that might have prevented them from obtaining relief.

### C.   Risk of Continuing Litigation

Proceeding in this litigation in the absence of settlement poses various risks such as dismissal upon a dispositive motion, potentially potent defenses, increased costs and fees, expiration of a substantial amount of time, and the potential that the Court may refuse to certify any *litigation* class. Such considerations have been found to weigh heavily in favor of settlement. *See Rodriguez,* 563 F.3d at 966; *Curtis-Bauer v. Morgan Stanley & Co., Inc.,* No. C 06-3903 TEH, 2008 U.S. Dist. LEXIS 85028, at \*13 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").

Assuming Plaintiffs were to survive a motion for summary judgment, the risks of establishing liability posed by conflicting expert testimony would be exacerbated by the unpredictability of a lengthy and complex trial. In any "battle of experts," it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which expert version would be accepted by the jury. Moreover, even if Plaintiffs were to prevail on the issue of liability, there would still be risks in establishing the existence of monetary damages based on the length of use of the subject vehicles and the mileage of each Class Vehicle. The experience of Class Counsel has taught them that the above-described factors can make the outcome of trial extremely uncertain.

Moreover, even if Plaintiffs were to prevail at trial, risks to the class remain. For example, in *In re Apple Computer Securities Litigation,* No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991), the jury rendered a verdict for plaintiffs after an extended trial. Based on the jury's findings, recoverable damages would have exceeded $100 million. However, weeks later, the Court overturned the verdict, entering judgment N.O.V. for the individual defendants, and ordered a new trial with respect to the corporate defendant. By settling, Plaintiffs and the class avoid these risks, as well as the delays and risks of the appellate process. Careful consideration of the above risks supports approval of the Settlement as fair, adequate and reasonable.

Finally, Class Counsel possess significant experience in automobile defect cases and understand that any case against a major automobile manufacturer can be, and often is, very costly and involves major risks. Indeed, a brief survey of the outcome of recent automobile defect class action cases underscores the enormous risks attendant to such an undertaking. *See e.g. Daugherty v. American Honda Motor Co.,* 144 Cal. App. 824 (2006) (affirming judgment of dismissal on demurrer); *In Re General Motors Dex-Cool Prods. Liab. Lit.,* 241 F.R.D. 305 (S.D.

1  Ill. 2007) (nationwide class certification denied); *In re Bridgestone/Firestone, Inc.,*

2  288 F.3d 1012, 1019 (7ᵗʰ Cir. 2002) (nationwide class certification denied in Ford

3  Explorer roll-over litigation).

4      **D.**    **Risk of Maintaining Class Action Status**

5         In addition to the risks of continuing the litigation discussed above, Plaintiffs

6  would also face significant risks in certifying a class and maintaining that class

7  status through trial.  Even if the Court certified a class, on BMW NA's or the

8  Court's own motion, the class could be decertified at any time.  *See In re Netflix*

9  *Privacy Litig.,* 2013 U.S. Dist. LEXIS 37286, at *15-16 ("The notion that a district

10  court could decertify a class at any time is one that weighs in favor of settlement.")

11  (internal citations omitted).

12         Additionally, the Ninth Circuit's decision in *Mazza v. American Honda*

13  *Motor Co.,* 666 F.3d 581, 589-94 (9th Cir. 2012), which questioned the viability of

14  certifying a nationwide class under California's consumer protection and unjust

15  enrichment laws, has a direct bearing on this case if it were to proceed in litigation.

16  While Plaintiffs have not yet moved to certify the class, BMW NA would certainly

17  oppose certification, and the *Mazza* decision and subsequent case law may impact

18  the size and parameter of any class Plaintiffs could certify.  As certification

19  remains unknown, this factor too weighs in favor of finally approving this

20  Settlement.

21         The Settlement eliminates these risks by ensuring Class Members a recovery

22  that is "certain and immediate, eliminating the risk that Class members would be

23  left without any recovery…. at all." *Fulford v. Logitech, Inc.,* No. 08-cv-02041

24  MMC, 2010 U.S. Dist. LEXIS 29042, at *8 (N.D. Cal. Mar. 5, 2010).  Indeed, the

25  Settlement Agreement provides for significant cash benefits, reimbursements, and

26  additional warranties.  Since the risks of maintaining a class action are substantial,

27

28

21

1  this bird in the hand is worth two in the bush, and the Settlement should be given

2  final approval.

3       **E.**    **The Extent of Discovery and Status of Proceedings**

4       Under this factor, courts evaluate whether class counsel had sufficient

5  information to make an informed decision about the merits of the case.  *See In re*

6  *Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 459 (9th Cir. 2000).  In determining

7  whether counsel made an informed decision, the court may consider the informal

8  exchange of information between the parties because "formal discovery is not a

9  necessary ticket to the bargaining table where the parties have sufficient

10  information to make an informed decision about settlement." *(Id.)* (citation

11  omitted) (internal quotation marks omitted).

12       To weigh Plaintiffs' claims against BMW NA's defenses, Class Counsel

13  conducted an extensive investigation, including investigating the facts and law

14  relating to the matters in these Actions, which involved engaging in discovery,

15  review and analysis of certain documents and data produced by BMW and

16  consulting with automotive engineering experts. (Tellis Decl. ¶¶ 11-15).  During

17  their investigation, counsel received, examined and analyzed information,

18  documents, and materials that enabled them to assess the likelihood of success on

19  the merits, and to enter into arm's-length negotiations fully informed.  *(Id.); see*

20  *Ellis v. Naval Air Rework Facility,* 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd,* 661

21  F.2d 939 (9th Cir. 1981) (there was sufficient evidence before the parties to allow

22  them to consider the strengths and weaknesses of their respective cases).  The

23  Parties reached agreement on the terms of the Settlement Agreement through a

24  vigorous debate of legal and factual theories by counsel and extensive arm's-length

25  negotiations. (Tellis Decl. ¶¶ 16-27). Thus, this factor weighs strongly in favor of

26  approval.

27

28

1  **F.   Experience and Views of Counsel**

2  "The recommendations of Class Counsel should be given a presumption of

3  reasonableness." *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1043 (N.D.

4  Cal. 2007) (citation omitted) (internal quotation marks omitted). Deference to

5  Class Counsel's evaluation of the Settlement is appropriate because "'[p]arties

6  represented by competent counsel are better positioned than courts to produce a

7  settlement that fairly reflects each party's expected outcome in litigation.'"

8  *Rodriguez,* 563 F.3d at 967 (quoting *In re Pac. Enters. Sec. Litig.,* 47 F.3d 373,

9  378 (9th Cir. 1995)).

10  Here, the Settlement was negotiated by counsel with extensive experience in

11  consumer class action litigation. (Tellis Decl. ¶ 37, Ex. 4). Indeed, on August 5,

12  2013, this Court found that "Baron & Budd, P.C., Seeger Weiss LLP, Wasserman

13  Comden Casselman & Esensten LLP, Mazie Slater Katz & Freeman LLC,

14  Strategic Legal Practices APC, Capstone Law APC, Initiative Legal Group APC,

15  Harke Clasby & Bushman, LLP, Astigarraga Davis Mullins & Grossman, P.A.,

16  Lawrence A. Caplan, P.A., and Blood Hurst & O'Reardon LLP are experienced

17  and adequate counsel and therefore appoints them as Class Counsel." Preliminary

18  Approval Order at 3, Dkt. 117. Based on their collective experience, counsel

19  concluded that the Settlement Agreement provides exceptional results for the class

20  while sparing the class from the numerous uncertainties that would result from

21  continued and protracted litigation. (Tellis Decl. ¶ 35).

22  In addition to Class Counsel's assessment of the merits, counsel's

23  experiences with the procedural hurdles of complex litigation also informed the

24  decision to settle because the compensation received is significant. This factor also

25  supports a finding by the Court that the Settlement is fair, adequate, and

26  reasonable.

27

28

**G.    Presence of a Governmental Participant**

The government need not be involved with a class action settlement. However, the Class Action Fairness Act ("CAFA") requires that notice of the settlement be delivered to the Attorney General of the United States, and to each attorney general of each state where Class Members reside. 28 U.S.C. § 1715(b). Here, BMW NA disseminated notice of the settlement to fifty-five federal and state government officials.  (Declaration of Eric Kizirian at ¶¶ 2-3).  None of the fifty-five federal and state government officials interposed any objection to the proposed Settlement.  The lack of government involvement weighs in favor of approving the Settlement as agreed to by the Parties.

**H.    Reaction of Settlement Class Members**

To date, 810 Class Members have made claims for reimbursement which, if approved under the terms of the Settlement, would entitle them to receive up to thousands of dollars each, depending on the age and mileage of their vehicles. (Tellis Decl., at ¶¶ 6-7).  Additionally, only three Class Members have objected to the Settlement.[4]  This positive reaction to the proposed settlement weighs heavily in favor of Settlement approval and the Court should find that the "presumption of fairness" applies in this case. *See, e.g., Hanlon*, 150 F. 3d at 1027 ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness"); *Churchill,* 361 F.3d at 577 (weighing the low number of objectors in favor of settlement), *Garner v. State Farm Mut. Auto Ins. Co.,* 2010 U.S. Dist. LEXIS 49477 (N.D. Cal. April 22, 2010) ("[T]he Court may appropriately infer that a

---

[4] The deadlines for filing objections, submitting a claim or opting out have not yet occurred. The deadline to object or opt-out of the Settlement is April 6, 2014.  In accordance with the Court's order, Class Counsel will submit a supplemental memorandum and declaration on April 14, 2014 which will address all of the objections).

1   class action settlement is fair, adequate and reasonable when few class members

2   object to it.").

## VI.   NOTICE

4          The Parties agreed to a notice plan, which was approved by the Court in the

5   Preliminary Approval Order. ("The Court finds that the dissemination of the Class

6   Notice, as directed by this Order, constitutes the best notice practicable under the

7   circumstances and provides sufficient notice to all members of the Settlement

8   Class."). Preliminary Approval Order at 3-4, Dkt. 117.  The approved notice

9   program informed the Settlement Class of their rights and included direct mailing,

10  the establishment of a dedicated settlement website and a toll-free telephone

11  number, and was the best notice practicable given the circumstances of this case.

12         The notice program provided a fair opportunity for members of the

13  Settlement Class to obtain full disclosure of the conditions of the Settlement

14  Agreement and to make an informed decision regarding the proposed Settlement.

## VII.   CONCLUSION

16         For the foregoing reasons, Plaintiffs respectfully request that the Court grant

17  final approval to the Settlement Agreement, certify the Settlement Class, and enter

18  the Final Approval Order in the form submitted herewith.

19  Dated:  March 7, 2014          BARON & BUDD, P.C.

20

21

22                                By:   /s/ Roland Tellis
                                        Roland Tellis

23
                                  Roland Tellis (SBN 186269)
24                                Mark Pifko (SBN 228412)
                                  Baron & Budd, P.C.
25                                15910 Ventura Boulevard , Suite 1600
                                  Encino, California  91436
26                                Telephone:  (818) 839-2333
                                  Facsimile:   (818) 986-9698
27

28

1

2

3       Jordan Esensten (SBN 131486)
        jesensten@wccelaw.com
4       Wasserman, Comden,
        Casselman & Esensten, LLP
5       5567 Reseda Boulevard, Suite 330,
        P.O. Box 7033
6       Tarzana, California  91357-7033
7       Telephone:  (818) 705-6800
        Facsimile:   (818) 996-8266
8

9

10      Jonathan Shub (SBN 237708)
        jshub@seegerweiss.com
11      Seeger Weiss LLP
        1515 Market Street, Suite 1380
12      Philadelphia, Pennsylvania  19102
13      Telephone:  (215) 564-2300
        Facsimile:   (215) 851-8029
14

15      Payam Shahian (SBN 228406)
        pshahian@slpattorney.com
16      Strategic Legal Practices, APC
17      1875 Century Park East, Suite 700
        Los Angeles, California 90067
18      Telephone:  (310) 277-1040
        Facsimile:   (310) 943-3838
19

20

21      Matthew R. Mendelsohn*
        mmendelsohn@mskf.net
22      Mazie Slater Katz & Freeman, LLC
23      103 Eisenhower Parkway
        Roseland, New Jersey 07068
24      Telephone:   (973) 228-9898
25      Facsimile:   (973) 228-0303

26

27

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
CERTIFICATION OF NATIONWIDE SETTLEMENT CLASS; MEMORANDUM OF LAW
Case No:  11-CV-07667-PSG-CW

Jordan L. Lurie (SBN 130013)
jordan.lurie@capstonelawyers.com
Capstone Law APC
1840 Century Park East, Suite 450
Los Angeles, California 90067
Telephone: (310) 556-4811
Facsimile: (310) 943-0396


Monica Balderrama (SBN 196424)
mbalderrama@initiativelegal.com
Initiative Legal Group APC
1800 Century Park East, Mezzanine
Los Angeles, California 90067
Telephone: (310) 556-5637
Facsimile: (310) 861-9051

Lance A. Harke, P.A. *
lharke@harkeclasby.com
Howard M. Bushman, Esq.*
hbushman@harkeclasby.com
HARKE CLASBY & BUSHMAN LLP
9699 NE Second Avenue
Miami Shores, Florida 33138
Telephone:   (305) 536-8220
Facsimile:    (305) 536-8229


Timothy G. Blood (SBN 149343)
tblood@bholaw.com
Leslie E. Hurst (SBN 178432)
lhurst@bholaw.com
Blood Hurst & O'Reardon, LLP
701 B Street, Suite 1700
San Diego, California 92101
Telephone: (619) 338-1100
Facsimile: (619) 338-1101

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
CERTIFICATION OF NATIONWIDE SETTLEMENT CLASS; MEMORANDUM OF LAW
Case No: 11-CV-07667-PSG-CW

Edward M. Mullins*
emullins@astidavis.com
Jenelle E. La Chuisa*
lachuisa@astidavis.com
Astigarraga Davis Mullins and Grossman P.A
1001 Brickell Bay Drive, Ninth Floor
Miami, Florida 33131-2847
Telephone: (305) 372-8282
Facsimile: (305) 372-8202

Lawrence Allen Caplan*
lcaplan@lacaplanlaw.com
Lawrence A. Caplan P.A.
1375 Gateway Boulevard Suite 39
Boynton Beach, Florida 33426
Telephone: (561) 988-6009
Facsimile: (561) 880-6958

*Admitted Pro Hac Vice

Attorneys for Plaintiffs
Brad Aarons, Mary Limon, Dolores Kollmer, Lynette Bourne-Miller, Darren Bailey, Victor Ferrer, Paul Pugliese, Robert Hare and James Frederick Bonomo individually, and on behalf of other members of the public similarly situated

28