1  Roland Tellis (SBN 186269)
2  rtellis@baronbudd.com
   Mark Pifko (SBN 228412)
3  mpifko@baronbudd.com
4  BARON & BUDD, P.C.
   15910 Ventura Boulevard, Suite 1600
5  Encino, California  91436
6  Telephone:  (818) 839-2333
   Facsimile:   (818) 986-9698
7
8  Payam Shahian (SBN 228406)
   Pshahian@slpattorney.com
9  STRATEGIC LEGAL PRACTICES, APC
10 1875 Century Park East, Suite 700
   Los Angeles, California 90067
11 Telephone:  (310) 277-1040
12 Facsimile    (310) 943-3838

13 [Additional attorneys listed below signature line]
14 Attorneys for Plaintiffs

15            UNITED STATES DISTRICT COURT
16     CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

17 BRAD AARONS, individually, and on          Case No.: 2:11-cv-07667-PSG-CW
18 behalf of other members of the general
   public similarly situated,                 **PLAINTIFFS' NOTICE OF**
19                                            **MOTION AND MOTION FOR AN**
                                              **AWARD OF ATTORNEYS' FEES**
20              Plaintiff,                    **AND COSTS; MEMORANDUM**
                                              **OF LAW IN SUPPORT**
21 v.
22 BMW NA OF NORTH AMERICA,                   Date:    April 28, 2014
   LLC, a New Jersey limited liability        Time:    1:30 p.m.
23 company et al.                             Place:   Courtroom: 880
24                                            Judge:   Hon. Philip S. Gutierrez
25            Defendants.                     Case Filed:  September 15, 2011
                                              Trial Date:  None set
26 AND RELATED CASES
27
28

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on April 28, 2014 at 1:30 p.m., or as soon thereafter as the matter may be heard, before the Honorable Philip S. Gutierrez, United States District Court Judge for the Central District of California, 255 East Temple Street Los Angeles, California 90012-3332, Plaintiffs by and through the undersigned counsel of record, will move and hereby do move, the Court for an order awarding attorneys' fees and litigation costs. Plaintiffs bring this motion pursuant to Rule 23(h) of the Federal Rules of Civil Procedure on the grounds that the parties' Settlement Agreement authorizes the award, which is also warranted under, *inter alia*, the Consumers Legal Remedies Act, Civ. Code section 1780(e), and the Private Attorney General Statute, Cal. Civ. Proc. Code section 1021.5.

This motion is based on upon this Notice of Motion, Motion, and Memorandum in support thereof, the declarations filed in support thereof, the Class Action Settlement and Release filed on May 30, 2013 (Dkt. No. 107-2), the complete files and records in this action, and such additional papers and argument as may be presented at or in connection with the hearing. Because this motion is brought in accordance with the Class Settlement Agreement between the parties, Plaintiffs do not anticipate any opposition to this motion by Defendant BMW NA.


Dated: March 7, 2014                         Respectfully Submitted,


                                             BARON & BUDD, P.C.

                                             By:    /s/ Roland Tellis
                                                    Roland Tellis

---

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................ 1

II.    ARGUMENT ............................................................................................. 3

       A.     Plaintiffs' Fee Application Is Governed By California Law ................... 3

              1.     The Consumers Legal Remedies Act ............................................ 4

              2.     The Private Attorney General Statute .......................................... 5

       B.     The Compromise Resulted From Arms'-Length Negotiations ............... 7

       C.     The Negotiated Fee Is Reasonable Under California Law .................... 12

              1.     The Negotiated Fee Is Reasonable ............................................ 13

                     (a)    California Uses the Lodestar/Multiplier Method ............... 13

                     (b)    Plaintiffs' Lodestar Is Reasonable In Light of the Substantial
                            and Necessary Work Performed ........................................ 14

                     (c)    The Novelty And Complexity Of This Litigation ............. 15

                     (d)    Class Counsel Provided Exceptional Representation
                            Prosecuting This Complex Case ........................................ 16

                     (e)    Class Counsel Obtained Excellent Class Benefits............. 17

                     (f)    Class Counsel Faced A Substantial Risk Of Nonpayment 17

       D.     Summary of Work By Class Counsel And Settlement of Litigation ..... 18

              1.     Pre-filing Investigations ........................................................... 18

              2.     The Filing of Five Separate Cases ............................................. 19

              3.     Discovery Efforts ..................................................................... 20

              4.     Settlement Negotiations ............................................................ 21

              5.     Preliminary Approval................................................................ 21

       E.     The Parties' Negotiated Amount Includes Reimbursement for Class
              Counsel's Litigation Expenses .................................................................. 23

III.   CONCLUSION......................................................................................... 24

i

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*Alin v. American Honda Motor Co., Inc.,*
   Case No. 08-4825-KSH-PS (D. N.J. 2011) .......................................................... 11

*Anderson v. Nextel Retail Stores, LLC*
   (C.D. Cal. No. CV 07-4480, June 20, 2010).......................................................... 15

*Barrera v. Gamestop Corp.*
   (C.D. Cal. No. CV 09-1399, Nov. 29, 2010).......................................................... 14

*Blum,*
   465 U.S. at 898-900 (1984).......................................................................... 15

*Broughton v. Cigna Healthplans,*
   21 Cal. 4th 1066 (1999) ............................................................................ 5

*Browne v. American Honda Motor Co., Inc.,*
   WL 9499073 (C.D. Cal. 2010)..................................................................... 5, 7

*Buccellato v. AT&T Operations, Inc.,*
   WL 4526673 (N.D. Cal. No. 10-00463, June 30, 2011)........................................ 15

*Collado v. Toyota Motor Sales, U.S.A., Inc.,*
   __Fed.Appx.__2012 WL 6571823 ................................................................. 13

*Evans v. Jeff D.,*
   475 U.S. 717 (1980)................................................................................... 7

*Faigman v. AT&T Mobility LLC,*
   U.S. Dist. LEXIS 15825 (N.D. Cal. Feb. 15, 2011) ............................................ 14

*Gezalyan v. BMW NA of North America, LLC,*
   697 F. Supp. 2d 1169 (C.D. Cal. 2010) .......................................................... 4

*Graham v. DaimlerChrysler Corp.,*
   34 Cal. 4th 553 (2004) .............................................................................. 6

*Harris v. Marhoefer,*
   24 F.3d 16 (9th Cir. 1994) .......................................................................... 23

ii

*Henderson v. Volvo Cars of North America,*
  Case No. 09-4146-CCC-JAD (D. N.J. 2012) ........................................... 12

*Hensley v. Eckerhart,*
  461 U.S. 424 (1983) ........................................................................ 7

*Hernandez v. Kovacevich,*
  WL 2435906 (E.D. Cal. 2005) ............................................................. 8

*In re Apple Computer, Inc. Derivative Litig.,*
  WL 4820784 (N.D. Cal. 2008) ............................................................ 9

*In re Cellphone Termination Fee Cases,*
  180 Cal. App. 4th 1110 (2009) ......................................................... 8

*In re Charles Schwab Corp. Securities Litig.,*
  WL 1481424 (N.D. Cal. No. 08-01510, Apr. 19, 2011) ......................... 15

*In re Consumer Privacy Cases,*
  175 Cal. App. 4th ................................................................. 12, 13, 14

*In re First Capital Holdings Corp. Financial Products Securities,*
  WL 226321 (C.D. Cal. 1992) .............................................................. 8

*In re Larry's Apartment, L.L.C.,*
  249 F.3d 832 (9th Cir. 2001) ............................................................ 4

*In Re Mercury Interactive Corp. Securities Litigation,*
  618 F.3d 988 (9th Cir. 2010) ............................................................ 3

*In re Nuvelo, Inc. Securities Litig.,*
  WL 2650592 (N.D. Cal. No. 07-04056, July 6, 2011) ........................... 15

*In re Wash. Pub. Power Supply Sys. Sec. Litig.,*
  19 F.3d 1291 (9th Cir. 1994) ........................................................... 18

*In re Wells Fargo Loan Processor Over-Time Pay Litigation,*
  WL 3352460 (N.D. Cal. No. 07-1841, Aug. 2, 2011) ........................... 15

*Kerr,*
  526 F.2d at 70 ............................................................................. 15

*Ketchum v. Moses*,
    24 Cal. 4th 1122 (2001) ........................................................................ 13

*Kim v. Euromotors West/The Auto Gallery*,
    149 Cal. App. 4th 170 (2007) ................................................................ 5

*Mangold v. California Public Utilities Commission*,
    67 F.3d 1470 (9th Cir. 1995) ............................................................ 4, 12

*Minor v. Christie's, Inc.*,
    2011 WL 902235 .................................................................................. 15

*Parkinson v. Hyundai Motor America*,
    796 F. Supp. 2d 1160 (C.D. Cal. 2010) ................................. 5, 6, 12, 13

*Ryan v. Cal. Interscholastic Federation*,
    94 Cal. App. 4th 1033 (2001) ................................................................ 7

*Sadowska et al. v. Volkswagen Group of America, Inc. et al.*
    Case No. CV11-00665-BRO-AGR (C.D. Cal. 2013) .......................... 11

*Staton v. Boeing Co.*,
    327 F. 3d 938 (9th Cir. 2003) ............................................................ 4, 8

*Singer v. Becton Dickinson*,
    WL 2196104, at *8 (S.D. Cal. 2010) ..................................................... 7

*Vizcaino*,
    290 F.3d at 1048 ............................................................................ 15, 17

*Wershba v. Apple Computer*
    91 Cal. App. 4th 224 (2001) ................................................................ 12

*Zwicker v. General Motors Corp.*,
    Case No. C07-0291-JCC (W.D. Wash. 2008) ..................................... 12

**Statutes**

Cal. Civ. Proc. Code § 1021.5 ............................................................... 4, 6

Consumers Legal Remedies Act, Cal. Civ. Code § 1780 ............................ 4

Magnuson-Moss Warranty Act, 15 U.S.C. § 2310 ..................................... 4

iv

Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1794 ................................... 4

**Other Authorities**

Fed. R. Civ. P. 23 ......................................................................................... 3

## MEMORANDUM OF LAW

## I.   INTRODUCTION

Plaintiffs Brad Aarons, Mary Limon, Dolores Kollmer, Lynette Bourne-Miller, Darren Bailey, Victor Ferrer, Paul Pugliese, Robert Hare and James Frederick Bonomo (collectively, "Plaintiffs" or "Class Representatives")[1] and Class Counsel[2] respectfully submit this memorandum of points and authorities in support of their motion for an award of reasonable attorneys' fees and reimbursement of their litigation costs.  Through their substantial efforts, Class Counsel obtained a substantial recovery for the Class, as embodied in the parties' Settlement Agreement and Release (the "Settlement Agreement").  (*See* Declaration of Roland Tellis In Support Of Plaintiff's Motions for Final Approval of Class Action Settlement and For an Award of Attorneys' Fees and Cost ("Tellis Decl."), at Exh. 1).

Following a long and arduous dispute that involved five different putative class actions, originally filed in three different districts, the parties reached a settlement that provides for real, immediate and substantial benefits to a putative class of current and former owners and lessees of First Generation MINI Cooper vehicles ("MINIs") equipped with a Continuously Variable Automatic Transmission ("CVT") (collectively, the "Settlement Class Vehicles") distributed by Defendant BMW NA of North America ("BMW NA").  Plaintiffs allege that

---

[1]  Unless indicated otherwise, capitalized terms used herein have the same meaning as those referenced in the Settlement Agreement attached as Exhibit 1 to the Tellis Decl.

[2]  Class Counsel consists of the law firms of Baron & Budd, P.C., Seeger Weiss LLP, Wasserman Comden Casselman & Esensten LLP, Mazie Slater Katz & Freeman LLC, Strategic Legal Practices APC, Capstone Law APC, Initiative Legal Group APC, Harke Clasby & Bushman, LLP, Astigarraga Davis Mullins & Grossman, P.A., Lawrence A. Caplan, P.A., and Blood Hurst & O'Reardon LLP.

1

1   the Settlement Class Vehicles' CVT contains design and manufacturing defects

2   that caused them to prematurely break down and suffer mechanical failure.

3       The Settlement reached between Plaintiffs and BMW NA (the

4   "Settlement"), which was preliminarily approved by this Court, provides

5   substantial monetary relief to all Class Members and resolves all of the MINI CVT

6   cases without the delay and risks associated with trial and the appellate process.

7   Indeed, under the material terms of the Settlement Agreement, Claimants are

8   entitled to: (1) reimbursement of up to ***thousands of dollars*** each in out-of-pocket

9   expenses for *past* CVT repairs; (2) reimbursement of up to ***thousands of dollars***

10   each in out-of-pocket expenses for *future* CVT repairs; (3) an ***extended*** parts

11   warranty; and (4) payment of ***up to $2,000*** each for Class Members who sold their

12   vehicles as a result of a CVT failure.

13       As detailed in Plaintiffs' concurrently filed Motion for Final Approval of

14   Class Action Settlement, the Settlement provides Class Members with relief equal

15   to, or better than, other recent automobile class action settlement which received

16   final approval.

17       BMW NA has agreed to not oppose Class Counsel's request for attorneys'

18   fees and costs in the total sum of $1,997,500.  Unlike common-fund settlements,

19   where defendants arguable have little concern about how much of the fund will be

20   apportioned to class members and attorneys' fees, BMW NA had every incentive

21   to negotiate the least amount possible for Class Counsel's attorneys' fees and costs,

22   and would have only agreed to a sum BMW NA deemed adequate to compensate

23   Class Counsel.  Furthermore, because there is no common fund, Class Counsel's

24   request for attorneys' fees and costs will in no way diminish or reduce the benefits

25   available to Class members, and will instead be paid directly by BMW NA

26   pursuant to the Settlement.

27

28

1    To date, and over the past four years, Class Counsel have devoted a total of
2    4,637.1 hours prosecuting the five related cases, and negotiating a global
3    Settlement and have incurred $114,854.84 in out-of-pocket expenses. (Tellis
4    Decl., ¶ 50). Applying Class Counsel's customary hourly rates to the total hours
5    worked, results in a lodestar of $2,229,711.25. (*Id.*) While Class Counsel
6    endeavored to avoid duplicative billing and believe the hours logged in
7    representing the Class were reasonable and necessary, to eliminate any concern
8    regarding duplicative or unnecessary billing, Class Counsel have agreed to
9    unilaterally reduce their collective lodestar by 10%, to $2,006,740.13. (*Id.* at ¶ 51).
10   Additionally, through this Motion, Class Counsel seek recovery of 93% of their
11   combined (and reduced) lodestar. (*Id.*). In other words, the unopposed fee of
12   $1,882,645.16 (after deducting aggregate expenses of $114,854.84) is still *less* than
13   Class Counsel's actual (and reduced) lodestar, resulting in a "negative multiplier"
14   of 0.93. (*Id.*)

15   This Motion is being filed during the claims period to ensure that all Class
16   Members have the opportunity to review the basis for Class Counsel's claim for
17   attorneys' fees and costs during the objection period to the Settlement Agreement,
18   as required by the Ninth Circuit Court of Appeals in *In Re Mercury Interactive*
19   *Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010).

20   **II.   ARGUMENT**

21   **A.   Plaintiffs' Fee Application Is Governed By California Law**

22   At the conclusion of a successful class action, Class Counsel may apply to
23   the Court for an award of "reasonable attorney's fees and nontaxable costs that are
24   authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Court
25   has an obligation to ensure that the award of attorneys' fees, even if negotiated, is
26   reasonable. The reason is that while ordinarily a defendant would not agree to pay
27   more than a fee-shifting claim is worth, in a class action setting there is a risk that
28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS;
MEMORANDUM OF LAW IN SUPPORT
Case No: 11-CV-07667-PSG-CW

class counsel negotiated a class settlement that under-compensates class members in exchange for defendant's agreement to an inflated fee settlement. *Staton v. Boeing Co.*, 327 F. 3d 938, 964 (9th Cir. 2003) ("If fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the [class] merits provisions . . . .").

In assessing the reasonableness of any fee request, the initial matter is to identify the governing law. As Class Counsel' right to a fee arises under state law, settled *Erie* principles require application of California law in assessing the amount of a reasonable fee. *See Mangold v. California Public Utilities Commission*, 67 F.3d 1470, 1478 (9th Cir. 1995) (in diversity actions, state law applies "in determining not only the right to fees, but also in the method of calculating the fees"); *In re Larry's Apartment, L.L.C.*, 249 F.3d 832, 837-38 (9th Cir. 2001) (holding that, in a diversity case, the law of the state in which the district court sits determines whether a party is entitled to attorneys' fees, and the procedure for requesting an award of attorneys' fees is governed by federal law); *Gezalyan v. BMW NA of North America, LLC*, 697 F. Supp. 2d 1169 (C.D. Cal. 2010) ("In diversity actions, federal courts look to state law in determining whether a party has a right to attorneys' fees and how to calculate those fees.").

Class Counsel's request for attorneys' fees and costs is authorized under the Consumers Legal Remedies Act, California Civil Code section 1780(e), and the Private Attorney General Statute, California Civil Procedure section 1021.5.[3]

### 1.    The Consumers Legal Remedies Act

The requested fees and cost award is appropriate under the mandatory fee-shifting provision of California's Consumers Legal Remedies Act ("CLRA"). Cal. Civ. Code § 1780(e) ("The court shall award court costs and attorney's fees to a

---

[3] Plaintiffs are also entitled to fees and expenses under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(2), and the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1794(d).

prevailing plaintiff in litigation filed pursuant to [the CLRA].")  "[A]n award of attorney fees to 'a prevailing plaintiff' in an action brought pursuant to the CLRA is mandatory, even where the litigation is resolved by a pre-trial settlement agreement." *Kim v. Euromotors West/The Auto Gallery*, 149 Cal. App. 4th 170, 178-79 (2007).  Awarding fees effectuates a crucial policy goal of the State: "[T]he availability of costs and attorneys' fees to prevailing plaintiffs is integral to making the CLRA an effective piece of consumer legislation, increasing the financial feasibility of bringing suits under the statute." *Broughton v. Cigna Healthplans*, 21 Cal. 4th 1066, 1086 (1999).

Here, Plaintiffs are the prevailing party, and pursuant to the terms of the Settlement Agreement, Defendant BMW NA has agreed to pay Class Counsel's attorneys' fees and expenses in the amount of $1,997,500.  In that regard, under the material terms of the Settlement Agreement, Claimants are entitled to receive: (1) reimbursement of up to ***thousands of dollars*** each in out-of-pocket expenses for *past* CVT repairs; (2) reimbursement of up to ***thousands of dollars*** each in out-of-pocket expenses for *future* CVT repairs; (3) an ***extended*** parts warranty; and (4) payment of ***up to $2,000*** for Class Members who sold their vehicles as a result of a CVT failure.  Accordingly, Plaintiffs are indisputably the prevailing parties for attorneys' fee purposes under the CLRA.  *See Parkinson v. Hyundai Motor America*, 796 F. Supp. 2d 1160, 1171 (C.D. Cal. 2010) ("Because plaintiffs obtained a favorable settlement recovery for class members in the form of cash reimbursement, up to and including full reimbursement (depending on vehicle mileage), plaintiffs are the prevailing party under the CLRA fee-shifting statute."); *Browne v. American Honda Motor Co., Inc.*, 2010 WL 9499073, at *13 (C.D. Cal. 2010) (awarding fees and expenses under CLRA in an automobile defect case).

## 2.    The Private Attorney General Statute

Under California's Private Attorney General statute, the Court may award

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS;
MEMORANDUM OF LAW IN SUPPORT
Case No:  11-CV-07667-PSG-CW

fees to a "successful party" in any action that "has resulted in the enforcement of an important right affecting the public interest if (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any." Cal. Civ. Proc. Code § 1021.5. The fundamental objective of the statute is "to encourage suits enforcing public policies by providing substantial attorney fees to successful litigants in such cases." *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 565 (2004) (quoting *Maria P. v. Riles*, 43 Cal. 3d 1281, 1288-9 (1987)). The statute makes a plaintiff a "successful party" if it achieves its litigation objectives. *Parkinson*, 796 F. Supp. 2d at 1169-70. An award is appropriate under this section where the burden of pursuing litigation is out of proportion to the individual plaintiff's stake in the matter. *Id.* at 1170 (citing *Ryan v. Cal. Interscholastic Federation*, 94 Cal. App. 4th 1033, 1044 (2001)).

This action conferred a significant benefit on a large class of persons by making financial relief available to approximately 124,000 current or former owners and lessees of the approximately 49,000 MINIs who individually could not be expected to dedicate the financial resources required to litigate against BMW NA over several thousand dollars of repairs. The action also conferred a significant benefit on the public by enforcing important consumer protection rights and discouraging unfair and deceptive treatment of consumers. *See Graham*, 34 Cal. 4th at 578 ("It is well settled that attorney fees under section 1021.5 may be awarded for consumer class action suits benefiting a large number of people."). *And see Parkinson*, 796 F. Supp. 2d at 1171 (awarding attorneys' fees and costs under California's Private Attorney General statute because "a significant pecuniary benefit, including up-to-full reimbursement, has been conferred on a

6

large class of persons [and] [t]he necessity and financial burden of private enforcement are such that the award is appropriate because an individual plaintiff seeking to vindicate a $1,000–$2,000 repair could not be expected to litigate against Hyundai's demonstrably robust and resourceful" defenses); *Browne*, 2010 WL 9499073, at *13 (same).

The necessity and financial burden of private enforcement make a fee award appropriate, without which Plaintiffs could not have afforded to hire counsel; their loss, while not trivial, was only a few thousand dollars. *See Ryan v. California Interscholastic Federation*, 94 Cal. App. 4th 1033, 1044 (2001) ("As to the necessity and financial burden of private enforcement, an award is appropriate where the cost of the legal victory transcends the claimant's personal interest; in other words, where the burden of pursuing the litigation is out of proportion to the plaintiff's individual stake in the matter.").

Finally, this is not a case where fees can or should in the interest of justice be paid out of Class Members' recovery. The incentive of a Court-awarded fee was necessary because there is no fund from which Class Counsel could be awarded those fees.

## B.     The Compromise Resulted From Arms'-Length Negotiations

In fee-shifting cases, the United States Supreme Court has endorsed consensual resolution of attorneys' fees: "Ideally, of course, litigants will settle the amount of a fee." *Hensley* v. *Eckerhart*, 461 U.S. 424, 437 (1983). In class actions too, the parties may properly negotiate not only the settlement of the action itself, but also the payment of attorneys' fees. *Evans* v. *Jeff D.*, 475 U.S. 717, 734-35, 738 fn. 30 (1980). *See Singer v. Becton Dickinson & Co.*, 2010 WL 2196104, at *8 (S.D. Cal. 2010) ("Parties to a class action may appropriately negotiate the payment of attorneys' fees and costs in conjunction with the settlement of the action itself."). This is in keeping with the powerful public policy of encouraging

and approving non-collusive settlements, including those in class actions. *In re Cellphone Termination Fee Cases*, 180 Cal. App. 4th 1110, 1118 (2009) ("'Public policy generally favors the compromise of complex class action litigation.'") (citing *In re Microsoft I-V Cases*, 135 Cal. App. 4th 706, 723, fn. 14 (2006) and *7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal. App. 4th 1135, 1151 (2000)).

When considering whether an agreed-upon fee was negotiated at arm's-length, the court may apply different levels of scrutiny. "[S]ince the proper amount of fees is often open to dispute and the parties are compromising precisely to avoid litigation, the court need not inquire into the reasonableness of the fees even at the high end with precisely the same level of scrutiny as when the fee amount is litigated." *Staton*, 327 F.3d at 966.

For example, in *In re First Capital Holdings Corp. Financial Products Securities*, 1992 WL 226321, at *4 (C.D. Cal. 1992), the court awarded an agreed-upon $8,000,000 fee and explained, "[t]he fee was negotiated at arm's length with sophisticated defendants by the attorneys who were intimately familiar with the case, the risks, the amount and value of their time, and the nature of the result obtained for the class. Where there is such arm's length negotiation and there is no evidence of self-dealing or disabling conflict of interest, the Court is reluctant to interpose its judgment as to the amount of attorneys' fees in the place of the amount negotiated by the adversarial parties in the litigation." In short, a court is simply to determine whether the negotiated fee is facially fair and reasonable, as reasonableness remains the focus. *Id.*

This task requires the Court here to review the Settlement Agreement as a whole, including the fee award, to ensure that it was fairly and honestly negotiated, is not collusive, and adequately protects the interests of the parties. *Hernandez v. Kovacevich*, 2005 WL 2435906, at *8 (E.D. Cal. 2005).

This Settlement was the product of intense and thorough arms'-length negotiations between the parties (and ultimately before an experienced and well-respected mediator), conducted by experienced counsel who, by having conducted extensive investigation, research, and discovery, were well-informed of the case's strengths and weaknesses.

Commencing in June 2012, the parties began exploring a possible settlement. (Tellis Decl. ¶ 20.) From June 2012 to February 2013, the parties engaged in both in-person and telephonic discussions regarding a potential class settlement, and participated in three separate mediations spanning more than five days. (*Id.* at ¶¶ 20-22). Finally, on February 13, 2013, with the assistance of the Hon. Howard B. Wiener (Ret.), a highly respected former California Superior  and Appellate Court judge, the parties reached a global resolution of all the above-described cases. (*Id.* at ¶ 25).

The involvement of a mediator in settlement negotiations helps to ensure that the proceedings are free of collusion and undue pressure. *In re Apple Computer, Inc. Derivative Litig.*, 2008 WL 4820784, at *3 (N.D. Cal. 2008) (citing *D'Amato v. Deutsche Bank*, 236 F. 3d 78, 85 (2d Cir. 2001)).

Finally, there is no finite fund in this Settlement and thus no issue of the Class being at odds with counsel over the distribution of a "fixed" settlement amount. *Compare Bluetooth*, 654 F.3d at 939-40 (settlement for fixed amount ($100,000) in *cy pres* award and $800,000 in attorneys' fees). And, unlike *Bluetooth*, the consideration in this Settlement flows to the Class and not to *cy pres* recipients. *See id.*

The Parties reached agreement on the terms of the proposed settlement through a vigorous debate of legal and factual theories by counsel and extensive arm's-length negotiations. Under the material terms of the Settlement, Class Members will receive the following:

9

- **<u>Reimbursements for Past CVT Repairs</u>**: Subject to a maximum time/mileage limitation of 8 years/150,000 miles and the applicable reimbursement percentages set forth in the Settlement Agreement based on the date and mileage at the time of the CVT failure, BMW NA will reimburse Class Members for documented out-of-pocket costs incurred for the repair and replacement of a CVT either at (1) a MINI dealership (alleged by Plaintiffs to be approximately $6,000 to $9,000) or (2) a third-party repair facility (subject to a maximum budget of $4,100).

- **<u>Reimbursement for Future CVT Repairs:</u>**  Class Members whose vehicles experience CVT failures after the effective date of the settlement will be entitled to the same reimbursement of out-of-pocket costs incurred for the repair or replacement of a CVT at a MINI dealership, subject to the maximum time/mileage limitation of 8 years/150,000 miles and the applicable reimbursement percentages set forth in the Settlement Agreement based on the date and mileage at the time of the CVT failure.  This future reimbursement feature of the Settlement provides Class Members with the opportunity to obtain monetary relief well beyond the original 4 year/50,000 mile new vehicle warranty.

- **<u>Parts Warranty Extension</u>**:  In addition to any warranty coverage that may be available under the vehicles' original Warranty Period, under the Settlement Agreement, any CVT repaired or replaced at a MINI Dealership or BMW NA Center will have a 3 year/50,000 mile parts warranty, inclusive of labor, from the date/mileage of the repair/replacement (instead of the standard 2 year replacement parts warranty).

- **<u>Reimbursements for Sales-At-A-Loss</u>**: Consumers who sold their vehicles for $4,000 or less as a result of a CVT-related malfunction prior to the notice date may make a reimbursement claim of $1,000, $1,500, or $2,000,

1   depending on the model year of the vehicle.

2         • **A Speedy and Consumer-Friendly Claims Process**: Although

3   Class Members will be asked to provide proof of a repair to qualify for

4   reimbursement, the parties agreed to a simple and straight-forward claim form

5   with minimal documentary proof necessary to establish a covered out-of-pocket

6   expense, and a prompt reimbursement schedule after a fully documented claim

7   has been submitted. *See* Tellis Decl. at ¶ 28.

8         • **Class Member Notification**: BMW NA has paid to notify Class

9   Members of the settlement by first class mail, and has retained a Claims

10   Administrator to maintain a website that provided Class Members with

11   information concerning the settlement and the claims process.

12      To date, approximately 810 claims have been made. (Tellis Decl., ¶ 6).

13   Through such claims, Class Members have indicated out-of-pocket losses, through

14   CVT repairs/replacements and the sale of vehicles as a result of a CVT failure, of

15   approximately $3.7 million. (*Id.* at ¶¶ 6-7). Once verified, these claimants are

16   expected to receive reimbursement pursuant to the percentages set forth in the

17   Settlement, based on the age and mileage of their vehicles. (*Id.*). Moreover, as

18   explained in the declaration of Plaintiffs' economic expert, Colin Johns, C.P.A.,

19   the value of the *future* benefits under the Settlement, including BMW NA's

20   agreement to reimburse Class members for post-settlement CVT

21   repairs/replacements and the extended parts warranty, is fairly valued at

22   approximately $5.2 million. (*Id.* at Ex. 2, Johns Decl. ¶36.)

23      By almost every measure, this Settlement is comparable, if not superior, to

24   other recent class action consumer settlements which have been finally approved.

25   *See e.g. Sadowska et al. v. Volkswagen Group of America, Inc. et al.* Case No.

26   CV11-00665-BRO-AGR (C.D. Cal. 2013)(10-year/1000,000 extended warranty

27   and reimbursement of out-of-pocket expenses based on various thresholds); *Alin v.*

28

1  *American Honda Motor Co., Inc.*, Case No. 08-4825-KSH-PS (D. N.J. 2011)

2  (providing reimbursement between 15% to 100% of out-of-pocket expenses, based

3  on time and mileage thresholds, for defective air conditioning

4  condenser/compressor); *Zwicker v. General Motors Corp.*, Case No. C07-0291-

5  JCC (W.D. Wash. 2008)(providing a 7-year/70,000-mile warranty for

6  replacement/reimbursement for defective speedometers); *Henderson v. Volvo Cars*

7  *of North America*, Case No. 09-4146-CCC-JAD (D. N.J. 2012)(providing

8  8/year100,000 mile extended warranty and 50% reimbursement out-of-pocket costs

9  for defective auto transmissions).  Moreover, the Settlement also provides Class

10  Members the opportunity to recover up to $2,000 for those who sold their vehicles

11  as a result of a CVT transmission failure.

12       Additionally, Class Counsel's separately negotiated attorneys' fees and

13  costs, which if awarded in full, readily fall within California's reasonableness

14  standard and do not reflect the type of "excessive fees and costs" that undermine

15  the public's trust when it comes to class action litigation.  *See, e.g., Wershba v.*

16  *Apple Computer*, Inc., 91 Cal. App. 4th 224, 255 (2001).

17  **C.    The Negotiated Fee Is Reasonable Under California Law**

18       "Existing Ninth Circuit precedent has applied California state law in

19  determining not only the right to fees, but also in the method of calculating the

20  fees." *Mangold v. California Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir.

21  1995).  Under both Ninth Circuit and California law, the primary method for

22  calculating statutory fee awards is the lodestar/multiplier method.  *In re Consumer*

23  *Privacy Cases*, 175 Cal. App. 4th at 556-57; *Parkinson*, 796 F. Supp. 2d at 1170.[4]

24

25

26  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

[4] Because there is no "common fund" in this case, the percentage-of-recovery method need not be

27  used to calculate attorneys' fees. *In re Consumer Privacy Cases*, 175 Cal. App. 4th at 556-57.

28

1.      **The Negotiated Fee Is Reasonable**

     (a)      **California Uses the Lodestar/Multiplier Method**

The lodestar/multiplier method is used to establish the amount of reasonable attorneys' fees under the CLRA and the Private Attorney General statute. *Parkinson*, 796 F. Supp. 2d at 1171 (applying lodestar/multiplier analysis pursuant to fee-shifting provisions of the CLRA and Private Attorney General statute); *In re Consumer Privacy Cases*, 175 Cal. App. 4th at 556-57 (2009) (applying lodestar/multiplier analysis pursuant to fee-shifting provision of Private Attorney General statute); *Collado v. Toyota Motor Sales, U.S.A., Inc.*, __Fed.Appx.__2012 WL 6571823 (9th Cir. December 16, 2013 (citing *Mangold v. California Public Utilities Com'n*, 67 F.3d 1470, 1478 (9th Cir.1995)) ("The district court abused its discretion by computing fees using a percentage of recovery method rather than a lodestar method. Here, because the court exercised diversity jurisdiction over this matter, state law governs both the right to recover attorney's fees and the computation of their amount.")

The lodestar/multiplier method is a two-step process of fee calculation under which the Court first determines a lodestar value for the fees by multiplying the time reasonably spent by counsel on the case by a reasonable hourly rate. *In re Consumer Privacy Cases*, 175 Cal. App. 4th at 556-557. The Court may then enhance the lodestar by applying a multiplier to take into account the contingent nature and risk associated with the action, as well as other factors such as the degree of skill required and the result achieved for the class. *Id.*; *Ketchum v. Moses*, 24 Cal. 4th 1122, 1130, 1137 (2001).

Applying the lodestar/multiplier method to this case confirms the fee award negotiated by the parties is reasonable. Approving the unopposed fee award provided by the parties' Settlement Agreement would be equivalent to awarding Class Counsel the product of their (reduced) lodestar and a "negative multiplier"

13

1    calculated presently to be approximately .93.

2           **(b)**    **Plaintiffs' Lodestar Is Reasonable In Light of the**

3                  **Substantial and Necessary Work Performed**

4          The lodestar value of Class Counsel's services is calculated by multiplying

5    their time spent by reasonable hourly rates for attorneys of similar skill and

6    experience. *In re Consumer Privacy Cases*, 175 Cal. App. 4th at 556. To assist

7    the Court in evaluating the reasonableness of the time spent on this case, Class

8    Counsel presented a schedule of their time records. (Tellis Decl. ¶ 50, Exh. 4) As

9    reflected therein, to date, and over the course of the past three years, Class Counsel

10   have devoted a total of 4,637.1 hours prosecuting this litigation and negotiating its

11   Settlement and have incurred $114,854.84 in out-of-pocket expenses. (*Id.*). These

12   efforts have resulted in a total lodestar of $2,229,711.25. (*Id.*). While Class

13   Counsel endeavored to avoid duplicative billing and believes the hours logged in

14   representing the Class were reasonable and necessary, to eliminate any concern

15   regarding duplicative or unnecessary billing, Class Counsel have agreed to

16   unilaterally reduce their collective lodestar by 10%, to $2,006,740.13. (*Id.* at ¶ 51).

17         Class Counsel's hourly rates, which vary based on the experience and skill

18   of the attorney or staff member performing the work, are fully set forth in each

19   Class Counsel's declaration filed concurrently herewith. Through this Motion,

20   Class Counsel seek only 93% of their combined (and reduced) lodestar. In other

21   words, the unopposed fee of $1,882,645.16 (after deducting aggregate expenses of

22   $114,854.84) is *still* less than Class Counsel's actual (and reduced) lodestar,

23   resulting in a "negative multiplier" of 0.93. (*Id.*)

24         Class Counsel's rates are comparable to those approved in other consumer

25   defect class action cases in California. *See e.g. Faigman v. AT&T Mobility LLC*,

26   2011 U.S. Dist. LEXIS 15825, at *13-14 (N.D. Cal. Feb. 15, 2011) (approving

27   hourly rates of $650 an hour for partner services)); *Barrera v. Gamestop Corp.*

28

1   (C.D. Cal. No. CV 09-1399, Nov. 29, 2010) ($700 an hour for partners); *Anderson*

2   *v. Nextel Retail Stores, LLC* (C.D. Cal. No. CV 07-4480, June 20, 2010) ($655 to

3   $750 an hour for partners); *In re Wells Fargo Loan Processor Over-Time Pay*

4   *Litigation*, 2011 WL 3352460 (N.D. Cal. No. 07-1841, Aug. 2, 2011) (approving

5   hourly rates of $500-$675 for attorneys); *In re Nuvelo, Inc. Securities Litig.*, 2011

6   WL 2650592 (N.D. Cal. No. 07-04056, July 6, 2011) (approving $500-$700 per

7   hour for partners); *In re Charles Schwab Corp. Securities Litig.*, 2011 WL

8   1481424 (N.D. Cal. No. 08-01510, Apr. 19, 2011) (approving $380-$650 per hour

9   for partners); and *Buccellato v. AT&T Operations, Inc.*, 2011 WL 4526673 (N.D.

10  Cal. No. 10-00463, June 30, 2011) (approving $290-$740 per hour for attorneys);

11  *Minor v. Christie's, Inc.*, 2011 WL 902235, at **7-8 (N.D. Cal. 2011) (approving

12  partner rates of $700 and $600 an hour).

13      Additionally, in considering the reasonableness of attorneys' fees and any

14  requested multiplier, the Ninth Circuit has also directed district courts to consider

15  the time and labor required, novelty and complexity of the litigation, skill and

16  experience of counsel, the results obtained, and awards in similar cases. *Blum*, 465

17  U.S. at 898-900 (1984); *Kerr*, 526 F.2d at 70.  All of the factors weigh heavily in

18  favor of the requested fee award in this action. *Vizcaino*,

19                    **(c)    The Novelty And Complexity Of This Litigation**

20      The novelty and complexity of this case also supports the requested fee.

21  Class Action matters are generally complex, but this one is particularly so due the

22  complexity of an automobile defect case and the resulting "battle" of engineering

23  experts.  The contested issues in the litigation were complex, including

24  determinations of the uniform nature of the defect, the necessity of establishing a

25  safety-related issue and establishing BMW NA's pre-warranty expiration

26  knowledge.   These issues were hotly contested and were subject to motions to

27  dismiss.  Indeed, Class Counsel was required to retain experts to analyze the

28

15

1  complexity of the CVT transmission and determine the nature of the defect.  (Tellis

2  Decl. ¶ 11.)

3       Settlement negotiations included multiple formal and informal discussions,

4  which were complicated both in terms of the subject matter and damages analyses

5  at issue.  (*Id.* at ¶¶ 16-27.).  Moreover, this required substantial original work, and

6  significant risk that Class Counsel's efforts (and their out-of-pocket costs) would

7  go uncompensated.  Given this landscape, the fact that Class Counsel negotiated

8  this Settlement is a notable achievement.

9              **(d)    Class Counsel Provided Exceptional Representation**

10                      **Prosecuting This Complex Case**

11       Class Counsel respectfully submit that they conducted themselves in this

12  action in a professional, diligent and efficient manner.  Class Counsel are highly-

13  respected and experienced leaders in the field of consumer class action litigation.

14  (Tellis Decl., ¶ 52, Exh. 4.)  Because the litigation involved five separate cases in

15  three different states, Class Counsel had to work cooperatively and collaboratively

16  to prevent "over-lawyering" and inefficiency.  (*Id.*).  The work was performed by a

17  core team of attorneys fully familiar with the complex factual and legal issues

18  presented by this litigation.  (*Id.*)  This division of labor permitted the work to be

19  done efficiently, resulting in an economy of service and avoiding duplication of

20  effort.  (*Id.*)

21       Class Counsel also allocated time and resources into investigations relating

22  to the matters alleged in this action.  Once the case was underway, Class Counsel

23  defeated motions to dismiss, and conducted thorough discovery of Plaintiffs'

24  claims against BMW NA.  The successful conclusion of this litigation required

25  Class Counsel to commit a significant amount of time, personnel, and expenses, on

26  a contingency basis, with absolutely no guarantee of being compensated in the end.

27

28

### (e)   Class Counsel Obtained Excellent Class Benefits

As described above, the Settlement provides significant monetary and non-monetary relief for the Class.  The Settlement, which was preliminarily approved by this Court, provides substantial monetary relief to all Class Members and resolves all of the MINI CVT cases without the delay and risks associated with trial and the appellate process.  Indeed, under the material terms of the Settlement Agreement, Claimants are entitled to: (1) reimbursement of up to ***thousands of dollars*** each in out-of-pocket expenses for *past* CVT repairs; (2) reimbursement of up to ***thousands of dollars*** each in out-of-pocket expenses for *future* CVT repairs; (3) an ***extended*** parts warranty; and (4) payment of ***up to $2,000*** for Class Members who sold their vehicles as a result of a CVT failure.

As detailed in Plaintiffs' concurrently filed Motion for Final Approval of Class Action Settlement, the Settlement provides Class Members with relief equal to, or better than, other recent automobile class action settlement which received final approval.

Thus, these significant pecuniary and non-pecuniary benefits conferred by the Settlement achieve the goals of this litigation and further justify the attorneys' fees requested by Class Counsel.  Class Counsel avoided considerable burdens and expenses to the parties and the judicial system by conducting a thorough investigation and achieving a favorable Settlement in a timely fashion.  The outstanding results achieved by Class Counsel here fully justify the requested fee.

### (f)   Class Counsel Faced A Substantial Risk Of Nonpayment

A critical factor bearing on fee petitions in Ninth Circuit courts is the level of risk of non-payment faced by Class Counsel at the inception of the litigation.  *See, e.g., Vizcaino*, 290 F.3d at 1048.  The contingent nature of Class Counsel's fee recovery, coupled with the uncertainty that any recovery would be obtained, are

1  significant. In *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299-

2  1300 (9th Cir. 1994), the Ninth Circuit recognized that:

> It is an established practice in the private legal market to reward
> attorneys for taking the risk of non-payment by paying them a
> premium over their normal hourly rates for winning contingency cases
> . . . . [I]f this 'bonus' methodology did not exist, very few lawyers
> could take on the representation of a class client given the investment
> of substantial time, effort, and money, especially in light of the risks
> of recovering nothing.

Throughout this case, Class Counsel expended substantial time and costs to
prosecute a nationwide class action suit with no guarantee of compensation or
reimbursement in the hopes of prevailing against a sophisticated Defendant
represented by high caliber attorneys.  Class Counsel obtained a highly favorable
result for the Class, knowing that if their efforts were ultimately unsuccessful, they
would receive no compensation or reimbursement for their costs.  Class Counsel
prosecuted the case with the type of vigor and skill required to ensure justice for
the Class.

### D.    Summary of Work By Class Counsel And Settlement of Litigation

#### 1.    Pre-filing Investigations

This Settlement followed months of thorough investigation and research
into the nature and extent of the problems with the CVT transmission parts.
Prior to the filing of the actions, Class Counsel collectively devoted months to
investigating the CVT defect alleged in the actions.  Specifically, as part of their
pre-filing investigative work, Class Counsel, *inter alia*, (a) fielded dozens of
inquiries from prospective class members, (b) consulted with automotive
engineering experts, (c) retained mechanics to inspect and investigate the MINI's
CVT system, (d) researched publically available materials and information

1  provided by the National Highway Traffic Safety Administration concerning

2  consumers' complaints about the MINI's CVT (e) reviewed BMW NA manuals

3  and technical service bulletins discussing the alleged defect, (f) reviewed federal

4  motor regulations regarding safety standards, (g) identified all the potential

5  defendants, and (h) conducted research into potential causes of actions and other

6  cases where the same or similar defects were alleged.

7      These initial investigations permitted Class Counsel to obtain a better

8  understanding of the design and function of the CVT transmissions, generally,

9  and identify the problematic CVT transmissions in the Class Vehicles,

10 specifically.

11     **2.    The Filing of Five Separate Cases**

12     This pre-filing investigation culminated in the filing of the following five

13 separate cases against BMW NA (collectively, the "Actions"):

14   • September 15, 2011 – *Aarons v. BMW NA of North America, LLC*, Case

15     No. 1:11-cv-07667-PSG-CW (the "*Aarons* Action") is filed in the Central

16     District of California on behalf of a California class.

17   • November 23, 2011 – *Bourne-Miller v. BMW NA of North America, LLC et*

18     *al.*, Case No. 2:11-cv-06909-FSH-BS (the *"Bourne-Miller* Action") is filed

19     in the District of New Jersey on behalf of a nationwide class, excluding

20     California.

21   • December 16, 2011 – *Limon v. BMW NA of North America, LLC*, Case No.

22     8:11-cv-01952-PSG-CW (the "*Limon* Action") is filed in the Central

23     District of California on behalf of a California class.

24   • December 19, 2011 – *Kollmer v. BMW NA of North America, LLC*, Case

25     No. 2:11-cv-10444-PSG-CW (the "*Kollmer* Action") is filed in the Central

26     District of California on behalf of a California class.

27   • March 8, 2012 – The *Limon* and *Kollmer* Actions are consolidated with the

28

1  *Aarons* Action, and a consolidated complaint is filed on April 16, 2012.

2  • July 9, 2012 – *Bonomo v. BMW NA of North America LLC*, Case No. 9:12-
3    cv-80740-DMM (the "*Bonomo* Action") is filed in the Southern District of
4    Florida on behalf of a Florida class.

5  • November 6, 2012 – The *Bonomo* and *Bourne-Miller* Actions are
6    transferred to the Central District of California and deemed related to the
7    *Aarons* Action.

8      **3.    Discovery Efforts**

9          The parties engaged in substantial discovery, including propounding and
10  responding to written discovery and reviewing voluminous documents produced
11  by BMW NA in this case (*e.g.*, service and repair manuals; maintenance and
12  warranty manuals; technical service bulletins; warranty repair invoices; warranty
13  reimbursements; service records; vehicle population numbers for Class Vehicles
14  equipped with CVT transmissions; warranty data; and consumer complaint
15  reports). (Tellis Decl. ¶¶ 11-15.)  Significant written discovery and document
16  production related to the class vehicles' CVTs occurred in the *Aarons* and
17  *Bourne-Miller* Actions before the parties agreed to the terms of the proposed
18  Settlement Agreement. (*Id.*)

19          Additionally, the *Bourne-Miller* plaintiffs filed a motion to compel BMW
20  NA to further respond to their interrogatories and document requests, which the
21  District of New Jersey granted on September 5, 2012. (*Bourne-Miller* Action
22  Dkt. No. 32.)  The order directed BMW NA to provide the *Bourne-Miller*
23  plaintiffs with, among other things, the VINs for the Class Vehicles,
24  operation/labor damage codes relating to the alleged CVT Defect, service
25  bulletins, service records for the Class Vehicles addressing issues/complaints
26  with the CVT (including warranty data demonstrating the number of CVTs
27  repaired or replaced under the MINI warranty), policies of disclosing systemic

28

problems/reports of problems with the quality or safety of vehicles BMW NA distributes in the United States, copies of the service and warranty information books and owners' manuals for the Class Vehicles, and repair manuals. (Tellis Decl. ¶ 15.)

### 4.    Settlement Negotiations

Commencing in June 2012, the parties began exploring a possible settlement. (*Id.* at ¶ 20.)  From June 2012 to February 2013, the parties engaged in both in-person and telephonic discussions regarding a potential class settlement, and participated in three separate mediations spanning more than five days. (*Id.* at ¶¶ 20-27.)  Finally, on February 13, 2013, with the assistance of the Hon. Howard B. Wiener (Ret.), a highly respected former California Superior and Appellate Court judge, the parties reached a global resolution of all the above-described cases. (*Id.* at ¶ 25)

Although BMW NA has and continues to deny all allegations of wrongdoing a pled in the Actions, and disclaims all liability with respect to all claims, BMW NA considered it desirable to resolve the Actions on the terms stated in the Settlement Agreement for a host of reasons.  According to BMW NA, chief among them is BMW NA's desire to maintain a positive relationship with its loyal customer base and in order to avoid further expense, inconvenience and burden and of continued litigation of five class actions.  BMW NA, therefore, determined that the parties' Settlement was both in the putative class members' and in BMW's best interests.

### 5.    Preliminary Approval

On May 30, 2013, the Parties filed a Motion for Preliminary Approval of Class Action Settlement.  Dkt. 107.  A hearing concerning Plaintiffs' Motion for Preliminary Approval of Class Action Settlement was held on July 17, 2013.  At the hearing, the Court noted certain potential concerns regarding the contents of the

class notice and claim form. Dkt. 109. Accordingly, the Plaintiff filed a supplemental declaration in further support of Plaintiffs' motion for preliminary approval of class action settlement outlining revisions to the notice. Dkt. 111. The Court then scheduled a telephonic conference for August 2, 2013 to discuss the changes to the notice. Dkt. 111. Shortly thereafter, this Court entered an order granting preliminary approval of the Settlement, finding that "the Settlement Agreement contains no obvious deficiencies and that the parties entered into the settlement in good faith, following arm's length negotiation between their respective counsel." Preliminary Approval Order at 4, Dkt. 117.

After preliminary approval, a disagreement between the parties arose as to whether BMW NA should be required to mail notice to claimants on a rolling basis and whether claimants should be permitted to make on-line claims immediately. Dkt. 124. Class Counsel fought to require the rolling notice and the immediate filing of claims. *Id.* The Court agreed with Class Counsel and on November 5, 2013, ordered rolling notice to commence and allowed online claims to begin immediately. Dkt. 135. Class Members have until April 6, 2014 to make claims. *Id.*

As required by the notice program set forth in the Agreement and approved by the Court, notice was disseminated via direct mail to over 124,000 Class Members. Tellis Decl., Ex. 5. The Claims Administrator, KCC, also caused an Interactive Voice Response system to be established to provide information about the settlement. The Claims Administrator also created a dedicated website to provide information about the settlement and to allow for the submission of on-line claims.[5] The Settlement website includes: the Amended Consolidated Class Action Complaint, the Settlement Agreement, the Motion for Preliminary

---

[5] https://eclaim.kccllc.net/caclaimforms/bwb/home.aspx

1  Approval, this Court's Preliminary Approval Order, the Notice in both English and

2  Spanish, an online proof of claim form, a printable claim form, the date and time of

3  the Fairness Hearing, the deadline to opt out, the deadline to submit an objection,

4  and a "Frequently Asked Questions" page.

5       Since the granting of preliminary approval, Class Counsel have continued to

6  protect the interests of the Class.  Among other things, Class Counsel have insured

7  that the Administrator's website has the necessary information to assist consumers

8  with their claims, fielded calls from Class Members inquiring about the Settlement,

9  and continue to monitor the claims procedure and the performance of the claims

10 administrator.  Class Counsel have also dedicated, on a daily basis, staff members,

11 paralegals, and attorneys to handle the calls and answer inquiries by Class

12 Members.  Moreover, during this time period, Class Counsel, in an effort to

13 quickly resolve as many unanticipated issues as may arise, have maintained regular

14 contact with counsel for BMW NA and the Claim Administrator.

15      Taking all of the above into account, Class Counsel have collectively spent

16 over 4,637.1 hours related to the prosecution and Settlement of this case through

17 February 28, 2014, and expect to spend hundreds of additional hours through the

18 expiration of the claims period and final approval.

19      **E.**    **The Parties' Negotiated Amount Includes Reimbursement for Class**

20          **Counsel's Litigation Expenses**

21      In settling Class Counsel's claims to attorneys' fees under the various fee-

22 shifting provisions, the parties also settled Class Counsel's claims for

23 reimbursement of their litigation expenses, which total $114,854.84.  Such

24 expenses include Class Counsel's expenditures on expert witnesses, filing and

25 service fees, depositions, travel expenses, copying and document productions, and

26 other expenses that would typically be billed to paying clients in non-contingency

27 matters, and are recoverable.  *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir.

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS;
MEMORANDUM OF LAW IN SUPPORT
Case No: 11-CV-07667-PSG-CW

1   1994).  These expenses were carefully and reasonably expended and should be

2   reimbursed.

3   **III.    CONCLUSION**

4          Class Counsel were able to obtain a settlement that represents an excellent

5   result for the Class.  This Settlement is the culmination of the determined and

6   skilled work of Class Counsel.  Accordingly, Class Counsel respectfully request

7   that this Court award Class Counsel's request for attorneys' fees and expenses in

8   the total sum of $1,997,500.

9

10  Dated:  March 7, 2014              BARON & BUDD, P.C.

11

12                                    By:    /s/ Roland Tellis

13                                        Roland Tellis

14                                    Roland Tellis (SBN 186269)

15                                    Mark Pifko (SBN 228412)

16                                    Baron & Budd, P.C.
                                      15910 Ventura Boulevard , Suite 1600
17                                    Encino, California  91436
                                      Telephone:  (818) 839-2333
18                                    Facsimile:   (818) 986-9698

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS;
MEMORANDUM OF LAW IN SUPPORT
Case No:  11-CV-07667-PSG-CW

1

2

3

4

5

6

7

Jordan Esensten (SBN 131486)
jesensten@wccelaw.com
Wasserman, Comden,
Casselman & Esensten, LLP
5567 Reseda Boulevard, Suite 330,
P.O. Box 7033
Tarzana, California 91357-7033
Telephone: (818) 705-6800
Facsimile: (818) 996-8266

8

9

10

11

12

13

Jonathan Shub (SBN 237708)
jshub@seegerweiss.com
Seeger Weiss LLP
1515 Market Street, Suite 1380
Philadelphia, Pennsylvania 19102
Telephone: (215) 564-2300
Facsimile: (215) 851-8029

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS;
MEMORANDUM OF LAW IN SUPPORT
Case No: 11-CV-07667-PSG-CW

Payam Shahian (SBN 228406)
pshahian@slpattorney.com
Strategic Legal Practices, APC
1875 Century Park East, Suite 700
Los Angeles, California 90067
Telephone:   (310) 277-1040
Facsimile:    (310) 943-3838


Matthew R. Mendelsohn*
mmendelsohn@mskf.net
Mazie Slater Katz & Freeman, LLC
103 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone:   (973) 228-9898
Facsimile:    (973) 228-0303

Jordan L. Lurie (SBN 130013)
jordan.lurie@capstonelawyers.com
Capstone Law APC
1840 Century Park East, Suite 450
Los Angeles, California 90067
Telephone: (310) 556-4811
Facsimile: (310) 943-0396


Monica Balderrama (SBN 196424)
mbalderrama@initiativelegal.com
Initiative Legal Group APC
1800 Century Park East, Mezzanine
Los Angeles, California 90067
Telephone: (310) 556-5637
Facsimile: (310) 861-9051

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS;
MEMORANDUM OF LAW IN SUPPORT
Case No:  11-CV-07667-PSG-CW

Lance A. Harke, P.A. *
lharke@harkeclasby.com
Howard M. Bushman, Esq.*
hbushman@harkeclasby.com
HARKE CLASBY & BUSHMAN LLP
9699 NE Second Avenue
Miami Shores, Florida 33138
Telephone:  (305) 536-8220
Facsimile:   (305) 536-8229


Timothy G. Blood (SBN 149343)
tblood@bholaw.com
Leslie E. Hurst (SBN 178432)
lhurst@bholaw.com
Blood Hurst & O'Reardon, LLP
701 B Street, Suite 1700
San Diego, California 92101
Telephone: (619) 338-1100
Facsimile: (619) 338-1101


Edward M. Mullins*
emullins@astidavis.com
Jenelle E. La Chuisa*
lachuisa@astidavis.com
Astigarraga Davis Mullins and Grossman P.A
1001 Brickell Bay Drive, Ninth Floor
Miami, Florida 33131-2847
Telephone: (305) 372-8282
Facsimile: (305) 372-8202

Lawrence Allen Caplan*
lcaplan@lacaplanlaw.com
Lawrence A. Caplan P.A.
1375 Gateway Boulevard Suite 39
Boynton Beach, Florida 33426
Telephone: (561) 988-6009
Facsimile: (561) 880-6958

*Admitted Pro Hac Vice

*Attorneys for Plaintiffs*
*Brad Aarons, Mary Limon, Dolores Kollmer,*
*Lynette Bourne-Miller, Darren Bailey, Victor*
*Ferrer, Paul Pugliese, Robert Hare and James*
*Frederick Bonomo individually, and on behalf of*
*other members of the public similarly situated*

28